RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

JOHN A. PARKINS, JR
DIRECTOR

DIRECT DIAL NUMBER
302-651-7624
PARKINS@RLF.COM

September 19, 2005

**VIA HAND DELIVERY AND CM/ECF**
The Honorable Gregory M. Sleet
United States District Court
District of Delaware
844 King Street
J. Caleb Boggs Federal Building
Lockbox 19
Wilmington, DE 19801

    Re:    **Estate of Harry Smith, III, et al. v. Wilmington Police Department,**
              **C.A. No. 04-1254-GMS**

Dear Judge Sleet:

       I am in receipt of plaintiffs' status report. The parties had originally planned to file a joint status report, and conferred with this in mind. I told plaintiffs' counsel I would take the laboring oar in drafting such a document, but I then unexpectedly had to leave the office because of illness, and as a consequence, was unable to complete the document. Upon my return today I learned that plaintiff had filed a status report. I apologize to the Court for not completing the status report and trust the Court will understand I was not ignoring my obligations.

       Defendants are generally in agreement with plaintiffs' status report. There are, however, some areas where we strongly disagree. Most notably, we disagree with plaintiffs' assertion that there is no need to narrow the issues. Plaintiffs raise a board spectrum of claims, many of which are plainly deficient as a matter of law. Specifically, (a) the estate's Eighth and Fourteenth Amendment claims fail because the Fourth Amendment provides the applicable standard here; (b) Mr. and Mrs. Smith's Fourteenth Amendment claim must be dismissed

RLF1-2924143-1

The Honorable Gregory M. Sleet
September 19, 2005
Page 2

because the death of an adult child does not state a claim under the Fourteenth Amendment and (c) the abuse of a corpse claim against the City of Wilmington is barred because the City is absolutely immune from state tort law liability. We respectfully suggest that considerable time and money can be saved if these faulty claims are dismissed earlier, rather than later, in the suit.

    a.    **The Estates' Civil Rights Claim Must Be Analyzed Under the Fourth Amendment Standard**

The initial step in analyzing plaintiffs' civil rights claims is the determination what constitutional rights are implicated. *Graham v. O'Connor*, 490 US 386, 394 (1989) ("analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."). This determination may be determinative of the outcome of the case. *Gottlieb v. Laural Highlands School District*, 272 F.3d 168 (3rd Cir. 2001).

Although Mr. Smith's estate raises Fourth, Eighth and Fourteenth amendment claims, the initial step in the analysis mandated by *Graham* – identifying which constitutional right applies here – is an easy one in this case.

The Supreme Court has made it clear that the Fourth Amendment dictates the analysis here. The estate alleges a Fourteenth Amendment claim, but that amendment is not a font of federal tort law and does not apply when more specific amendments apply. *Town of Castle Rock v. Gonzales*, ____ US ____, 125 S. Ct. 2796, 2810 (2005). If a "constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). The Supreme Court held that the Fourth Amendment applies in cases such as this involving allegations of the use of deadly force in the apprehension of a suspect. *Tennessee v. Garner*, 471

RLF1-2924143-1

The Honorable Gregory M. Sleet
September 19, 2005
Page 3

U.S. (1989). Consequently, the Estate's Eighth and Fourteenth Amendment claims ought to be dismissed.

Plaintiffs' Eighth Amendment claim fails for another reason. That amendment does not apply because Mr. Smith was not serving a sentence of incarceration pursuant to a judgment of conviction at the time he was shot. *Bell v. Wolfish*, 411 U.S. 520, 525 (1979).

     **b.**    <u>**The Parents Have No Fourteenth Amendment Claim Of Their Own**</u>

In a case similar to this one, the Third Circuit has held that the parents of an adult child did not have a Fourteenth Amendment claim of their own when their adult child was shot and killed by police. *McCurdy v. Dodd*, 353 F.3d 820 (3rd Cir. 2003). That holding was recently followed by the Eleventh Circuit. *Robertson v. Hecksel*, 2005 US App Lexis 17201 (11th Cir. Aug. 16, 2005).

     **c.**    <u>**The City Is Absolutely Immune form the abuse of corpse claim.**</u>

Plaintiffs seek to assert an abuse of a corpse claim against the City in their Amended Complaint. They allege that the City, acting through unidentified agents, allowed Mr. Smith's body to remain in the street and allowed his blood to trickle down the road. They theorize that this amounts to a state law claim of abuse of a corpse. The City is absolutely immune from this claim by virtue of 10 *Del. C.* § 4011 ("all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages.").

On a different note, in their status report plaintiffs assert that I said the defendants would not "spend a dime" to settle this case. It is true that I advised plaintiffs' counsel that I did not think the case would settle, but I did not use such an aggressive phrase as described in the status report. The reputation of these police officers and the Wilmington Police Department is at stake in this case. Plaintiffs have sought to make this a *cause celebre*, going so far as to conduct

The Honorable Gregory M. Sleet
September 19, 2005
Page 4

a news conference literally on the steps of the courthouse the day they filed this lawsuit. They have sought to publicize what they claim to be the shortcomings of the police department. As would be expected, it is important to the city that its citizens have confidence in its police officers. Under the circumstances plaintiffs have chosen to create, the only way the city and these defendants can assure that the police have the continuing confidence of the public is through vindication after judicial proceeding. Accordingly, we will, of course attend a mediation if directed to do so by the court, but we do not now believe one would be productive.

                                          Respectfully yours,

                                          John A. Parkins, Jr. (#859)

JAP/lll
cc:     Clerk of the Court
        Kester I.H. Crosse, Esquire (By Hand Delivery)
        Anne T. Sulton, Esquire (By U.S. Regular Mail and email)
        Rosemaria Tassone, Esquire