IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF HARRY SMITH, III, HARRY SMITH, JR., AND ROSLYN WOODARD SMITH, <br><br> Plaintiffs, <br><br> v. <br><br> WILMINGTON POLICE DEPARTMENT, MICHAEL SZCZERBA, and ONE OR MORE JOHN DOES, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 04-1254-GMS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## JOINT STATUS REPORT

### 1. Jurisdiction and Service.

**Q.** Does the court have subject matter jurisdiction?

The parties agree this Court has subject matter jurisdiction.

**Q.** Are all the parties subject to the court's jurisdiction?

All parties are subject to the Court's jurisdiction.

**Q.** Do any remain to be served?

The proposed amended complaint names three police officers as defendants. Defendants' counsel will accept service on their behalf.

### 2. Substance of the Action.

**Q.** What are the factual and legal bases for plaintiff's claims?

This action arises from an incident taking place on September 13, 2003 at the intersection of 5th and Harrison Streets in Wilmington. Harry Smith III was shot and killed by Wilmington police. Plaintiffs essentially allege excessive force was used during the arrest of Harry Smith III, causing his death. Plaintiffs also allege state law claims for violation of state constitutional provisions, wrongful death, and abuse of a corpse. The legal bases for Plaintiffs'

claims are 42 USC Sections 1983, 1985, 1986 and 1988, federal and state constitutions, and state laws.

Because the proposed Amended Complaint has just been filed, no Answer has yet been filed. The defendant police officers will deny that they acted improperly. They also will assert they are entitled to official immunity for the civil rights claims and immunity under 10 *Del. C.* § 4012 for the state law claims.

The City of Wilmington will move to dismiss the state law claim against it on the basis of 10 *Del.C.* 4011.

### 3. Identification of Issues.

**Q.** **What factual and legal issues are genuinely in dispute?**

The primary factual issues are the events of September 13, as these events unfolded at the intersection of 5th and Harrison Streets. Plaintiffs contend Mr. Smith had stopped driving the stolen police car and was slumped over the wheel as defendants continued to fire their weapons at him. Defendants will deny this.

Defendants believe several legal issues are in dispute. They are set forth in paragraph 4.

### 4. Narrowing of Issues.

**Q.** **Can the issues in litigation be narrowed by agreement or by motions?**

**By Plaintiffs:** Plaintiffs have attempted to narrow the issues, as noted in the proposed Amended Complaint. Plaintiffs believe their federal and state law claims should not be dismissed, in part, because they have alleged Defendants' actions were willful, wanton, and outrageous. Furthermore, Delaware's wrongful death and abuse of corpse statutes allows parents to bring a claim.

We are in the very early stages of discovery, having voluntarily exchanged some documents. Defendants already have completed two depositions of potential witnesses for Plaintiffs.

As discovery continues, Defendants are expected to identify the persons engaged in the events giving rise to this lawsuit, including the abuse of corpse claim. As discovery is completed, Plaintiffs intend to amend their Complaint to conform to the evidence obtained as a result of information obtained during discovery.

Plaintiffs request no dispositive motions be considered by the Court until Plaintiffs have had the opportunity to conduct additional discovery, including their own depositions of witnesses the Defendants are likely to call.

**By Defendants:** Plaintiffs raise a board spectrum of claims, many of which are plainly deficient as a matter of law. Specifically, (a) the estate's Eighth and Fourteenth Amendment claims fail because the Fourth Amendment provides the applicable standard here; (b) Mr. and Mrs. Smith's Fourteenth Amendment claim must be dismissed because the death of an adult child does not state a claim under the Fourteenth Amendment and (c) the abuse of a corpse claim against the City of Wilmington is barred because the City is absolutely immune from state tort law liability. We respectfully suggest that considerable time and money can be saved if these faulty claims are dismissed earlier, rather than later, in the suit.

      a.    **The Estates' Civil Rights Claim Must Be Analyzed Under the Fourth Amendment Standard**

The initial step in analyzing plaintiffs' civil rights claims is the determination what constitutional rights are implicated. *Graham v. O'Connor*, 490 US 386, 394 (1989) ("analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."). This determination may be determinative of the outcome of the case. *Gottlieb v. Laural Highlands School District*, 272 F.3d 168 (3rd Cir. 2001).

Although Mr. Smith's estate raises Fourth, Eighth and Fourteenth amendment *claims*, the initial step in the analysis mandated by *Graham* – identifying which constitutional right applies here – is an easy one in this case.

The Supreme Court has made it clear that the Fourth Amendment dictates the analysis here. The estate alleges a Fourteenth Amendment claim, but that amendment is not a font of federal tort law and does not apply when more specific amendments apply. *Town of Castle Rock v. Gonzales*, ____ US ____, 125 S. Ct. 2796, 2810 (2005). If a "constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Rather, the Supreme Court held that the Fourth Amendment applies in cases such as this involving allegations of the use of deadly force in the apprehension of a suspect. *Tennessee v. Garner*, 471 U.S. (1989). Consequently, the Estate's Eighth and Fourteenth Amendment claims ought to be dismissed.

Plaintiffs' Eighth Amendment claim fails for another reason. That amendment does not apply because Mr. Smith was not serving a sentence of incarceration pursuant to a judgment of conviction at the time he was shot. *Bell v. Wolfish*, 411 U.S. 520, 525 (1979).

### b. The Parents Have No Fourteenth Amendment Claim Of Their Own

In a case similar to this one, the Third Circuit has held that the parents of an adult child did not have a Fourteenth Amendment claim of their own when their adult child was shot and killed by police. *McCurdy v. Dodd*, 353 F.3d 820 (3rd Cir. 2003). That holding was recently followed by the Eleventh Circuit. *Robertson v. Hecksel*, 2005 US App Lexis 17201 (11th Cir. Aug. 16, 2005).

### c. The City Is Absolutely Immune form the abuse of corpse claim.

Plaintiffs seek to assert an abuse of a corpse claim against the City in their Amended Complaint. They allege that the City, acting through unidentified agents, allowed Mr. Smith's

body to remain in the street and allowed his blood to trickle down the road. They theorize that this amounts to a state law claim of abuse of a corpse. The City is absolutely immune from this claim by virtue of 10 *Del. C.* § 4011 ("all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages.").

**Q.    Are there dispositive or partially dispositive issues appropriate for decision on motion?**

**By Plaintiffs:** No. There is a factual dispute that must be resolved by the jury. Resolution of this case depends upon whom the jury decides to believe. Undisputed is that Harry Smith III died because of a bullet wound to his head. If the jury believes Mr. David Gwyn's account, as he testified during his videotaped deposition that was taken at the instance of the Defendants, that he was in a position to see and actually saw Harry Smith III slumped over the steering wheel of the car, after the car stopped, and the officers continued to shoot Harry Smith III, then the jury could reasonably find excessive force was used.

**By defendants:** Yes, see above.

## 5. Relief.

**Q.    What specific relief does plaintiff seek?**

Plaintiffs seek compensatory damages, attorneys' fees and litigation costs, including expert witness fees.

**Q.    What is the amount of damages sought and generally how is it computed?**

Currently unknown because we await the report of an economist. Funeral expenses are among the special damages. Plaintiffs trust the wisdom of the jury and the court to determine the appropriate level of compensatory and punitive damages.

### 6. Amendment of Pleadings.

Plaintiffs are seeking leave to amend the Complaint. Any claims set out in the original complaint, which are not contained in the Amended Complaint, are withdrawn. Further amendments to Plaintiffs' Complaint might be requested to conform to the evidence obtained during discovery. The parties are in the very early stages of discovery. Defendants have given some documents to Plaintiffs and taken the depositions of two witnesses likely to be called by Plaintiffs.

Based upon this representation, defendants do not object to the request for leave to amend.

### 7. Joinder of Parties.

Neither side believes joinder of additional parties is necessary or appropriate at this time.

### 8. Discovery.

Q. **Discovery contemplated by each party and the amount of time it may take to complete discovery?**

Both sides anticipate taking approximately 15 depositions each. The parties anticipate that many of these depositions will be short, perhaps lasting no more than two hours. The parties agree to schedule multiple depositions for the same day whenever feasible. The parties understand that absent a written stipulation or court order, a party may take only ten depositions. F. R. Civ. P. 30(a)(2). The parties intend this document to be such a stipulation.

The parties believe fact discovery can be completed by July 31, 2006.

Q. **Can discovery be limited? Are less costly and time-consuming methods available to obtain necessary information?**

Each side will attempt to schedule multiple short depositions for the same day whenever feasible.

### 9. Estimate trial length.

Q. **Is it feasible or desirable to bifurcate issues for trial?**

One week. Neither side desires bifurcation at this time.

Q.   **Is it possible to reduce the length of the trial by stipulations, use of summaries or statements, or other expedited means of presenting evidence?**

Both sides intend to use stipulations and summaries as allowed by the Rules of Evidence.

### 10. Jury Trial?

Yes.

### 11. Settlement

Q.   **What are the prospects for settlement? Is referral to the Magistrate for mediation or other ADR mechanism appropriate?**

There have been no settlement discussions to date.

**By Plaintiffs:** Plaintiffs are willing to have this case referred to the Magistrate Judge for mediation at the close of discovery.

**By Defendants:** Defendants do not, at this juncture, believe that mediation will be productive. The Plaintiffs have sought to make this case a *case celebre*, going so far as to conduct a press conference on the steps of the courthouse. The Plaintiffs have publicly questioned the ethics and honesty of the Wilmington Police Department and its officers. The only way that these defendants can now be vindicated is through a judicial proceeding.

### 12. Such other matters as counsel considers conducive to the just, speedy and inexpensive determination of this action.

If the Court allows attorney Sulton, who appears *pro hac vice*, to electronically file documents with the Court, this would help a great deal. As plaintiffs understand the rule, attorney Sulton cannot directly electronically file documents with the Court and that local counsel must do so. Currently, time and money are spent to send documents to local counsel

Kester I.H. Crosse, who then files the documents, requiring two attorneys to be involved each time a document is filed with the Court and increasing the costs of litigation.

Also, if the Court allows the attorneys the option to appear by telephone for all hearings, then it will save the parties attorneys' fees and other litigation related expenses.

Defendants have no position with respect to these requests, except that the need for an in-person appearance at hearings ought to be determined on a case-by-case basis.

### 13. A statement that counsel for the parties have conferred about each of the above matters.

Counsel for the parties conferred via telephone and e-mail.

### 14. Additional Matter

The Court's record incorrectly notes attorney Sulton is appearing pro bono. Attorney Sulton is not appearing pro bono, rather she appears *pro hac vice*.

/s/ Anne T. Sulton
Anne T. Sulton, Esquire
Pro Hac Vice
Post Office Box 2763
Olympia, WA 98507
609-465-6029
annesulton@comcast.net
Attorneys for Plaintiffs Estate of Harry Smith, III, Harry Smith, Jr., and Roslyn Woodard Smith

/s/ Kester I.H. Crosse
Kester I.H. Crosse (#638)
Local Counsel
Williams & Crosse
1214 King Street
Suite 300
Wilmington, DE 19801
302-658-3488
kesterih@aol.com
Attorneys for Plaintiffs Estate of Harry Smith, III, Harry Smith, Jr., and Roslyn Woodard Smith

/s/ John A. Parkins, Jr.
John A. Parkins, Jr. (#859)
Chad M. Shandler (#3796)
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE 19899
302-651-7700
Parkins@rlf.com
Shandler@rlf.com
Attorneys for Defendant Wilmington Police Department

OF COUNSEL:
Rosamaria Tassone
City of Wilmington Law Department
City/County Building, 9th Floor
800 N. French Street
Wilmington, DE 19801
302-576-2175

Dated: September 20, 2005