**UNREPORTED CASE**

2005 U.S. App. LEXIS 17201, *; 18 Fla. L. Weekly Fed. C 842

LEXSEE 2005 US APP LEXIS 17201

PATRICIA ROBERTSON, individually and in her capacity as personal representative of the estate of Corey Rice, Plaintiff-Appellant, versus JIMMY HECKSEL, individually and as an agent of the City of Gainesville, CITY OF GAINESVILLE, Defendants-Appellees.

No. 04-12367

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

2005 U.S. App. LEXIS 17201; 18 Fla. L. Weekly Fed. C 842

August 16, 2005, Decided
August 16, 2005, Filed

**PRIOR HISTORY:** [*1] Appeal from the United States District Court for the Northern District of Florida. D.C. Docket No. 03-00010-CV-SPM. Robertson v. Hecksel, 2003 U.S. Dist. LEXIS 26627 (N.D. Fla., July 7, 2003)

**DISPOSITION:**
AFFIRMED.

LexisNexis(R) Headnotes

**COUNSEL:** For Patricia Robertson, Appellant: Ralph Oliver Anderson, Ralph O. Anderson, P.A., Davie FL

For Jimmy Hecksel, Appellee: John W. Jolly, Jr., Jolly & Peterson, P.A., Tallahassee, FL

For City of Gainesville, Appellee: Dale Joseph Paleschic, John Denny Jopling, Elizabeth Marie Collins, Dell Graham, P.A., Gainesville, FL.

**JUDGES:** Before BLACK, WILSON and STAPLETON *, Circuit Judges.

  * Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit, sitting by designation.

**OPINIONBY:** BLACK

**OPINION:** BLACK, Circuit Judge:

Appellant Patricia Robertson appeals the district court's dismissal of her claims against Appellees Jimmy Hecksel and the City of Gainesville. Corey Rice, Robertson's son, was killed by Officer Hecksel during a traffic stop. As a result of his death, Robertson argues she suffered a deprivation of her constitutionally-protected liberty interest in a continued relationship with her adult son. Whether a parent has such a right vis-a-vis her adult child is a question of first impression for this Court. We hold that the Fourteenth Amendment's substantive due process protections do not extend to the relationship between a mother and her adult son and, therefore, affirm the district court's dismissal of Robertson's claims.

I. BACKGROUND

The district court succinctly summarized the facts:

On January 30, 2001, Decedent, Corey Rice ("Decedent [*2] Rice") was pulled over in a traffic stop by City of Gainesville police officer Jimmy Hecksel ("Hecksel"). Hecksel did not use his police sirens to pull over Decedent Rice, nor did he use any lights to illuminate Decedent Rice's car. When Hecksel approached Decedent Rice's car, he brandished his gun and struck the window with it. Then, he moved in front of Decedent Rice's automobile and pointed the gun at Decedent Rice. Decedent Rice started to drive away in the opposite direction, and Hecksel fired his gun seven times, hitting Decedent Rice with four bullets. Decedent Rice was pronounced dead a few hours later.

*Robertson v. Hecksel*, 2003 U.S. Dist. LEXIS 26627, Case No. 1:03CV10-SPM at 1-2 (N.D. Fla. 2003). Rice was 30 years old at the time of his death.

The personal representative of Rice's estate reached a settlement with Officer Hecksel and the City of Gainesville, "completely releasing and forever discharging [the] Defendant[s] from any and all past, present or future claims or any future wrongful death claim of Plaintiff's representatives or heirs, which have resulted or may result from the alleged acts or omissions of the Defendant[s]." n1 The settlement also stated: "The parties [*3] acknowledge and agree that nothing contained in this release is intended nor shall anything be construed to release claims, if any, held by the mother of the decedent, Patricia Robertson."

> n1 Vicki Lynn McDonald was the personal representative of the Decedent's estate at the time of the settlement. Decedent's mother, Patricia Robertson, has since become the personal representative.

On January 27, 2003, Robertson, individually and in her capacity as personal representative, filed a complaint in the Northern District of Florida against Officer Hecksel and the City of Gainesville (Defendants). In her individual capacity, she alleged, pursuant to 42 U.S.C. § 1983, a deprivation of her Fourteenth Amendment right to a relationship with her adult son and sought damages for loss of support, loss of companionship, and past and future mental pain and suffering. n2 The Defendants moved to dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(6), and the district [*4] court granted their motion. Robertson appeals.

> n2 This appeal does not involve Robertson's claims brought as personal representative of the decedent's estate.

II. STANDARD OF REVIEW

We review a district court's dismissal for failure to state a claim de novo, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 836 (11th Cir. 2004) (citation omitted).

III. DISCUSSION

A. *Constitutional Right of Companionship*

"Section 1983 is no source of substantive federal rights. Instead, to state a section 1983 claim, a plaintiff must point to a violation of a specific federal right." *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996) (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811, 127 L. Ed. 2d 114 (1994) (plurality opinion)). "In § 1983 cases grounded on alleged parental liberty interests, we are venturing into the murky area [*5] of unenumerated constitutional rights." *McCurdy v. Dodd*, 352 F.3d 820, 825 (3d Cir. 2003) (citation omitted). When this happens, our first task is to determine "whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Id.* at 826 (citations and internal quotations omitted). We should tread lightly because "by extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore 'exercise the utmost care whenever we are asked to break new ground

in this field,' lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267-68, 138 L. Ed. 2d 772, 117 S. Ct. 2302 (1997) (citations omitted).

A parent's due process right in the care, custody, and control of her children is "perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000) [*6] (plurality opinion). While this right provides parents with both substantive and procedural protections, the Supreme Court cases "extending liberty interests of parents under the Due Process Clause focus on relationships with *minor* children." *McCurdy*, 352 F.3d at 827; *see also* Isaac J.K. Adams, Note, *Growing Pains: The Scope of Substantive Due Process Rights of Parents of Adult Children*, 57 Vand. L. Rev. 1883, 1902 (2004) (reviewing Supreme Court caselaw and finding no explicit guidance on how to decide the question of whether parents have a right to companionship with their adult children).

The substantive component of a parent's right to care, custody, and control of her minor children has been relied upon to strike down several state statutes. The Supreme Court held a Nebraska law, which prohibited the teaching of any foreign languages to students until after the eighth grade, deprived parents of their right to "establish a home and bring up children . . . [which has been] long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 396-99, 43 S. Ct. 625, 626, 67 L. Ed. 1042 (1923) [*7] (citations omitted). Similarly, an Oregon law requiring parents to send their children to public schools was found unconstitutional by the Court because it "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 573, 69 L. Ed. 1070 (1925); *see also Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S. Ct. 1526, 1541, 32 L. Ed. 2d 15 (1972) (holding application of Wisconsin's compulsory education law to Amish children unconstitutional under the First Amendment, in part, because "the history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children"); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 442, 88 L. Ed. 645 (1944) (recognizing that "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder") (citation omitted).

A parent's right to care, custody, and control of minor children [*8] has also been the source of added procedural protections. For example, the Supreme Court struck down an Illinois statute that made children of unwed fathers wards of the state upon the death of their mother. *Stanley v. Illinois*, 405 U.S. 645, 658-59, 92 S. Ct. 1208, 1216-17, 31 L. Ed. 2d 551 (1972). There, the biological father's interest "undeniably warranted deference and, absent a powerful countervailing interest, protection." *Id.* at 651, 92 S. Ct. at 1212. In *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), the Court held a state is required to show by at least clear and convincing evidence that parental rights should be terminated because, among other reasons, "the fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents . . . ." *Id.* at 753, 102 S. Ct. at 1394-95; *see also Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 2160, 68 L. Ed. 2d 640 (1981) (although refusing to hold the Due Process Clause requires the state to appoint counsel for [*9] parents at a termination hearing, noting that "[a] parent's interest in the accuracy and injustice of the decision to terminate his or her parental status is . . . a commanding one").

It is against this backdrop that we analyze Robertson's claim. She would have us hold that the parental rights already recognized by the Supreme Court include a right to companionship with an adult child. Robertson's claim could potentially involve two very separate questions: one, whether the asserted right exists; and two, if the asserted right does exist, under what conditions does a deprivation occur, i.e., are we looking for negligent behavior, an intentional act, etc. One must have a right before it can be deprived; therefore, the state-of-mind of the accused party is irrelevant to the initial inquiry.

There appear to be three possible resolutions of Robertson's claim: (1) she has a right and can recover for incidental deprivations; (2) she has a right, but cannot recover for incidental deprivations; and (3) she does not have a right.

The First, Third, Seventh, and District of Columbia Circuits have rejected claims like Robertson's, n3 where the alleged deprivation was incidental to the defendant's [*10] actions. *Russ v. Watts*, ___ F.3d ___, ___, 414 F.3d 783, 2005 U.S. App. LEXIS 13970, 2005 WL 1618831 at *7 (7th Cir. 2005); *McCurdy*, 352 F.3d at 822; *Butera v. District*

*of Columbia*, 344 U.S. App. D.C. 265, 235 F.3d 637, 656 (D.C. Cir. 2001); *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 10 (1st Cir. 1986). n4 Less clear is whether those cases recognized a right, assumed a right, or did not recognize a right. If a right has been recognized or assumed, then the incidental nature of the injury may be important, but it will not be important if there is no right.

> n3 The Tenth Circuit has recognized a parent's constitutionally protected liberty interest with her adult son, but did so under the First Amendment's right of intimate association, which contains "an intrinsic element of personal liberty." *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, 1188-89 (10th Cir. 1985). Although *Trujillo* relied primarily on *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984), a First Amendment case, the *Roberts* Court, in discussing the personal liberty aspect of the First Amendment, cited to, inter alia, *Meyer*, *Pierce*, and *Yoder*. See *Roberts*, 468 U.S. at 618-19, 104 S. Ct. at 3250. However, the *Trujillo* court required the plaintiffs to show the state actor had an "intent to interfere with a particular relationship protected by the freedom of intimate association." *Trujillo*, 768 F.2d at 1190.

[*11]

> n4 The Ninth Circuit appears to have recognized the asserted right where the state action had the incidental affect of ending the parent/adult child relationship. In *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir. 1985), the Ninth Circuit held, in the context of a minor child, that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." *Id.* at 655. Unlike *Kelson*, *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986), involved the relationship between a parent and an adult child. *Id.* at 748 n.1. Yet, it does not appear that *Strandberg* actually extended the holding of *Kelson* to include adult children. In *Strandberg*, the court's action regarding the parents' claim of a due process violation was limited to correcting the parents' incorrect belief that the district court had dismissed their claim. *Id.* at 748 & n.1. Thus, the *Strandberg* court did not address whether the asserted right existed. Nonetheless, we recognize subsequent Ninth Circuit decisions have interpreted their caselaw as allowing a parent to bring a companionship claim in the context of an adult child where the deprivation was incidental to the state action. See, e.g., *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987) *overruled on other grounds by Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999).

[*12]

*Ortiz* began by noting the critical difference between the asserted right and the Supreme Court cases recognizing a parent's substantive due process right to care, custody, and control her child:

> [Those] cases do not hold that family relationships are, in the abstract, protected against all state encroachments, direct and indirect, but only that the state may not interfere with an individual's right to choose how to conduct his or her family affairs. The emphasis in these cases on *choice* suggests that the right is one of preemption; rather than an absolute right to a certain family relationship, family members have the right, when confronted with the state's attempt to make choices for them, to choose for themselves.

*Ortiz*, 807 F.2d at 8. The First Circuit also distinguished the procedural due process cases, such as *Stanley* and *Santosky*, by explaining that "those cases have held only that when the state seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest" is a "Fourteenth Amendment liberty interest . . . implicated and the state therefore must adhere to rigorous procedural safeguards. [*13] " *Id.* The preceding language seems to indicate a finding of no right, but the court continued: "We think it significant that the Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship

with a child. The Court has never held that governmental action that affects the parental relationship only incidentally--as in this case--is susceptible to challenge for a violation of due process." *Id.*

The Third Circuit's ultimate conclusion in *McCurdy* that "the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child," *McCurdy*, 352 F.3d at 830, appears to indicate no right exists. But the *McCurdy* court also discussed the incidental nature of the injury: "It would, therefore, stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship." *Id.*; *see also Russ*, ___ F.3d ___, ___, 2005 U.S. App. LEXIS 13970, 2005 WL 1618831 at *6 ("Under any standard, finding a constitutional violation based on official actions [*14] that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court.") (citations omitted).

In *Butera*, the District of Columbia Circuit specifically noted that it had no reason to consider how the injury occurred:

> Because we hold that a parent-child relationship between two independent adults does not invoke constitutional 'companionship' interests, we do not reach the District of Columbia's contention that Terry Butera's claim fails because the District of Columbia's actions were not intentionally directed or aimed at her relationship with her son.

*Butera*, 235 F.3d at 656 n.23 (citation omitted).

Like the District of Columbia Circuit, we hold Robertson has not asserted a cognizable due process interest. n5 Robertson does not allege the state has interfered with how she raises her minor child, as was the case in *Meyer* and *Pierce*, nor does she claim the state action targeted her custody of her minor child, as in *Santosky* and *Stanley*. Therefore, her claim finds no support in Supreme Court precedent, and we decline to further expand the substantive [*15] protections of the Due Process Clause. n6

> n5 Although we hold the asserted right does not exist, even if we agreed with Robertson, we still must remember that the "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663, 88 L. Ed. 2d 662 (1986). Robertson has alleged that Officer Hecksel's actions were "willful, malicious and engaged in with callous and reckless indifference to DECEDENT RICE's federally protected rights of life, liberty and the pursuit of happiness under the Fourth and Fourteenth Amendment of the U.S. Constitution" and as a result of his actions she was deprived of her constitutionally protected rights. Nowhere, however, has Robertson alleged Officer Hecksel's actions constituted more than negligence concerning her rights--mere causation is not enough to satisfy *Daniels*.

> n6 As the plaintiff has not contended the decedent (who was 30 years old at the time of death) was a minor, we do not need to decide when a child crosses the threshold from minor to adult.

[*16]

B. Brazier/Carringer

Robertson urges us to resolve her claim using a different analytical framework. She argues her claim is controlled by *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961), n7 and *Carringer v. Rodgers*, 331 F.3d 844 (11th Cir. 2003). Because those cases involve the application of 42 U.S.C. § 1988, it will be helpful for us to first briefly discuss how § 1988 works before explaining why *Brazier* and *Carringer* are not relevant to Robertson's claim.

n7 In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

The Supreme Court has recognized that "inevitably existing federal law will not cover every issue that may arise in the context of a federal civil rights action." *Moor v. County of Alameda*, 411 U.S. 693, 702, 93 S. Ct. 1785, 1792, 36 L. Ed. 2d 596 (1973) [*17] (footnote omitted). This is where 42 U.S.C. § 1988 comes into play. Section 1988 provides in part:

> The jurisdiction in civil and criminal matters conferred on the district courts by [the Civil Rights Acts] for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies . . . the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C. § 1988(a).

"As is plain on the face of the statute, [§ 1988] is intended to complement the various acts which do create federal causes of action for the violation of federal civil [*18] rights." *Moor*, 411 U.S. at 702, 93 S. Ct. at 1792 (footnote omitted). If federal law is "not adapted to the object" or is "deficient," federal courts must look to state law to fill the gaps. The Supreme Court has explained:

> The importation of the policies and purposes of the States on matters of civil rights is not the primary office of the borrowing provision in § 1988; rather, the statute is designed to assure that neutral rules of decision will be available to enforce the civil rights actions, among them § 1983. Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.

*Wilson v. Garcia*, 471 U.S. 261, 269, 105 S. Ct. 1938, 1943, 85 L. Ed. 2d 254 (1985), *superceded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-81, 124 S. Ct. 1836, 1842-45, 158 L. Ed. 2d 645 (2004).

*Brazier* and *Carringer* were both instances where state law was used to fill gaps in federal law through § 1988's borrowing provision. Robertson would [*19] have us also look to state law through § 1988's borrowing provision to decide her case. Her argument misses the dispositive difference between *Brazier* and *Carringer* and our case. In those cases, the plaintiffs were seeking vindication of the *decedent's* rights under § 1983. Here, Robertson alleges a violation of *her* rights. Regardless of whose rights are being asserted, before § 1983 and § 1988 can come into play, the plaintiff must still establish the existence of a federal right. Because Robertson has failed to establish a federal right, we never reach § 1983, let alone § 1988 and state law.

In *Brazier*, the plaintiff alleged her husband was beaten to death by Georgia police officers, in violation of his "rights and privileges of being secure in his person, of due process and equal protection of the law." 293 F.2d at 402. n8 The question the former Fifth Circuit needed to answer was "whether death resulting from violation of the Civil Rights Statutes give[s] rise to a federally enforceable claim for damages sustained by the victim during his lifetime, by his survivors, or both." *Id.*

> n8 Brazier's suit was brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. *Brazier*, 293 F.2d at 402-03. She sought damages for decedent's injuries and illegal arrest, the death of the decedent, and for aggravation, suffering, and mental anguish caused to the decedent. *Id.* at 402 n.1

[*20]

The court spent the bulk of its opinion addressing the incorporation of Georgia's survival statute, which allowed the decedent's claims to survive his death, but it also incorporated Georgia's wrongful death statute, a "separate and distinct cause[] of action" allowing certain survivors to recover the full value of the life of the decedent, *id.* at 407 n.15, because "regard has to be taken of both classes of victims." *Id.* at 409. The incorporation of Georgia's wrongful death statute was not done in response to a violation of the wife's rights: it was done to remedy the violation of the *decedent's* rights. *See id.* at 408-09.

In *Carringer*, the plaintiff's son was shot and killed by the son's wife, a police officer, with her service revolver. The decedent's mother brought "a § 1983 claim for the wrongful death of the decedent whose constitutional rights were violated." 331 F.3d at 848. There, we followed *Brazier* and incorporated Georgia's wrongful death statute into federal law, holding that "Carringer, as a parent, has standing to assert a § 1983 claim for the wrongful death of her son in violation of [*21] *his* constitutional rights." *Id.* at 850 (emphasis added and footnote omitted).

The plaintiffs in *Brazier* and *Carringer* passed the first hurdle of bringing a § 1983 suit--identifying a federal right--by relying on the rights of the decedent. *Cf.* Steven H. Steinglass, *Wrongful Death Actions and Section 1983*, 60 Ind. L.J. 559, 621 (1985) ("Wrongful death statutes permit survivors to sue when a killing violated their decedent's rights . . . Both survival and wrongful death actions assert the identical legal rights of the decedent."). In essence, they were bringing wrongful death suits under federal law. Although the survivors' claims were separate from the claims of the decedents' estates, the *Brazier* and *Carringer* plaintiffs' claims necessarily required a finding that the decedents' deaths were wrongful in some way. Conversely, whether the decedent's rights in our case were violated has no bearing on the ability of his mother to argue a loss of companionship, because her alleged cause of action is based on a violation of rights personal to her, not rights personal to the decedent. For that reason, *Brazier* and *Carringer* [*22] are not controlling. n9

> n9 Robertson's belief that *Brazier* and *Carringer* were controlling may have been caused in part by dicta in *Carringer*. Footnote nine of *Carringer* begins by noting that the "right to wrongful death recovery under § 1983 has generated considerable debate amongst our sister circuits" and then compares the *Brazier* analysis with the analysis of the circuits that "allow a claimant to argue that he had a relationship with the deceased that was constitutionally protected and that the homicide of the decedent destroyed that relationship and, therefore, violated the claimant's own protected constitutional rights." *Carringer*, 331 F.3d at 850 n.9 (citations omitted). This comparison insinuates that the two approaches are in response to the same question, but, for reasons already discussed, they are not.

IV. CONCLUSION

Our holding that a parent does not have a constitutional right of companionship with an adult child is in no way meant to minimize the loss of [*23] an adult child as compared to a minor child. The loss of a child at any age, under any circumstances, is one of the most difficult experiences a parent can endure. While the parent/adult child relationship is an important one, the Constitution does not protect against all encroachments by the state onto the interests of individuals. Instead, it is the province of the Florida legislature to decide when a parent can recover for the loss of an adult child. We will not circumvent its authority through an unsupported reading of the Fourteenth Amendment.

AFFIRMED.