IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HARRY SMITH, JR., et al.,

    Plaintiffs,

v.                                                                                            CIVIL ACTION NO. 04-1254-GMS

CITY OF WILMINGTON, et al.,

    Defendants.

_____

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO
DISMISS ALL PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS AND THE
PARENTS' FOURTH AMENDMENT CLAIMS**
_____

    For plaintiffs' response to defendants' motion to dismiss, they state: a) the parents are not claiming their Fourth Amendment rights were violated; b) the complaint does not include a separate cause of action for the parents' loss of companionship; c) the parents are asserting a claim under 42 USC Section 1983; d) this lawsuit alleges wrongful death claims under Delaware state law, including separate survivor claims which are violations of rights personal to the parents and not personal to the decedent; e) Harry Smith, III was an adult at the time of his death; f) the fact that Harry Smith, III was an adult at the time of his death does not require dismissal of the parents' claims based upon the Fourteenth Amendment; and g) the fact that the estate may pursue a Fourth Amendment claim does not bar the estate from also pursuing a Fourteenth Amendment claim.

**LAW**

    The Fourth Amendment is made applicable to the states via the Fourteenth Amendment. *Mapp* v. *Ohio,* 367 U.S. 643 (1961). Excessive use of force claims are analyzed under the Fourth Amendment "reasonableness" standard, rather than the more stringent "shocks the conscience" standard of the Fourteenth Amendment. *Gottlieb v. Laural Highlands School Dist.,* 272 F.3d 168 (3d Cir. 2001). However, an excessive use

1

of force claim may proceed under both the Fourth and Fourteenth Amendments. [See for example the jury instructions of the United States Seventh Circuit Court of Appeals, attached hereto and marked Exhibit 1.]

For the Smith parents to state a Fourteenth Amendment Due Process claim, they must show they possessed a constitutionally protected property interest and they were deprived of that interest without due process of law. The property interest must be more than an abstract desire; the parents must have a legitimate claim of entitlement to the property interest. Due process property interests may be created by state laws. The existence of concurrent state remedies is not a bar to a section 1983 action. Even when there are adequate post-deprivation remedies available, the parents' substantial due process claim is not barred. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985); *Zinermon v. Burch*, 494 U.S. 113, 124 (1990); *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994).

Furthermore, there is a split of authority among the federal appellate courts regarding whether the Fourteenth Amendment will support a separate claim for "loss of companionship" or "loss of society and companionship" when brought by parents, particularly parents not standing in direct line of intestate succession and/or when defendants already have been ordered or agreed to make compensatory payments to decedents' family members standing in line under the rules of intestate succession.

For example, in *McCurdy v. Dodd*, 352 F.3d 820 (3d Cir. 2003), the adult son was killed by Philadelphia police. His mother, a single parent, successfully pursued a wrongful death case. The father, who played no meaningful role in rearing his son and had not even regularly paid child support, then asserted his parental rights and took some of the settlement money from the mother. Wanting more money, the father then filed his own lawsuit, alleging as his fourth cause of action loss of companionship and

2

claiming he has a protected liberty interest in the companionship, care, and affection of his independent adult son. The court rejected his claim, stating: "we hold that the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child." But the court mentioned, at footnote 6: "(In light of our disposition, we do not reach the issue of whether parents of an adult decedent may maintain a section 1983 claim").

In *Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005), an adult son, not living with his parents, not married, having conceived a child a few months before his death, and preparing to begin his own family unit, was killed by a Chicago police officer. Over the objections of Russ's parent, the child was named as sole heir by the probate court and a jury returned a $9.6 million verdict for the estate. The parents then filed a separate suit against the police, identifying as one of their causes of action "loss of the society and companionship" of their son and claiming violation of their right to associate with their son. The court held:

> [W]e need not impose an absolute rule that parents of adult children lack any liberty interest in their relationship with their children… We therefore overrule our decision in *Bell* insofar as it recognized a constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action. Having concluded that Russ's parents have no constitutional right to recover for the loss of society and companionship of Russ in these circumstances, we need not address the other issues raised by the parties."

### Argument

There is no case, plaintiffs' counsel could find, holding, as defendants argue, "parents do not have a protected liberty interest in their relationship with an adult child." Rather, the *McCurdy* case addresses whether a parent can bring, in a separate lawsuit, an independent cause of action for loss of companionship and base this independent cause of action on the Fourteenth Amendment.

The courts seem reluctant to allow just any persons, claiming to be related by blood, to bring multiple lawsuits against the same defendant. It seems likely the courts would reach conclusions similar to those in *McCurdy* and *Watts* where a decedent had a wife and she prevailed in her lawsuit, and then the decedent's parents came along and also tried to sue the same defendants arguing they have a separate and independent cause of action entitled "loss of companionship."

The *McCurdy* court was willing to tread into what it acknowledged is the "murky area of unenumerated constitutional rights" and decided "the Due Process Clause does not extend to a parent's interest in the companionship of his independent adult child." This is indeed a difficult area of the law, particularly when the circuits are split and the United States Supreme Court has not squarely addressed this issue. In any event, when the appellate courts have treaded into this "murky area," they have done so rather cautiously, limiting their decisions to the specific causes of action alleged, i.e., loss of society and/or companionship.

This Honorable Court should resist defendants' invitation to tread even deeper into this "murky area" - far deeper than the Third Circuit Court of Appeals was willing to venture - without any clear guidance from the United States Supreme Court - and hold, for the first time, that parents have no protected liberty interest in their relationship with an adult child, even when the allegations of the complaint and death certificate show he was living with his mother, he was experiencing serious mental health problems, and his father took him to the hospital seeking help, raising questions of fact about whether Harry Smith, III was an "independent adult". For, as Justice Stevens said in his dissenting opinion in *Albright v. Oliver*, 510 U.S. 266 (1994):

> As a qualitative matter, we have decided that the liberty secured by the Fourteenth Amendment is significantly broader than mere freedom from physical constraint. Although its contours have never been defined precisely, that liberty surely includes the right to make basic decisions about the future; to participate

> in community affairs; to take advantage of employment opportunities; to cultivate family, business, and social relationships; and to travel from place to place."

And in footnote 24 of his dissent he notes:

> Moreover, it likely made no difference to the outcome in *Graham* that the Court rested its decision on the Fourth Amendment rather than the Due Process Clause. The text of the Fourth Amendment's prohibition against "unreasonable" seizures is no more specific than the Due Process Clause's prohibition against deprivations of liberty without "due process." Under either provision, the appropriate standards for evaluating excessive force claims must be developed through the same common law process of case by case adjudication.

Determining the applicability of the Fourteenth Amendment is done on a case-by-case basis and is fact driven. Dismissing these plaintiffs' Fourteenth Amendment claims at this juncture, when there are factual questions looming about the independence of the decedent, would be inconsistent with even the *McCurdy* decision.

Furthermore, the *McCurdy* decision can be distinguished from the Smith case. The facts dramatically differ. But even if the facts were similar, in the Smith case there is no separate cause of action for "loss of companionship." Even if there was a separate cause of action for "loss of companionship" and the Court was inclined to dismiss it, the Smith parents still could pursue, under the Fourteenth Amendment, their claims for all other state authorized interests they lost, which include, per Delaware's wrongful death statute, deprivation of the expectation of pecuniary benefits that would have resulted from the continued life of the deceased, loss of contributions for support, loss of household services, and mental anguish. [Please see Exhibit 2 attached hereto.]

### Conclusion

For all of these reasons, and based upon the record in this case, plaintiffs respectfully request that this Honorable Court deny defendants' motion to dismiss their claims based upon the Fourteenth Amendment.

Dated this 4th day of October 2005.

5

/s/ Anne T. Sulton
Anne T. Sulton
Admitted: Pro Hac Vice

Sulton Law Offices
Post Office Box 2763
Olympia, WA 98507
Telephone: (609) 468-6029
E-Mail: annesulton@comcast.net

**LOCAL COUNSEL:**

/s/ Kester I.H. Cross
Kester I.H. Crosse
Delaware State Bar I.D. #638

Williams & Crosse
1214 King Street
Wilmington, DE 19801
Telephone: (302) 658-3488
E-Mail: kesterih@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2005, I electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

Attorney John Parkins    E-mail Parkins@rlf.com

Attorney Anne Sulton    E-mail annesulton@comcast.net

/s/ Kester I.H. Cross
Kester I.H. Crosse
Delaware State Bar I.D. #638
1214 King Street
Wilmington, DE 19801
Telephone: (302) 658-3488
E-Mail: kesterih@aol.com

*Exhibit 1*

# FEDERAL CIVIL
# JURY INSTRUCTIONS
# OF THE
# SEVENTH CIRCUIT

**Prepared By
The Committee on Pattern Civil Jury Instructions
of the Seventh Circuit**

### 7.08 FOURTH AMENDMENT/FOURTEENTH AMENDMENT: EXCESSIVE FORCE AGAINST ARRESTEE OR PRETRIAL DETAINEE - ELEMENTS

In this case, Plaintiff claims that Defendant used excessive force against him. To succeed on this claim, Plaintiff must prove each of the following things by a preponderance of the evidence:

1. Defendant used unreasonable force against Plaintiff;
[2. Because of Defendant's unreasonable force, Plaintiff was harmed;]
[3. Defendant acted under color of law.]

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you should find for Plaintiff, and go on to consider the question of damages. If, on the other hand, you find that Plaintiff did not prove any one of these things by a preponderance of the evidence, then you should find for Defendant, and you will not consider the question of damages.

**Committee Comments**

a. **Unreasonable Force:** For authority regarding the "unreasonable force" element of the claim, see *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985); *Deering v. Reich*, 183 F.3d 645 (7th Cir. 1999). Although *Graham* and *Garner* are Fourth Amendment cases involving arrestees, *Wilson v. Williams,* 83 F.3d 870, 876 (7th Cir. 1996), states that the same standard applies to pretrial detainees. A separate instruction applies to cases involving convicted prisoners. If the defendant contends that the application of force was accidental, the court may wish to break the first element into two:
1. Defendant intentionally used force against Plaintiff;
2. The force Defendant used was unreasonable;

b. **Harm to Plaintiff:** Although some other circuits include an element of "damage" in their pattern instruction, *see, e.g.,* EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS §4.30 (1999), the Committee believes that there is significant doubt as to whether damage, or "harm" as that term is commonly understood, is actually required for a finding of liability under §1983. Though "harm" in the commonly-understood sense is likely to exist in most excessive force cases, some cases will arise in which it does not, *e.g.*, a situation in which an officer strikes the plaintiff with his hand but leaves no mark and causes no lingering injury or pain. In such cases, the court will need to

determine whether the jury should be instructed on this point. In *Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir. 1985), the court held that an officer's use of force was unconstitutional if it (1) caused severe injuries; (2) was grossly disproportionate to the need for action under the circumstances; and (3) was inspired by malice or shocked the conscience. *Gumz,* however, was overruled by *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir. 1987), which used the same "totality of the circumstances test" that was later adopted by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). In *Lanigan v. Village of East HazelCrest, Illinois*, 110 F.3d 467 (7th Cir. 1997), the court upheld a claim based on force consisting of "one violent push and poke," noting that the plaintiff "need not have been injured to have an excessive force claim." *Id.* at 470 n.3. In *McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002), the court addressed a claim arising from an incident in which no physical force was used, but officers pointed their weapons at the plaintiffs. Though it determined that the officers were entitled to qualified immunity, and indicated that the Fourth Amendment appeared to require *some* use of force, *id.* at 467, the majority ended its opinion with the statement "we do not foreclose the possibility that the circumstances of an arrest could become 'unreasonable' without the application of physical force." *Id.* at 468. *See also Herzog v. Village of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002) (refusal to loosen chafing handcuffs or shoving an arrestee would constitute actionable excessive force) Even if, as *McNair* indicates, an application of force is required in order to implicate the Fourth Amendment, it is not at all clear that the plaintiff must suffer "harm" in order to obtain a finding of liability; the availability of nominal damages in excessive force cases suggests that "harm" is not a requirement. *See, e.g., Briggs v. Marshall,* 93 F.3d 355, 360 (7th Cir. 1996) (indicating that nominal damages may be awarded in a Fourth Amendment excessive force case where no injury resulted from the use of excessive force, where the evidence of actual injury is not credible, or where the injury has no monetary value). Because the issue of whether a plaintiff must prove "harm" is not definitively resolved, the Committee placed the second element in brackets, indicating that a court should give this part of the instruction to the jury at its discretion.

c. **Third element:** The third element should be eliminated if the "color of law" issue is not in dispute.

d. **Single Element Instruction:** If the second and third elements are eliminated, only one element will remain, and the instruction's second sentence should read as follows: "To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that Defendant used unreasonable force against him."

*Exhibit 2*

# TITLE 10: Courts and Judicial Procedure

## PART III

## Procedure

### CHAPTER 37. SURVIVAL OF ACTIONS AND CAUSES OF ACTION; WRONGFUL DEATH ACTIONS

### Subchapter II. Wrongful Death Actions

**§ 3721. Definitions.**

As used in this subchapter:

(1) "Child" includes an illegitimate child.

(2) "Parent" includes the mother and father of a deceased illegitimate child.

(3) "Person" includes an individual, receiver, trustee, guardian, executor, administrator, fiduciary or representative of any kind, or any partnership, firm, association, public or private corporation, or any other entity.

(4) "Sibling" means brothers and sisters of the whole and half blood or by order of adoption.

(5) "Wrongful act" means an act, neglect or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued. (63 Del. Laws, c. 256, § 4; 70 Del. Laws, c. 186, § 1; 72 Del. Laws, c. 47, § 1.)

**§ 3722. Liability notwithstanding death.**

(a) An action may be maintained against a person whose wrongful act causes the death of another.

(b) If the death of a person was caused by a wrongful act, neglect or default of a vessel, an action in rem may be maintained against the vessel.

(c) If a person whose wrongful act caused the death of another dies before an action under this section is commenced, the action may be maintained against a personal representative. (63 Del. Laws, c. 256, § 4; 70 Del. Laws, c. 186, § 1.)

**§ 3723. Wrongful act occurring outside of Delaware.**

Repealed by 71 Del. Laws, c. 265, § 1, eff. Apr. 20, 1998.

**§ 3724. Action for wrongful death.**

 (a) An action under this subchapter shall be for the benefit of the spouse, parent, child and siblings of the deceased person.

 (b) If there are no persons who qualify under subsection (a) of this section, an action shall be for the benefit of any person related to the deceased person by blood or marriage.

 (c) In an action under this subchapter, damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death. The amount recovered shall be divided among the beneficiaries in shares directed by the verdict.

 (d) In fixing the amount of damages to be awarded under this subchapter, the court or jury shall consider all the facts and circumstances and from them fix the award at such sum as will fairly compensate for the injury resulting from the death. In determining the amount of the award the court or jury may consider the following:

  (1) Deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries that would have resulted from the continued life of the deceased;

  (2) Loss of contributions for support;

  (3) Loss of parental, marital and household services, including the reasonable cost of providing for the care of minor children;

  (4) Reasonable funeral expenses not to exceed $2,000;

  (5) Mental anguish resulting from such death to the surviving spouse and next-of-kin of such deceased person. However, when mental anguish is claimed as a measure of damages under this subchapter, such claim for mental anguish will be applicable only to the surviving spouse, children and persons to whom the deceased stood in loco parentis at the time of the injury which caused the death of the deceased, parents and persons standing in loco parentis to the deceased at the time of the injury which caused the death of the deceased (if there is no surviving spouse, children or persons to whom the deceased stood in loco parentis ), and siblings (if there is no surviving spouse, children, persons to whom the deceased stood in loco parentis at the time of the injury, parents or persons standing in loco parentis to the deceased at the time of the injury which caused the death of the deceased).

 (e) Only 1 action under the subchapter lies in respect to the death of a person.

 (f) For the purposes of this section, a person born to parents who have not participated in a marriage ceremony with each other is considered to be the

child of the mother. The person is considered to be the child of the other parent only if the father:

(1) Has been judicially determined to be the father; or

(2) Prior to the death of the child:

a. Has acknowledged himself, in writing, to be the father; or

b. Has openly and notoriously recognized the person to be his child; or

c. Has subsequently married the mother and has acknowledged himself, orally or in writing, to be the father. (63 Del. Laws, c. 256, § 4; 70 Del. Laws, c. 186, § 1; 72 Del. Laws, c. 47, §§ 2, 3.)

### § 3725. Purpose.

The purpose of this subchapter is to permit the recovery of damages not limited to pecuniary losses by persons injured as the result of the death of another person. (63 Del. Laws, c. 256, § 4.)

## PART III

### Procedure

### CHAPTER 37. SURVIVAL OF ACTIONS AND CAUSES OF ACTION; WRONGFUL DEATH ACTIONS

#### Subchapter I. Survival of Actions and Causes of Action

### § 3701. Causes of action generally.

All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued. Accordingly, all actions, so surviving, may be instituted or prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued. This section shall not affect the survivorship among the original parties to a joint cause of action. (Code 1852, § 2295; Code 1915, § 4154; Code 1935, § 4637; 47 Del. Laws, c. 383; 10 Del. C. 1953, § 3701.)

### § 3707. Statutory right of action.

A statutory right of action or remedy against any officer or person, in favor of any person, shall survive to, or against the executor or administrator of such officer or person, unless it be specially restricted in the statute. (Code 1852, § 2300; Code 1915, § 4159; Code 1935, § 4642; 10 Del. C. 1953, § 3707.)