**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

HARRY SMITH, JR. and
ROSLYN WOODARD SMITH,
Individually and as Administrators of
The ESTATE OF HARRY SMITH, III,

    Plaintiffs,

v().    CIVIL ACTION NO. 04-1254-GMS

CITY OF WILMINGTON,

JOHN CIRITELLA, in his individual capacity
and in his official capacity as a police officer of
the Wilmington Police Department,

THOMAS DEMPSEY, in his individual capacity
and in his official capacity as a police officer of
the Wilmington Police Department,

and

MATTHEW KURTEN, in his individual capacity
and in his official capacity as a police officer of
the Wilmington Police Department,

    Defendants.

_____

**SECOND AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**
_____

    COME NOW the plaintiffs, by their attorneys, and for their causes of action against the defendants, complain and allege as follow:

**I.  NATURE OF ACTION**

    1. This civil action for money damages is brought under 42 U.S.C. Sections 1983, 1985, 1986 and 1988; the Fourth Amendment to the United States Constitution; and the common, statutory and constitutional laws of the State of Delaware.

2. This action is brought to redress injuries, damages, and other losses plaintiffs suffered as a result of the violation of Harry Smith, III's right to be free from excessive use of force by Wilmington police officers during his arrest.

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction over this action because it is brought pursuant to 42 U.S.C. Sections 1983, 1985, 1986 and 1988, and the Fourth Amendment to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. Section 1331 and 1343, and the aforementioned statutory provisions.

4. Plaintiffs invoke the supplemental jurisdiction of this Court to hear claims arising under state law.  Written notice of plaintiffs' claims was timely served upon the Mayor of Wilmington, as required by applicable state law.

5. This Court is the proper federal venue for this action because plaintiffs' claims arose within the geographical boundaries of the District of Delaware within the meaning of 28 U.S.C. Section 1391(b).

## III.  PARTIES

6. The plaintiff, Estate of Harry Smith, III, was established following his death, which occurred on September 13, 2003.  Harry Smith, III was not married and did not have children.  He is survived by his parents and twin brother.  His parents are the administrators of the Estate of Harry Smith, III.

7. The plaintiff, Harry Smith, Jr., is an adult male.  He is a resident of Wilmington, Delaware.  He is the father of Harry Smith, III.

8. The plaintiff, Roslyn Woodard Smith, is an adult female.  She is a resident of Bear, Delaware.  She is the mother of Harry Smith, III.

9. The defendant, City of Wilmington, is a duly incorporated or formed municipal or local government in the State of Delaware, and is the employer and principal of the defendant police officers named herein.  At all times material to this complaint, the

defendant police officers named herein were acting under color of state laws, and/or ordinances, regulations, statutes, customs and usages of the City of Wilmington.

10. The defendants, John Ciritella, Thomas Dempsey, and Matthew Kurten, are being sued in both their individual capacities and their official capacities. At all times relevant to this complaint, they were duly appointed and acting police officers of the Wilmington Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City of Wilmington. These defendants engaged in the conduct complained of, on said date, in the course and scope of their employment and while they were on duty.

### IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

11. On or about September 13, 2003, around 6:00 PM, Harry Smith, III went to a local hospital, complaining of mental health related ailments. He was accompanied by his father, plaintiff Harry Smith, Jr.

12. Before receiving treatment for his diagnosed ailments, which included hallucinations, paranoia and agitation, Harry Smith, III left the hospital, without the knowledge of hospital staff and over the objection of his father.

13. After leaving the hospital, Harry Smith, III noticed a Wilmington Police Department marked squad car (hereinafter "car") was nearby, had the emergency lights on, engine running, and the door open.

14. Without permission, Harry Smith, III entered this car and drove off, with the emergency lights on.

15. As Harry Smith, III drove off, one Wilmington police officer fired a shot at Harry Smith, III.

16. Other Wilmington police officers were alerted to this unauthorized use of the car and commenced pursuit.

17. This was not a high-speed pursuit. The pursuit lasted about two minutes.

18. Wilmington police officers were informed Harry Smith, III was experiencing mental health related ailments.

19. It was near 7:00 PM and there still was daylight.

20. Wilmington police officers, including defendants Ciritella and Dempsey, positioned their vehicles to block off the intersection at 5th and Harrison Streets.

21. At the intersection of 5th and Harrison Streets, defendant Ciritella, dressed in plain street clothes and driving an un-marked police car, positioned himself about a half block away from and in front of the stolen car. He then began shooting at Harry Smith, III, with the specific intent to kill him.

22. The stolen car crashed into an unoccupied Jeep, parked at the corner of 5th and Harrison Streets.

23. Harry Smith, III was seen slumping toward the car's steering wheel, but he continued to drive the car up the very steep hill of the 500 Block of Harrison Street.

24. The 500 Block of Harrison Street is a heavily populated residential area. Neighborhood residents, including small children and elderly persons, were on the sidewalks and on their front porches.

25. Defendants Ciritella, Dempsey, and Kurten ran or walked up the very steep hill after the car, all the while repeatedly firing their guns, with defendant Kurten pausing to re-load his weapon.

26. Neighborhood residents report dozens of bullets were flying everywhere, causing one woman on or near a porch to be hit in the leg by a bullet and other neighborhood residents jumping or running out of the way to avoid being hit by flying bullets. Numerous bullet holes were left in homes in the 500 Block of Harrison Street.

. 27. The stolen car stopped at or near the middle of the street, at or near the middle of the 500 Block of Harrison Street.

4

28. Harry Smith, III was seen slumping over the car's steering wheel, apparently unconscious, helpless, unarmed, and non-threatening to himself or others.

29. Defendants Ciritella, Dempsey, and Kurten continued shooting at Harry Smith, III, with the specific intent to kill him.

30. Over 30 shots were fired by defendants Ciritella, Dempsey, and Kurten in their attempt to kill Harry Smith, III.

31. Harry Smith was killed by a bullet wound to the head, but all of the bullets hitting him contributed to his death.

32. Shooting at Harry Smith, III was an unnecessary amount of force.

33. Harry Smith suffered at the hands of the defendant police officers. Not only was his death caused by said officers, but prior to death, Harry Smith, III suffered by being repeatedly shot by said officers.

34. The defendant police officers caused an excessive amount of force to be inflicted onto the body of Harry Smith, III. Said force was unreasonable and unnecessary.

35. As a direct and proximate result of one or more of the aforesaid acts or omissions of the defendant police officers, plaintiffs were caused to suffer serious and permanent personal injury, pain, suffering and mental anguish, both now and in the future.

36. The City of Wilmington has actual knowledge of plaintiffs' complaint through a notice of claim timely filed with it. However, it instructed the defendant police officers not to write a written report about this incident, contrary to the usual practice of officers writing reports about serious incidents.

37. The bloody body of Harry Smith, III was removed from the car, handcuffed, and left on the street for several hours.

38. While Harry Smith, III's dead and bloody body laid on the city street, much of his blood streamed down the street's very steep hill, and in full view of neighborhood residents and other on-lookers. It was a shocking, gruesome, disturbing and frightening site.

39. The manner in which Harry Smith, III's corpse was handled is outrageous and was done under the color of law.

40. The handcuffed corpse of Harry Smith, III was transported to the medical examiner's office. An autopsy was conducted.

41. The medical examiner reports the cause of death was a bullet wound to the head. The death certificate lists the manner of death as homicide.

42. The medical examiner also found nine other bullet wounds.

43. At least eight of the bullet wounds to the body of Harry Smith, III were caused by defendants Ciritella, Dempsey, and Kurten discharging their weapons at Harry Smith, III.

44. As a result of Harry Smith, III's demise, the plaintiff parents and the heirs of the decedent's estate have been deprived of the companionship of Harry Smith, III and of the enjoyment of his company and the loss of society associated with his death. As a proximate result of one or more of the above alleged acts or omissions, Harry Smith, III sustained severe injuries on or about his body, suffered and died.

## V. FIRST CAUSE OF ACTION

**[VIOLATION OF 42 U.S.C. SECTIONS 1983, 1985, 1986;**

**AND FOURTH AMENDMENT]**

45. All foregoing paragraphs are incorporated herein by reference as though fully set forth.

46. The actions of the defendant police officers constituted an excessive, unreasonable, and unjustifiable force against Harry Smith, III and therefore violated his

6

clearly established rights to be free from excessive, unreasonable force, and unreasonable search and seizure.

47. The aforementioned actions of the defendant police officers were the direct and proximate cause of the Constitutional violations set forth above.

48. The defendant officers are jointly, severally, or, by concert of action, liable for infliction of excessive, unreasonable force and infliction of unreasonable seizure, in violation of Harry Smith, III's clearly established rights under the Fourth Amendment to the United States Constitution, through 42 U.S.C. Section 1983, to be free from infliction of excessive, unreasonable force, and unreasonable seizure.

49. The actions of the defendant officers caused suffering to Harry Smith, III prior to his demise.

50. As Harry Smith, III approached the police road block at 5th and Harrison Streets, defendant Ciritella intentionally positioned himself so that he could, and he did, shoot at Harry Smith, III.

51. After the car stopped, and as Harry Smith, III was slumped over the car's steering wheel, apparently unconscious, helpless, unarmed and non-threatening, defendants Ciritella, Dempsey, and Kurten continued shooting at Harry Smith, III.

52. Harry Smith, III: a) did not physically resist or assault defendants Ciritella, Dempsey, or Kurten in any way; b) posed no immediate threat to the safety of defendants Ciritella, Dempsey, or Kurten, or others; and c) was not attempting to evade arrest by flight.

53. It was clear to a reasonable officer, and defendants Ciritella, Dempsey, and Kurten actually knew, that shooting directly at Harry Smith, III, after the car stopped and while he was slumped over the steering wheel, apparently unconscious, helpless, unarmed and non-threatening, had a substantial risk of serious injury or death.

7

54. The deadly force defendants Ciritella, Dempsey, and Kurten used against Harry Smith, III, before and after the car stopped, was unnecessary, unreasonable, and excessive. It constitutes an unreasonable seizure of and cruel punishment of Harry Smith, III in violation of the Fourth Amendment to the United States Constitution.

55. The actions of defendants Ciritella, Dempsey, and Kurten in continuing to shoot Harry Smith, III, after the car stopped and he was slumped over the steering wheel, apparently unconscious, helpless, unarmed and non-threatening, were inappropriate in light of the risk.

56. Defendants Ciritella, Dempsey, and Kurten actually recognized their actions were wrong and would cause the death of Harry Smith, III.

57. Defendants Ciritella's, Dempsey's, and Kurten's response, to the knowledge noted above, was so inadequate as to show deliberate indifference.

58. The conduct of defendants Ciritella, Dempsey, and Kurten, in continuing to shoot Harry Smith III, after the car stopped and while he was slumped over the car's steering wheel, apparently unconscious, helpless, unarmed and non-threatening, until they were certain he was dead, rather than shooting only until they were certain he posed no threat, shocks the conscience and is fundamentally offensive to a civilized society.

59. The actions of defendants Ciritella, Dempsey, and Kurten amount to callous, reckless, or deliberate indifference to the constitutional rights of Harry Smith, III and caused Harry Smith, III's constitutional deprivation.

60. The actions of the defendants Ciritella, Dempsey, and Kurten violated clearly established and well settled constitutional rights of Harry Smith, III, including, but not limited to:

a. freedom from the unreasonable seizure of his person; and

b. freedom from the excessive, unreasonable and unjustified force against his person.

61. The acts of defendants Ciritella, Dempsey, and Kurten were done in reckless disregard of Harry Smith, III's rights, or were grossly negligent, or were deliberately indifferent to the rights of Harry Smith, III.

62. The acts of defendants Ciritella, Dempsey, and Kurten were committed maliciously, wantonly, willfully, and without probable or reasonable cause, excuse or justification therefore.

63. As a result and proximate cause of the excessive use of force by defendants Ciritella, Dempsey, and Kurten, before and after the car stopped, Harry Smith, III suffered and died and plaintiffs suffered and will continue to suffer emotional distress, humiliation, embarrassment, and other injuries, damages, and losses.

64. At all times during the events described above, defendants Ciritella, Dempsey, and Kurten were engaged in a joint venture. The individual defendants, Ciritella, Dempsey, and Kurten, assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

65. There is an affirmative causal link between the actions of defendants Ciritella, Dempsey, and Kurten and the particular fatal injuries suffered by Harry Smith, III, and losses suffered by plaintiffs.

66. As a direct and proximate result of the said acts of the defendants, among the injuries and damages Harry Smith, III and plaintiffs suffered are:

a. violation of Harry Smith, III's constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure of his person and cruel punishment;

b. physical pain and suffering;

    c. emotional trauma and suffering; and

    d. death.

    67. The defendant police officers named herein committed the following acts and/or omissions in violation 42 U.S.C. § 1983 and the United States Constitution:

    a.    used an unreasonable amount of force on the body of Harry Smith, III;

    b.    improperly restrained Harry Smith, III using an unreasonable amount of force.

    68. That because of the foregoing, defendants Ciritella, Dempsey, and Kurten have damaged Harry Smith, III and plaintiffs.

    69. Wherefore, plaintiffs seek judgment against the defendant police officers for damages, costs, attorneys fees, and such other additional relief as this Court deems equitable and just.

## VI. SECOND CAUSE OF ACTION

### [SUPPLEMENTARY CLAIM FOR RESPONDEAT SUPERIOR]

    70. All foregoing paragraphs are incorporated herein by reference as though fully set forth.

    71. The aforesaid acts of the defendant police officers were in the scope of their employment as police officers and therefore the City of Wilmington, as principal, is liable for the actions of its agents under the doctrine of *respondeat superior*.

    72. Wherefore, plaintiffs demand judgment against the City of Wilmington for damages, costs, attorneys fees, and such other additional relief, as this Court deems equitable and just.

## VII. THIRD CAUSE OF ACTION

### [MONELL CLAIM AGAINST THE CITY OF WILMINGTON]

    73. All foregoing paragraphs are incorporated herein by reference as though fully set forth.

74. It is the custom, practice and policy of police officers and/or their supervisors/agents and/or other employees of the City of Wilmington to perform the following acts and/or omissions:

    a.    City of Wilmington police officers have committed acts of excessive force against civilian individuals;

    b.    Supervisory individuals from the City of Wilmington fail to properly discipline City of Wilmington police officers that have committed an act of excessive force against civilian individuals;

    c.    Supervisory individuals from the City of Wilmington fail to properly investigate a complaint of excessive force perpetrated by a City of Wilmington police officer, in this case they even instructed the defendant police officers not to write a report;

    d.    Supervisory individuals from the City of Wilmington fail to take proper remedial action against a City of Wilmington police officer once it is determined that he/she has committed an act of excessive force against civilian individuals;

    e.    Supervisory individuals from the City of Wilmington continue to teach and train City of Wilmington police officers it is acceptable to shoot at a moving vehicle, despite overwhelming evidence that so doing comprises an act of excessive force, upon another, often resulting in wrongful death;

    f.    Supervisory individuals from the City of Wilmington do not provide proper training to police officers to ensure the proper use of their guns or other means of deadly force;

    g.    The City of Wilmington's failures, acts and/or omissions create a custom, usage, or unwritten policy that allows City of Wilmington police officers to engage in acts of excessive force without being held accountable, which

results in the death of civilians. The above described policies and customs demonstrate a deliberate indifference on the part of policymakers of the City of Wilmington to the clearly established constitutional rights of persons within the city, and were the cause of the violations of Harry Smith, III's clearly established rights alleged herein.

75. It is the custom, practice and policy of police officers and/or their supervisors/agents and/or other employees of the City of Wilmington to perform the following acts and/or omissions in connection with excessive force complaints in general that are directed at Wilmington police officers:

    a. Supervisory individuals from the City of Wilmington fail to properly discipline City of Wilmington police officers having committed an act of excessive force against civilian individuals;

    b. Supervisory individuals from the City of Wilmington fail to properly investigate a complaint of excessive force perpetrated by a City of Wilmington police officer, in this case they even instructed the defendant police officers not to write a report;

    c. Supervisory individuals from the City of Wilmington fail to take proper remedial action against a City of Wilmington police officer once it is determined that he/she has committed an act of excessive force against civilian individuals;

    d. The City of Wilmington's failures, acts and/or omissions create a custom, usage, or unwritten policy that allows City of Wilmington police officers to engage in acts of excessive force without being held accountable, which results in the death of civilians. The above described policies and customs demonstrate a deliberate indifference on the part of

policymakers of the City of Wilmington to the clearly established constitutional rights of persons within the city, and were the cause of the violations of Harry Smith, III's clearly established rights alleged herein.

76. As a result of the misconduct undertaken by the City of Wilmington, through its employees, Harry Smith, III suffered serious injuries and death, as the custom, practice and policy of the City of Wilmington permits and/or makes conducive to City of Wilmington police officers to engage in acts of excessive force, which cause or result in the type of conduct that occurred in this instant cause and as alleged in this complaint.

77. Wherefore, plaintiffs demand judgment against the City of Wilmington, plus attorneys fees and costs, and any additional relief this Court deems equitable and just.

## VIII. FOURTH CAUSE OF ACTION
## [VIOLATION OF DELAWARE CONSTITUTIONAL LAW, ARTICLE I, SECTIONS 6 AND 11]

78. All foregoing paragraphs are incorporated herein by reference as though fully set forth.

79. Article I, Sections 6 and 11 of the Delaware Bill of Rights, prohibits unreasonable seizures and cruel punishments.

80. The deadly force defendants Ciritella, Dempsey, and Kurten used against Harry Smith, III was unnecessary, unreasonable, and excessive.

81. The deadly force defendants Ciritella, Dempsey, and Kurten used against Harry Smith, III constitutes an unreasonable seizure of and cruel punishment of Harry Smith, III in violation of Article I, Sections 6 and 11 of the Delaware Bill of Rights.

82. That because of the foregoing, defendants have damaged Harry Smith, III and plaintiffs.

83. Plaintiffs seek damages, attorneys fees and costs, and any additional relief this Court deems equitable and just.

## IX.  FIFTH CAUSE OF ACTION

### [STATE LAW WRONGFUL DEATH CLAIM]

84. All foregoing paragraphs are incorporated herein by reference as though fully set forth.

85. The actions of defendants Ciritella, Dempsey, and Kurten resulted in the wrongful death of Harry Smith, III.

86. The actions of defendants Ciritella, Dempsey, and Kurten were performed with wanton negligence or wilful and malicious intent.

87. That because of the foregoing, defendants Ciritella, Dempsey, and Kurten have damaged Harry Smith, III and plaintiffs.

88. Plaintiffs are entitled to an award of damages that will fairly compensate them for the injuries, damages and other losses resulting from Harry Smith, III's death, including, but not limited to: deprivation of the expectation of pecuniary benefits to the plaintiffs that would have resulted from the continued life of Harry Smith, III; loss of contributions for support; loss of household services; reasonable funeral expenses; and mental anguish resulting from Harry Smith, III's death.

89. Plaintiffs seek damages, attorneys fees and costs, and any additional relief this Court deems equitable and just.

## X.  SIXTH CAUSE OF ACTION

### [VIOLATION OF DELAWARE LAW - ABUSE OF CORPSE]

90. All foregoing paragraphs are incorporated herein by reference as though fully set forth.

91. Delaware statutes prohibit abuse of a corpse.

92. A corpse is abused when it is treated in a way that a reasonable person knows would outrage ordinary family sensibilities.

93. The City of Wilmington, through its police officers, employees, agents, and/or representatives, treated, and/or permitted others to treat, Harry Smith, III's corpse in a way that a reasonable person knows would outrage ordinary family sensibilities.

94. That because of the foregoing, plaintiffs have been damaged.

95. Plaintiffs seek damages, attorneys fees and costs, and any additional relief this Court deems equitable and just.

## XI. REQUEST FOR RELIEF

**WHEREFORE,** plaintiffs respectfully request that this Honorable Court advances their case on the docket, orders a speedy trial, and causes this case to be in every way expedited, and, upon hearing, grant them judgment against the defendants, jointly and severally:

A.  Ordering defendants to make whole plaintiffs from the adverse effects of the unlawful acts and practices complained of herein by providing relief that includes compensatory damages, pre- and post-judgment interest, and any other damages as provided by law to compensate plaintiffs for injuries, damages and other losses suffered as a result of the deprivation of the constitutional and other rights of Harry Smith, III and plaintiffs, including, but not limited to, funeral and burial expenses, lost income, loss of society and companionship, loss of services, physical pain and suffering, mental distress, emotional distress, emotional trauma, mental pain and suffering, fright, fear, anxiety, anguish, personal indignity, humiliation, embarrassment, discomfort, and other personal injuries, damages and losses;

B.  Retain jurisdiction over this action to assure full compliance with the Orders of the Court;

    C.    Grant plaintiffs' attorneys' fees, court costs, expert witness fees, and other disbursements; and

    D.    Grant such other and further relief as the Court deems just and proper.

**PLAINTIFFS HEREBY REQUEST A TRIAL BY A SIX-PERSON JURY.**

June 5, 2006.

/s/ Anne T. Sulton
Anne T. Sulton
Admitted: Pro Hac Vice

Sulton Law Offices
Post Office Box 2763
Olympia, WA  98507
Telephone: (609) 468-6029
E-Mail: annesulton@comcast.net

**LOCAL COUNSEL:**

/s/ Kester I.H. Cross
Kester I.H. Crosse
Delaware State Bar I.D. #638
1214 King Street
Wilmington, DE  19801
Telephone: (302) 658-3488
E-Mail: kesterih@aol.com

### CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2006, I electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Attorney John Parkins   E-mail Parkins@rlf.com

/s/ Anne T. Sulton
Anne T. Sulton