## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY SMITH, JR. and ROSLYN<br>WOODARD SMITH, Individually and as<br>Administrators of THE ESTATE OF<br>HARRY SMITH, III <br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF WILMINGTON, JOHN<br>CIRITELLA, THOMAS DEMPSEY, and<br>MATHEW KURTEN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 04-1254-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

Rosamaria Tassone
City of Wilmington Law Department
City/County Building, 9th Floor
800 N. French Street
Wilmington, Delaware 19801
302-576-2175

John A. Parkins, Jr. (#859)
K. Tyler O'Connell (#4514)
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
302-651-7700
Parkins@rlf.com
Oconnell@rlf.com
Attorneys for Defendants

Dated: July 12, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

COUNTERSTATEMENT OF FACTS .........................................................................1

ARGUMENT ............................................................................................................4

I.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY
      JUDGMENT ON THE PLAINTIFFS' SECTION 1983 CLAIM. ........................4

      A.  General Comments .......................................................................................4

      B.  Analysis Of The Three Phases Of The Shots. ............................................6

            1.  Phase 1:  Plaintiffs Do Not Assert Any Claim For The Phase-1
                Shot And None Of The Defendants Were Involved In Phase-1. ............6

            2.  Phase 2:  There Is No Genuine Dispute Of Material Fact That The
                Officers Acted Reasonably When Smith Apparently Tried To Run
                Over Detective Ciritella. ......................................................................7

                  a.  There Is No Contradictory Testimony .........................................8

                  b.  The Physical Evidence Is Consistent With The Testimony ...........10

                  c.  Smith's Intent Is Irrelevant .........................................................11

      C.  The Undisputed Evidence Shows That It Was Constitutionally
          Permissible To Use Deadly Force In Phase-3. ............................................12

II.   PLAINTIFFS do not dispute that their CLAIMS UNDER 42 U.S.C. §§
      1985 AND 1986 MUST BE DISMISSED BECAUSE THEY HAVE
      FAILED TO ALLEGE -- AND CANNOT SHOW -- A CONSPIRACY
      AND CLASS-BASED DISCRIMINATION. ......................................................16

III.  PLAINTIFFS' CLAIMS FOR PURPORTED VIOLATIONS OF THE
      DELAWARE CONSTITUTION FAIL FOR THE SAME REASONS AS
      THEIR FEDERAL CLAIMS. ..........................................................................17

IV.   THE OFFICERS ARE STATUTORILY IMMUNE FROM PLAINTIFFS'
      STATE LAW TORT CLAIMS. .......................................................................17

V.    PLAINTIFFS DO NOT DISPUTE THAT THEIR ABUSE OF A
      CORPSE CLAIM SHOULD BE DISMISSED. ................................................18

CONCLUSION .......................................................................................................19

i

## TABLE OF AUTHORITIES

### CASES

*Abraham v. Raso,*
  183 F.3d 279 (3d Cir. 1999)............................................................................7, 8

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)...........................................................................................5

*Beasley v. Piekutowski,*
  2005 WL 1463485 (E.D. Mo. June 21, 2005) ................................................11

*Billington v. Smith,*
  292 F.3d 1177, 1189 (9th Cir. 2002) ................................................................5

*Couden v. Duffy,*
  446 F.3d 483 (3d Cir. 2006)........................................................................17, 18

*Garrison v. Town of Bethany Beach,*
  131 F. Supp. 2d 585 (D. Del. 2001)..................................................................5

*Graham v. Connor,*
  490 U.S. 386 (1989)..........................................................................................11

*Griffin v. Breckenridge,*
  403 U.S. 88 (1971).............................................................................................16

*Hernandez v. Jarman,*
  340 F.3d 617 (8th Cir. 2003) ...........................................................................11

*Marche v. Parrachak,*
  2000 WL 1507403 (E.D. Pa. Oct. 10, 2000),
  *aff'd,* 276 F.3d 578 (3d Cir. 2001) TABLE)..................................................11

*Reid v. Ford,*
  2005 WL 2898058 (M.D.N.C. Mar. 11, 2005),
  *aff'd,* 2005 WL 1725705 (M.D.N.C. Apr. 22, 2005).....................................15

*Smith v. Freland,*
  954 F.2d 343 (6th Cir. 1991), *cert. denied,* 504 U.S. 915 (1992).................15

*Tennessee v. Garner,*
  471 U.S. 1 (1985) ..............................................................................................12

*VIM, Inc. v. Somerset Hotel Ass'n,*
 19 F. Supp. 2d 422, 428 & n.4 (W.D. Pa. 1998),
 *aff'd*, 187 F.3d 627 (3d Cir. 1999) (TABLE) .......................................................................5

*Williams v. City of Grosse Pointe Park,*
 2005 WL 2173686 (E.D. Mich. Sept. 6, 2005)..........................................................11, 15

## STATUTES & AUTHORITIES

10 *Del. C.* § 4011(c)............................................................................................................17

Del. P.J.I. Civ. 10.13 (2003) .............................................................................................18

iii

## COUNTERSTATEMENT OF FACTS

In their Statement of Facts plaintiffs frequently make up facts out of whole cloth, misstate the record or make misleading statements about the record. Defendants will not attempt a point by point refutation, since plaintiffs' factual misstatements are immaterial. However, in order to demonstrate to the Court that plaintiffs' Statement of Facts is unreliable, defendants will illustrate a few of the factual misstatements in plaintiffs' brief:

  1. **Plaintiffs' Brief:**  "[Detective Ciritella] can clearly see Harry is not armed and the shotgun is not in the key locked shotgun rack. But Ciritella continues to shoot until all 13 bullets are fired from his gun. (B-159)." (Ans. Br. 14)

**The Record:** These assertions illustrate plaintiffs' tendency to simply make up facts. Here the cited portion of the record does not even remotely support the factual assertion that Ciritella "can clearly see Harry is not armed and the shotgun is not in the key locked shotgun rack" while he was shooting at Smith. Neither the shotgun nor whether Smith was armed was even discussed in the passage. Indeed, Ciritella was never asked in his deposition whether, at the time he was shooting, he knew if Smith was armed.

  2. **Plaintiffs' Brief:**  "Watching these events unfold [on Washington Street] is WPD Sgt. Deborah Donohue. She is very nearby and is able to hear the gun shot. (B-143- to 144)." (Ans. Br. 8)

**The Record:** This illustrates plaintiffs' propensity to cite portions of the record which do not support the factual statement. Here the portion of the record cited is the deposition of Officer Whitehead, the officer who interrupted the car jacking and shot Smith on Washington Street. The only testimony about Sergeant Donohue in the cited portion of the record was that she was in a police car "right in the block" and that she pursued Smith when he drove away. There was absolutely no testimony about whether she was "watching the events unfold" or was

"able to hear the gunshot." In fact, Officer Whitehead later testified "I don't know what she saw." (C21)

>   3.  **Plaintiffs' Brief:**  "He [defendant Kurten] stops firing when the other two defendants stop firing. (B-163)." (Ans. Br. 16).

**The Record:** This factual assertion is misleading because it would lead the Court to conclude that the reason defendant Kurten stopped firing is that the other two defendants stopped. But the portion of the record cited by plaintiffs tells an entirely different story:

>   "Q:    Why did you stop shooting?"
>
>   "A:    As the incident unfolded, it appeared that Mr. Smith was incapacitated. I remember watching him slump over the right-hand side. The car was approached, safely put in park, and there was no further use of force necessary at that point."

(B-163).

>   4.  **Plaintiffs' Brief:**  "Whitehead believes Harry is the hospital patient about whom he has been notified. (B-142)." (Ans. Br. 7)

**The Record:** This again illustrates plaintiffs' practice of making up facts. By way of brief explanation, Officer Whitehead earlier received a call about "a tall light skinned black male who had ran away from the hospital." (C18). But Officer Whitehead -- contrary to plaintiffs' made-up fact -- never thought that Smith was the man described in the earlier call. Whitehead testified that when he saw Smith, he knew "[c]learly he wasn't the guy we were looking for. His physical stature did not match the guy we were initially looking for ...." (C19).

>   5.  **Plaintiffs' Brief:**  "This particular vehicle is equipped with ... a key-locked shotgun rack in the driver's portion of the car." (Op. Br. 6).

**The Record:** This is misleading because it suggests that the officers should have known Mr. Smith would need a key to unlock the shotgun. Plaintiffs fail to tell the Court anywhere in

2

their brief that the shotgun can be released from the rack simply by pushing a button on the center console of the patrol car. (C20).

3

## ARGUMENT

I.    **THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' SECTION 1983 CLAIM.[1]**

   A.    **General Comments.**

   In the time-honored tradition of parties resisting a motion for summary judgment, plaintiffs attempt to create the impression that there is a genuine dispute of material fact.[2] Notably, however, plaintiffs' brief contains not a single word challenging the Statement of Facts in Defendants' Opening Brief -- the facts upon which their motion is based. Rather, plaintiffs point to factual "disputes" which are immaterial and seek to substitute conjecture for evidence.

   The so-called "factual disputes" asserted by plaintiffs are not material. It is settled that disputes of immaterial facts will not defeat a motion for summary judgment.

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact .... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

---

[1] The plaintiffs failed to respond to defendants' argument that plaintiffs have not asserted any theory under which the City could be liable under Section 1983. (Op. Br. 15 & n.3).

[2] In their brief, plaintiffs complain they have not received the videotape from the mobile recorder in the stolen police car. As explained to plaintiffs' counsel, the mobile recorder was not functioning that day, and the videotape shows nothing but "snow." On April 6, 2006 defendants wrote to plaintiffs asking them to advise defendants if they believed there were any outstanding discovery issues. (C24). No response was received from plaintiffs. In any event, if plaintiffs believed they needed the tape, their remedy was to file an application under Fed. R. Civ. P. 56(f). They have not done so.

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Garrison v. Town of Bethany Beach*, 131 F. Supp. 2d 585, 587 n.2 (D. Del. 2001) (granting summary judgment even though there were immaterial factual disputes).[3]

The following summarizes the immaterial factual disputes upon which plaintiffs rely in their brief:

- Plaintiffs refer to a statement by defendant Dempsey during the police investigation that he looked for cover and there was none because there were no parked cars on Harrison Street. They then refer the Court to a photograph showing parked cars on Harrison Street. (Ans. Br. 38). It is immaterial, of course, whether there were cars parked on Harrison Street which would provide cover to Officer Dempsey.

- Plaintiffs next refer the Court to a statement by Officer Dempsey to police investigators about what happened when the shooting was over. "Somebody went in and uh took the gun, the suspect out of the car." (Ans. Br. 38). They assert that this could not be true because the loaded shotgun was in the trunk of the stolen police car. Once again, this is immaterial. Defendants' motion assumes that the shotgun, ordinarily carried in the driver's compartment of a patrol car, was in this instance in the trunk. (*See* Op. Br. 8).

---

[3] Plaintiffs attach to their Answering Brief two reports from purported experts who state in a conclusory manner that the officers' actions were not reasonable. Plaintiffs apparently do not reply on such reports to avoid summary judgment, as they are not cited in the Argument section of the Answering Brief. Any reliance on them for summary judgment purposes would be misplaced, because at summary judgment it is the Court's function to decide the legal issue of whether a reasonable officer in the circumstances of the defendant could have believed his actions were justified. *See, e.g., Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002); *VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 428 & n.4 (W.D. Pa. 1998), *aff'd*, 187 F.3d 627 (3d Cir. 1999) (TABLE).

5

- Without citation to the record, plaintiffs claim that each of the defendants stated when they were interviewed on September 13, 2003 they ran up Harrison Street, whereas in their depositions they testified they walked up Harrison Street. (Ans. Br. 38-39). Plaintiffs make no effort to show the materiality of this alleged discrepancy.

- Plaintiffs cite to Detective Ciritella's testimony that he did not see Officer Dempsey between the time he was at the corner of 5th and Harrison at the time he put the stolen police car in park. They claim this is contradicted by Dempsey's statement to police investigators that when the shooting ended "we both made eye contact and we were looking you know make sure you know knew what both of us were doing." (Ans. Br. 37-38). Plaintiffs do not bother to explain to the Court how the alleged fact that Detective Ciritella did not make eye contact with Officer Dempsey *after the shooting* is material to the issues presented here.

**B.    Analysis Of The Three Phases Of The Shots.**

In their Opening Brief, defendants divided the shots into three phases: Phase-1 is the shot fired on Washington Street; Phase-2 are the shots fired at Mr. Smith on Fifth Street before he made the turn onto Harrison and attempted to escape; and Phase-3 are the shots fired at Mr. Smith as he was driving north on Harrison Street. Defendants will use the same template for their analysis here.

**1.    Phase 1:  Plaintiffs Do Not Assert Any Claim For The Phase-1 Shot
And None Of The Defendants Were Involved In Phase-1.**

In their opening brief, defendants pointed out that the Amended Complaint does not assert a claim for the shot fired at Washington Street, the police officer who fired the shot on

6

Washington Street was not named as a defendant, and there is no evidence that any of the defendants was present at Washington Street. (Op. Br. 16). Plaintiffs do not dispute any of this.

> ## 2. Phase 2: There Is No Genuine Dispute Of Material Fact That The Officers Acted Reasonably When Smith Apparently Tried To Run Over Detective Ciritella.

It is important to note that nowhere in their Amended Complaint do plaintiffs assert that the shots fired during Phase-2 amounted to a constitutional deprivation. (Op. Br. 16). Indeed, plaintiffs go so far as to concede that as Smith approached the intersection "[a]t this moment, the window of opportunity to use deadly force opens because the car is headed in their direction and they do not know the intentions of the driver." (Ans. Br. 12) For these reasons alone, the Court should dismiss any claim relating to the Phase-2 shots. However, defendants are not certain they fully understand plaintiffs' brief and therefore, out of an abundance of caution, will analyze the Phase-2 shots as if plaintiffs are challenging them.

Plaintiffs do not address any of the Fourth Amendment or qualified immunity authorities cited by the defendants and instead rely exclusively on *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999). Plaintiffs wrongly claim, without any supporting analysis, that *Abraham*'s facts are "right on point with the facts of this case." (Ans. Br. 34). In *Abraham*, the Third Circuit held that Raso, an off-duty police officer who shot and killed a suspect who attempted to drive away from a mall after he shoplifted some clothes, was not entitled to summary judgment. *Id.* at 281. Raso claimed she was entitled to use deadly force because the otherwise non-violent shoplifting suspect, whom she was told may be intoxicated, posed a threat of harm to the public because he quickly backed his vehicle out of a parking space and then accelerated toward her. *Id.* at 292-93. But, unlike here, her claim that she was in harm's way was disputed by eyewitness testimony. *See id.* at 283-84. Further, the physical evidence contradicted Raso's claim that she was in front of the car and fired through the front windshield at the defendant's on-coming car; the physical

7

evidence showed that the shot had to have come from the side of the car. *Id.* at 293-94. Thus the Third Circuit concluded that the only undisputed facts -- that "Abraham had stolen some clothing, resisted arrest, hit or bumped into a car, and was reasonably believed to be intoxicated" -- did not justify the use of deadly force. *Id.* at 293. In sharp contrast to *Abraham*, there is no contradictory testimony in the instant case and the physical evidence is entirely consistent with the events described by defendants.

### a.    There Is No Contradictory Testimony.

Plaintiffs assert that there are "changing stories" and contradictions in the defendants' testimony, but they cite only minor inconsistencies which are immaterial and do not relate in any way to the Phase-2 shots. (Those purported factual disputes are discussed at the outset of this Argument in the General Comments section). The testimony with respect to Phase-2 is uniform: Smith appeared to be driving at Detective Ciritella.

- **Detective Ciritella's Testimony:** Detective Ciritella exited his vehicle and took cover behind a building on the northeast corner of 5th and Harrison Street. The stolen police car appeared to be coming to a stop as it approached Harrison, and Detective Ciritella came out from behind the building to take control of the situation. Here is how he described what happened next:

> As the vehicle stopped, I gave verbal commands for him to turn the car off, step out of the vehicle. I know at which point, again, as I'm fearing that he doesn't see me, I come out a little bit, identify myself, tell him again, "Shut off the car. Exit your vehicle."

> As I come out, he then looks over at me. I can actually see a black male with a white T-shirt give me eye contact. Again, I give him a verbal command, at which point the police vehicle accelerates towards me in my direction.

8

As I backpedal, the vehicle is getting closer.
I fire shots into the windshield. I can see them hit
the windshield. The vehicle still continues to come
after me. Backpedaling, there's like a sidewalk
here. I'm now on the sidewalk, at which point the
vehicle then comes by me. Fearing my life, I fire
into the vehicle, at which point he strikes a parked
car here.

(A6).

- **Sergeant Kurten's Testimony:** Defendant Kurten's description of the events is

consistent with Detective Ciritella's:

Once he proceeded to accelerate, drive up on the
sidewalk towards Detective Ciritella, I moved
around towards the intersection of 5th and Harrison
Street and I observed that he was going straight
towards Detective Ciritella.

(A43).

- **Officer Thomas Dempsey's Testimony:** Officer Dempsey's recollection is

similar to that of the other officers:

At which time approaching John's car, the vehicle
was stopped for -- I noticed -- I observed that the
suspect vehicle was stopped for a short amount of
time. I observed that several officers were starting
to get out of their vehicles behind the suspect car.
A feeling that now he was not going to be able to go
anywhere now with the fact that the two vehicles
were blocking the intersection behind him. There
were -- I don't know how many cars were behind
him, but there were several. I felt that he was
contained at that point and that hopefully, you
know, we could contain the situation at that area.

Upon approaching the rear -- or the front of,
actually, John Ciritella's vehicle, the suspect vehicle
started to proceed forward at actually, for the short
distance he had, at a high rate of speed towards
John Ciritella. I observed that, I observed John
starting to back up from him, attempting to get out

9

> of his way, at which time he was also basically
> heading in my direction, also.

(A29).

Importantly, even though plaintiffs contend that the neighborhood was "densely populated" and "[a]t this time, there are many neighborhood residents on their porches and on the sidewalk near their homes" (Ans. Br. 9, 10), they have not come forward with a single witness to dispute the testimony of these officers.

### b.    The Physical Evidence Is Consistent With The Testimony.

Plaintiffs incorrectly argue that the physical evidence is inconsistent with the aforementioned descriptions of these events:

- First, plaintiffs argue that shell casings from Detective Ciritella's gun found on the sidewalk somehow contradict the testimony. (Ans. Br. 35). They offer no expert testimony to support their conclusory assertion. In fact, the location of the shell casings is entirely consistent with Detective Ciritella's testimony. He testified he was backpedaling to avoid the on-rushing car. Thus, the shell casings on the sidewalk are exactly where one would expect to find them.

- Plaintiffs argue that the trajectory sticks shown in the photograph at Plaintiffs' B-2 "clearly show Ciritella was on the passenger side of the car when he fired into the windshield, not in front of the car." (Ans. Br. 35). The photograph upon which plaintiffs rely plainly shows the sticks protruding out the front windshield toward the front passenger side of the car. Again, this is consistent with Detective Ciritella's testimony that he fired at the front of the car as he retreated.

- Plaintiffs point to the fact that airbags did not deploy in the stolen police car when Smith rammed the parked Jeep Cherokee. They conclude from this alone that it

10

was a low speed crash, although photographs of the Jeep (and all the eyewitness testimony) are to the contrary. (C22).[4] They have not offered any explanation why this means that it was unreasonable for the officers to believe Smith was driving at Ciritella.

### c.   Smith's Intent Is Irrelevant.

Finally, plaintiffs (at Ans. Br. 35) speculate that Smith "was intentionally moving away from Ciritella to avoid gunfire." Smith's actual intent is irrelevant; the only issue is whether the officers reasonably perceived that Smith's actions threatened Ciritella with serious physical harm. *See, e.g., Graham v. Connor*, 490 U.S. 386, 399 (1989) ("The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts … have no proper place in that inquiry."); *Hernandez v. Jarman*, 340 F.3d 617, 624 (8th Cir. 2003) (intent of dangerous suspect who directs vehicle toward an officer is "irrelevant"); *Williams v. City of Grosse Pointe Park*, 2005 WL 2173686, at *6 (E.D. Mich. Sept. 6, 2005) ("The issue before the Court is whether a reasonable officer in [the defendant's] shoes would have feared for [another officers'] life, his life, or the safety of the public in general. To answer that question, the Court does not consider what was in [the suspect's] mind when he first backed into [an officer's] car and then, upon sight of [another officer's] approach, immediately accelerated forward …"); *Beasley v. Piekutowski*, 2005 WL 1463485, at *6 (E.D. Mo. June 21, 2005) (granting summary judgment and reasoning that "[p]laintiffs do not dispute that the officers *perceived* the [vehicle] as moving forward" toward officers) (emphasis in original); *Marche v. Parrachak*, 2000 WL

---

[4] Only the front passenger corner of the stolen police car struck the Jeep Cherokee. Plaintiffs have not proffered any evidence as to whether the air bag sensors were impacted in the collision. (C23).

11

1507403, at *6 (E.D. Pa. Oct. 10, 2000) (suspect's subjective intent whether to use weapon is

irrelevant), *aff'd*, 276 F.3d 578 (3d Cir. 2001) (TABLE).

### C.    The Undisputed Evidence Shows That It Was Constitutionally Permissible To Use Deadly Force In Phase-3.

Plaintiffs seem to have abandoned the theory alleged in their Amended Complaint that

the individual defendants continued to shoot after Smith was "seen slumping over the car's

steering wheel, apparently unconscious" because they make no mention of any such evidence in

their Argument. (Am. Comp. ¶¶ 28, 29 (D.I. 39)).    Rather they now contend that it was

unconstitutional to shoot at the fleeing Smith.    Their argument is contradicted by the undisputed

evidence that the defendants reasonably believed that Smith had just tried to kill a police officer

and posed a serious threat to the safety of the citizens of Wilmington.

It is settled that "[w]here the officer has probable cause to believe that the suspect poses a

threat of a serious physical harm, either to himself or others, it is not constitutionally

unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11

(1985) (discussed at Op. Br. 15).    In their opening brief, the defendants cited several cases in

which courts have held it was permissible to use deadly force in circumstances similar to those

presented in the instant matter.    (Op. Br. 19-21).    Plaintiffs do not even address them much less

attempt to distinguish them from the case-at-bar.    Rather, they content themselves to present

several theories which have absolutely no factual support in the record.

The unrebutted record demonstrates that the officers had probable cause to believe Smith

presented a threat to the citizens of Wilmington.    In their opening brief, defendants referred the

Court to the following circumstances known to the defendants at the time Smith turned the

corner and began to make his escape:

- There had been an officer-needs-assistance call from Officers Whitehead and Saunders on Washington Street;

- A shot or shots had been fired on Washington Street. The officers did not know whether the suspect or a police officer had fired shots;

- The suspect stole a police car;

- The suspect led the police on a reckless chase through the City;

- The suspect likely had access to a loaded shotgun which is usually carried in the driver's compartment of a patrol car;

- The suspect had accelerated the stolen police car directly at defendant Ciritella in an apparent attempt to kill him;

- The suspect had recklessly driven the stolen police car on the sidewalk in order to avoid a barricade consisting of a marked and unmarked police car;

- The suspect crashed the stolen police car into a parked Jeep Cherokee and pushed it aside while accelerating the stolen police car in an effort to escape;

- Smith was now proceeding the wrong way on one-way Harrison Street; and

- There were no police cars blocking the suspect's path once he turned onto Harrison Street.

(Op. Br. 18-19).

Plaintiffs can point to no evidence contradicting any of these points. They contend -- without supporting evidence -- that there were other police in the area "making it extremely unlikely, if not impossible, for Harry to leave the 500 block of Harrison St." (Ans. Br. 14, ¶ 66; 15, ¶ 71; 16, ¶ 75). Elsewhere they write that "we know, in part through Dempsey's words, that he is aware of other officers in the immediate vicinity and able to prevent Harry's flight." (Ans.

Br. 38). None of these assertions--which are all unaccompanied by citations to the record -- finds any support in the record.

The record contains no evidence that there were any police officers in a position to intercept Smith on Harrison Street and that same record shows that the officers believed that it would not be possible to promptly apprehend Smith if he was allowed to escape on Harrison Street.[5]  Curiously plaintiffs refer the Court to "Dempsey's words," but defendant Dempsey testified that he did not see any police cars ahead of Smith on Harrison Street (C8). He further testified he believed Smith posed a threat to the citizens of Wilmington if allowed to escape:

> if he got through that area, he would be gone, he would have a good distance on any police vehicles that would have to chase him, I proceeded to discharge my weapon to halt the situation at that point at the 500 block of Harrison.

(C7).

The other defendants also knew there were no police cars ahead of Smith once he turned onto Harrison Street. Officer Kurten testified he saw no one up Harrison Street; otherwise he would not have fired his weapon, (C11) and Detective Ciritella testified that the only person he saw on Harrison Street was defendant Dempsey. (C2-3). Because of the likelihood that Smith would escape the immediate scene absent the use of deadly force, the officers feared for the lives of citizens Smith might encounter. Officer Kurten testified he fired fearing for "the life of anyone else that was at the scene or could encounter this individual at some point in time thereafter if he should escape." (C10).[6]

---

[5] There were several police cars on Fifth Street, but they were behind the barricade formed by the Ciritella and Kurten cars and thus unable to promptly pursue Smith up Harrison Street. (C7).

[6] These officers' sworn statements, given on the night of the shooting, further support that they believed it was necessary to fire at Smith to prevent him from escaping and harming others.

14

In a related argument, plaintiffs claim that the defendants could not have believed that Smith was an imminent threat to anyone because the defendants did not see anyone on Harrison Street. (Ans. Br. 36). As the above testimony shows, however, the defendants' concerns were not limited to the inhabitants of the 500 block of Harrison Street but rather included the rest of the citizens of Wilmington.[7]

Plaintiffs also argue that it is constitutionally impermissible to "shoot a misdemeanor car theft offender fleeing in a vehicle ...." (Ans. Br. 34). This ignores, of course, that the officers reasonably believed that Smith had just attempted to run down Ciritella. It ignores as well the other circumstances known to the officers -- shots had been fired on Washington Street, the suspect had driven recklessly through the city, Smith had driven recklessly on the sidewalk (crashing into and plowing through a parked Jeep), Smith presumably had access to a loaded shotgun, and Smith showed no intention of stopping on police command. Thus, the uncontradicted record shows that the circumstances facing these officers when they made the split second decision to prevent Smith's escape by using deadly force were far different from simply shooting a fleeing misdemeanor car theft offender.

---

(C5 (he shot "fearing for the safety of other people at that particular time"); C13 (he shot out of fear for "the well being of not only other officers and [potential] victims, any innocent citizens out there"), C14-16 (recalling Smith "showed no desire to stop. He wasn't going to stop" and that he shot to prevent Smith's escape).

[7] *Cf. Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1991) (suspect's reckless driving in an attempt to escape "had proven he would do almost anything to avoid capture" and the officer could reasonably believe the suspect "would not stop at threatening others"); *Williams*, 2005 WL 2173686, at *5 (granting officers summary judgment where suspect's objective conduct "showed that he was not intimidated by the police presence, would not hesitate to deliberately use the vehicle as a weapon, and was intent on fleeing from the police, which in turn posed a threat to the public traveling on a major [city] thoroughfare."); *Reid v. Ford*, 2005 WL 2898058, at *4 (M.D.N.C. Mar. 11, 2005), *aff'd*, 2005 WL 1725705 (M.D.N.C. Apr. 22, 2005) (granting summary judgment where suspect's driving showed he "clearly posed a threat to the [officers'] safety, other drivers' safety, and the safety of the residents of the neighborhood that he was driving wildly through.").

## II.    PLAINTIFFS DO NOT DISPUTE THAT THEIR CLAIMS UNDER 42 U.S.C. §§ 1985 AND 1986 MUST BE DISMISSED BECAUSE THEY HAVE FAILED TO ALLEGE -- AND CANNOT SHOW -- A CONSPIRACY AND CLASS-BASED DISCRIMINATION.

In their opening brief, defendants pointed out that in order to establish a cause of action under 42 *U.S.C.* § 1985 plaintiffs must allege and prove that the defendants formed a conspiracy. Defendants' opening brief shows that plaintiffs have not alleged or proven the existence of a conspiracy. (Op. Br. 29). Plaintiffs' Answering Brief does not even address, much less rebut, defendants' argument. Consequently, the Section 1985 claim must be dismissed.

There is a second reason why the Section 1985 claim must be dismissed. As interpreted by the Supreme Court, that statute requires plaintiffs to allege and prove that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminating animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (quoted at Op. Br. 30). The opening brief pointed out that there are no such allegations or proof. Again plaintiffs' brief does not respond to this except to concede that "[p]laintiffs do not now, and never have alleged, race is an issue in this case." (Ans. Br. 33). For this reason, also, the Section 1985 claim must be dismissed.

Finally, in their opening brief, defendants cited case law from the Third and other circuits that the prerequisite to a claim under 42 *U.S.C.* § 1986 is a valid claim under Section 1985. Defendants argued that because plaintiffs have not plead, nor can they prove, a valid Section 1985 claim, their claim under Section 1986 must also be dismissed. (Op. Br. 31). Once again, plaintiffs have not even addressed this argument in their brief. Accordingly, the Section 1986 claim must also be dismissed.

RLF1-3034168-1

## III.    PLAINTIFFS' CLAIMS FOR PURPORTED VIOLATIONS OF THE DELAWARE CONSTITUTION FAIL FOR THE SAME REASONS AS THEIR FEDERAL CLAIM.

In their opening brief defendants showed that Article I, Section 6 of the Delaware Constitution provides no rights in addition to those provided by the Fourth Amendment, and therefore defendants are entitled to summary judgment on this claim. The defendants further showed that Article I, Section 11, which prohibits "cruel punishments" from being "inflicted," has always been viewed as analogous to the Eighth Amendment, and therefore is inapplicable to the use of force during an arrest (as opposed to post-conviction punishment). (Op. Br. 32) Plaintiffs do not respond to these arguments. Consequently it must be assumed they concede defendants are entitled to summary judgment on this issue.

## IV.    THE OFFICERS ARE STATUTORILY IMMUNE FROM PLAINTIFFS' STATE LAW TORT CLAIMS.[8]

Defendants' Opening Brief demonstrated that, under Delaware law the officers are statutorily immune from plaintiffs' state law wrongful death tort claim, because their actions were not "performed with wanton negligence or willful and malicious intent." 10 *Del. C.* § 4011(c) (Op. Br. 33). Defendants cited a recent Third Circuit decision applying Delaware law and affirming that police officers were entitled to summary judgment because, *although they used excessive force*, their conduct was not wanton or performed with malice. *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006). In *Couden*, while arresting an unarmed, unresisting 14 year-old boy whom the officers mistook for a fugitive, "four [officers] participated in pushing his head down, pointing guns at him, and spraying him with mace." *Couden*, 446 F.3d at 490. The *Couden* Court held summary judgment on state tort claims against the officers was proper,

---

[8] Plaintiffs failed to challenge defendants' argument that the City of Wilmington is absolutely immune from liability under this claim. (Op. Br. 33 & n.9).

because (despite that their conduct would violate Fourth Amendment rights) they did not act maliciously or with a "conscious indifference" or an "I-don't-care attitude" with respect to their duties, as would be necessary to find them liable under Section 4011. *Id.* at 498 (quoting *Foster v. Shropshire*, 375 A.2d 458, 461 (Del. 1977)). Plaintiffs make no attempt to distinguish *Couden*, which is controlling here and plainly supports a grant of summary judgment in favor of the defendants.

Plaintiffs respond only by citing a form pattern jury instruction setting forth a general definition of "wanton" conduct as "something so unreasonable and so dangerous that the person either knows or should know that harm will probably result." AB 33. Notably they failed to provide the Court with the jury instruction concerning "County and Municipal Tort Immunity" which explains that "gross or wanton negligence" under the Act is "conduct of such a nature or degree that it constitutes a gross deviation from what a reasonable ordinary person [or here, police officer] would do in the same situation." Del. P.J.I. Civ. 10.13 (2003). This is consistent with *Couden* and settled Delaware law, and supports a grant of summary judgment in favor of the officers.[9]

## V.    PLAINTIFFS DO NOT DISPUTE THAT THEIR ABUSE OF A CORPSE CLAIM SHOULD BE DISMISSED.

In Argument VI of their opening brief (Op. Br. 35-36) the individual defendants demonstrated that the abuse of a corpse claim against them must be dismissed because the uncontradicted evidence shows that they were not involved in the alleged conduct giving rise to that claim. The City of Wilmington demonstrated that it was statutorily immune from this purely

---

[9] Further, plaintiffs' standard -- under which immunity is abrogated where officers take action leading to some injury -- is plainly absurd in a case involving officers' use of force against a dangerous fleeing suspect; there can be no *bona fide* dispute that in appropriate circumstances police officers are entitled to risk injury to such suspects in the course of arrest *and* remain statutorily immune from state tort law claims.

18

state law claim. Nowhere in their brief do plaintiffs address these arguments. This claim should therefore be dismissed.

## CONCLUSION

For the reasons stated in Defendants' Opening Brief and in this Reply Brief, this Court should grant summary judgment dismissing all of the claims against the defendants.


OF COUNSEL:

Rosamaria Tassone
City of Wilmington Law Department
City/County Building, 9th Floor
800 N. French Street
Wilmington, Delaware 19801
302-576-2175

Dated: July 12, 2006

John A. Parkins, Jr. (#859)
K. Tyler O'Connell (#4514)
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
302-651-7700
Parkins@rlf.com
Oconnell@rlf.com
Attorneys for Defendants

19

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2006, I electronically filed the foregoing document with

the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

       Kester I.H. Crosse, Esquire
       Williams & Crosse
       1214 King Street
       Suite 300
       Wilmington, DE  19801

I hereby certify that on June 12, 2006, I have sent by U.S. Regular Mail, the foregoing

document to the following non-registered participants:

       Anne T. Sulton, Esquire
       Post Office Box 2763
       Olympia, WA 98507

                  John A. Parkins, Jr. (#859)
                  Richards, Layton & Finger, P.A.
                  One Rodney Square
                  P.O. Box 551
                  Wilmington, Delaware 19899
                  (302) 651-7700
                  Parkins@rlf.com