### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY SMITH, JR. and ROSLYN WOODARD SMITH, Individually and as Administrators of THE ESTATE OF HARRY SMITH, III<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WILMINGTON, JOHN CIRITELLA, THOMAS DEMPSEY, and MATHEW KURTEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No.  04-1254-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### APPENDIX TO
### DEFENDANTS' REPLY BRIEF IN SUPPORT OF
### THEIR MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

Rosamaria Tassone
City of Wilmington Law Department
City/County Building, 9th Floor
800 N. French Street
Wilmington, Delaware  19801
302-576-2175

John A. Parkins, Jr. (#859)
K. Tyler O'Connell (#4514)
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware  19899
302-651-7700
Parkins@rlf.com
Oconnell@rlf.com
Attorneys for Defendants

Dated:  July 12, 2006

## TABLE OF CONTENTS

Excerpts from the Deposition of John F. Ciritella, dated May 8, 2006 ........................................C1

Excerpts from the Sworn Statement of Detective John Ciritella, dated Sept. 14, 2003 ...............C4

Excerpts from the Deposition of Thomas Clifton Dempsey, dated May 9, 2006.........................C6

Excerpts from the Deposition of Matthew W. Kurten, dated May 10, 2006................................C9

Excerpts from the Sworn Statement of Corporal Matthew Kurten, dated Sept. 14, 2003..........C12

Excerpts from the Deposition of Johnny Whitehead, dated June 6, 2006 ..................................C17

Photograph of front end of Jeep Cherokee after collision ........................................................C22

Photograph of Police car on Harrison Street.............................................................................C23

Email to A. Sulton from T. O'Connell, dated April 6, 2006 ......................................................C24

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ESTATE OF HARRY SMITH, III,    )
HARRY SMITH, JR., and ROSLYN   )
WOODARD SMITH,                 )
                               )
            Plaintiffs,        )
                               )    Civil Action
        v.                     )    No. 04-1254
                               )      (GMS)
WILMINGTON POLICE DEPARTMENT,  )
MICHAEL SZCZERBA and ONE OR    )
MORE JOHN DOES,                )
                               )
            Defendants.        )


            Deposition of JOHN F. CIRITELLA taken
pursuant to notice at the law offices of Richards,
Layton & Finger, One Rodney Square, Third Floor,
Wilmington, Delaware, beginning at 10:00 a.m. on
Monday, May 8, 2006, before Kathleen White Palmer,
Registered Professional Reporter and Notary Public.

APPEARANCES:

            ANNE T. SULTON, PH.D., ESQUIRE
            P.O. Box 2763
            Olympia, Washington    98507
            for the Plaintiffs

            JOHN A. PARKINS, JR., ESQUIRE
            K. TYLER O'CONNELL, ESQUIRE
            RICHARDS, LAYTON & FINGER
               One Rodney Square - Third Floor
               Wilmington, Delaware  19899
               for the Defendants Wilmington Police
            Department and Michael Szczerba

------------------------------------------------
            WILCOX & FETZER, LTD.
1330 King Street - Wilmington, Delaware 19801
            (302) 655-0477
            www.wilfet.com



WILCOX & FETZER LTD.
Registered Professional Reporters
COPY

C1

1    eyes on him so I -- no, I didn't see a shotgun.

2        Q.    Did you see a scalpel?

3        A.    No, ma'am.

4        Q.    Did you see any weapon?

5        A.    Not in the time that I put the car in park, no.

6        Q.    I want to take you back to being on the

7    sidewalk, walking still on the sidewalk before you

8    step out into the street on the other side of that

9    blue car.

10                Did you see any people, any citizens on the

11   street?  On the porch?  Anything like that?

12       A.    No, ma'am.

13       Q.    When you stepped into the street and shot into

14   the car, did you see any people in the street on the

15   porches?  Anything?

16       A.    No, ma'am.

17       Q.    Was there ever a time where you became aware

18   that there were people on the street and on the

19   porches?

20                MR. PARKINS:  Objection to the form, but

21   you can answer.

22       A.    I never saw any people.  The only person that I

23   saw was Sergeant Dempsey, Tom Dempsey, and he would

24   have been in this area.  He's the only person that I



1    saw.

2        Q.    If you would be kind enough with the black pen,

3    make a double X for where you saw Mr. Dempsey.

4        A.    All right.  That area right there.

5        Q.    At what point did you first realize

6    Officer Dempsey was where you placed the double X?

7        A.    When the vehicle, I guess, was proceeding -- I

8    don't even -- by me, I guess as I turned, at one point

9    I was able to get visual contact on Sergeant Dempsey.

10       Q.    Where did he come from?  Do you know?

11       A.    I do not know.

12       Q.    Did you see any police vehicle in the vicinity

13   of Officer Dempsey, not including your police vehicle?

14       A.    No, ma'am.

15       Q.    So as you're walking up the sidewalk, you saw

16   Mr. Dempsey, as well?

17       A.    No.  Again, I think this is my only visual of

18   him.

19       Q.    Did you see any other police officers --

20       A.    No, ma'am.

21       Q.    -- as you're walking on the sidewalk?

22       A.    No, ma'am.

23       Q.    As you step into the street and fire, did you

24   see any other police officers?



(STATEMENT TRANSCRIBED FROM VIDEOTAPE)

```
------------------------------
Sworn Statement of:            )      Sunday
                               ) September 14, 2003
DETECTIVE JOHN CIRITELLA       )      2:58 a.m.
------------------------------
```

Wilmington Police Department
300 North Walnut Street
Wilmington, Delaware  19899

APPEARANCES:

JEFFREY M. WEINER, ESQUIRE
LAW OFFICES OF JEFFREY M. WEINER, P.A.
  1332 King Street
  Wilmington, Delaware 19801

SERGEANT WILLIAM BROWN,
Wilmington Police Department
Criminal Investigation Division

WILCOX & FETZER, LTD.
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477
www.wilfet.com



**WILCOX & FETZER LTD.**
Registered Professional Reporters



C4

1    then?

2       A.    At that particular time, fearing for the safety

3    of other people at that particular time, stealing a

4    police car, again, a "shots fired" complaint, driving

5    in a reckless manner of what I observed at that

6    particular time, just fearing that if he -- I'm giving

7    verbal commands, that he's just going to continue in a

8    reckless manner.

9       Q.    Okay.  At the time of the initial part of the

10   incident, were you aware of -- you heard a "shots

11   fired" call come out?

12      A.    That's right.

13      Q.    Did you know who was doing the firing?

14      A.    No, I did not.

15      Q.    Okay.  So you didn't know whether it was the

16   suspect that was shooting or --

17      A.    That's correct.

18      Q.    -- or the officers?

19            Did you have any knowledge of what the

20   reason was that initiated the pursuit?

21      A.    I did not hear that, no.  And then I knew that

22   he had took the marked police car.

23      Q.    Okay.  Did you have any knowledge of what was

24   in the police car?



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ESTATE OF HARRY SMITH, III,      )
HARRY SMITH, JR., and ROSLYN     )
WOODARD SMITH,                   )
                                 )
            Plaintiffs,          )
                                 )    Civil Action
       v.                        )    No. 04-1254
                                 )       (GMS)
WILMINGTON POLICE DEPARTMENT,    )
MICHAEL SZCZERBA and ONE OR      )
MORE JOHN DOES,                  )
                                 )
            Defendants.          )


          Deposition of THOMAS CLIFTON DEMPSEY taken
pursuant to notice at the law offices of Richards,
Layton & Finger, One Rodney Square, Third Floor,
Wilmington, Delaware, beginning at 10:00 a.m. on
Tuesday, May 9, 2006, before Kathleen White Palmer,
Registered Professional Reporter and Notary Public.

APPEARANCES:

          ANNE T. SULTON, PH.D., ESQUIRE
          P.O. Box 2763
          Olympia, Washington   98507
          for the Plaintiffs

          JOHN A. PARKINS, JR., ESQUIRE
          K. TYLER O'CONNELL, ESQUIRE
          RICHARDS, LAYTON & FINGER
            One Rodney Square - Third Floor
            Wilmington, Delaware  19899
            for the Defendants Wilmington Police
          Department and Michael Szczerba

---------------------------------------------------
          WILCOX & FETZER, LTD.
1330 King Street - Wilmington, Delaware 19801
            (302) 655-0477
            www.wilfet.com



**WILCOX & FETZER LTD.**
Registered Professional Reporters



C6

1          At which time I felt that due to the danger

2    this guy just posed to John Ciritella, due to the fact

3    that he's already obviously posed danger by stealing a

4    police car, felony suspect, all these things coming

5    into play, the fact that he had a shotgun in his

6    possession, not knowing who got shot, who did the

7    shooting at 14th and Washington, all these things

8    coming into play, and also the fact that it appeared

9    that he was -- if he got through that area, he would

10   be gone, he would have a good distance on any police

11   vehicles that would have to chase him, I proceeded to

12   discharge my weapon to halt the situation at that

13   point at the 500 block of Harrison.

14          I proceeded -- he was approximately three

15   to five feet away from me at one point.  I waited,

16   actually, a second because of a crossfire situation

17   between myself and several officers down the block.

18          Once he started to pass me and I had a

19   better backdrop of buildings and nobody was in the

20   area, I started -- proceeded to fire my handgun at the

21   driver's side window of the vehicle shattering same.

22          I remember, I recall while shooting and

23   moving towards the vehicle going northbound on

24   Harrison up the hill, firing and hitting the -- I



1    Q.    Can you, using the black pen, just put little

2    squares or triangles where you saw other cars, other

3    police vehicles?

4    A.    I actually saw two here.  I can't see any

5    farther down the street.  And that was only for a

6    matter of a second that I observed that.

7    Q.    Did you see any up Harrison Street?

8    A.    No.

9    Q.    Do you know how many police vehicles were

10   involved in the pursuit?

11   A.    No.

12   Q.    The car you were driving, was it marked or

13   unmarked?

14   A.    Marked.

15   Q.    Were you in uniform or out of uniform?

16   A.    In uniform.

17   Q.    What about Mr. Kurten, was he in a marked or

18   unmarked car?

19   A.    I believe it as unmarked.

20   Q.    Was he in uniform or out of uniform?

21   A.    I don't recall.

22   Q.    Do you recall whether the lights and siren were

23   left on your car after you exited?

24   A.    Yes, they were.



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ESTATE OF HARRY SMITH, III,     )
HARRY SMITH, JR., and ROSLYN    )
WOODARD SMITH,                  )
                                )
            Plaintiffs,         )
                                )   Civil Action
        v.                      )   No. 04-1254
                                )     (GMS)
WILMINGTON POLICE DEPARTMENT,   )
MICHAEL SZCZERBA and ONE OR     )
MORE JOHN DOES,                 )
                                )
            Defendants.         )


            Deposition of MATTHEW W. KURTEN taken
pursuant to notice at the law offices of Richards,
Layton & Finger, One Rodney Square, Third Floor,
Wilmington, Delaware, beginning at 10:00 a.m. on
Wednesday, May 10, 2006, before Kathleen White Palmer,
Registered Professional Reporter and Notary Public.

APPEARANCES:

        ANNE T. SULTON, PH.D., ESQUIRE
        P.O. Box 2763
        Olympia, Washington    98507
        for the Plaintiffs

        JOHN A. PARKINS, JR., ESQUIRE
        K. TYLER O'CONNELL, ESQUIRE
        RICHARDS, LAYTON & FINGER
          One Rodney Square - Third Floor
          Wilmington, Delaware  19899
          for the Defendants Wilmington Police
        Department and Michael Szczerba

----------------------------------------------------
        WILCOX & FETZER, LTD.
1330 King Street - Wilmington, Delaware 19801
            (302) 655-0477
            www.wilfet.com



WILCOX & FETZER LTD.
Registered Professional Reporters
COPY

C9

1    Q.    Why did you think that?

2    A.    Because of the actions taken by Harry Smith on

3    that date.

4    Q.    So tell me what you saw that led you to believe

5    you needed to discharge your weapon.

6    A.    At 5th and Harrison streets, I was parked right

7    behind Detective Ciritella.  He went to the northeast

8    corner of 5th and Harrison.  I was on the south side

9    initially of the 1100 block of west 5th Street, which

10   is just east of Harrison Street where Harry Smith

11   initially stopped.

12        Once he proceeded to accelerate, drive up

13   on the sidewalk towards Detective Ciritella, I moved

14   around towards the intersection of 5th and Harrison

15   Street and I observed that he was going straight

16   towards Detective Ciritella.

17   Q.    You then did what after you made that

18   observation?

19   A.    Detective Ciritella had fired on the subject

20   fearing for his life and I also fired fearing for not

21   only Detective Ciritella's life, but also the life of

22   anyone else that was at the scene or could encounter

23   this individual at some point in time thereafter if he

24   should escape.

1    armed with a shotgun?  Did anybody tell you that?

2       A.   Did anybody tell me that?

3       Q.   Yes.

4       A.   No, nobody told me that.

5       Q.   Can you define for me or tell me what it means

6    if someone says they had a clear backdrop?

7       A.   Clear backdrop in my definition would be you

8    have your gun out, you have your line of sight on its

9    intended target, you want to make sure that the

10   surrounding background is clear.  You want to make

11   sure that there's no other pedestrians, innocent

12   victims, anything else that could be injured, harmed,

13   damaged to a certain extent.  Certainly you want to

14   make sure that you have your intended target and only

15   that target in the range of fire should you have to do

16   so.

17      Q.   When you were discharging your weapon, did you

18   have a clear backdrop?

19      A.   Yes, or else I would not have fired.

20      Q.   You didn't see any people on the street in the

21   500 block of Harrison Street during any of the time

22   that you were firing your weapon?

23      A.   No.  Certainly in the areas, immediate areas

24   where we were looking and we were -- action was taking



(STATEMENT TRANSCRIBED FROM VIDEOTAPE)

```
-------------------------------
Sworn Statement of:              )        Sunday
                                 ) September 14, 2003
CORPORAL MATTHEW KURTEN          )      3:23 a.m.
-------------------------------
```

                              Wilmington Police Department
                              300 North Walnut Street
                              Wilmington, Delaware  19899


APPEARANCES:

          JEFFREY M. WEINER, ESQUIRE
          LAW OFFICES OF JEFFREY M. WEINER, P.A.
            1332 King Street
            Wilmington, Delaware 19801

          SERGEANT WILLIAM BROWN,
          Wilmington Police Department
          Criminal Investigation Division


                WILCOX & FETZER, LTD.
     1330 King Street - Wilmington, Delaware 19801
                   (302) 655-0477
                  www.wilfet.com



**WILCOX & FETZER LTD.**
Registered Professional Reporters



ORIGINAL                                    C12

1    westbound.  It eventually took the northbound path in

2    the 500 block of Harrison Street.

3              Concerned for the well-being of not only

4    other officers and victims, any innocent citizens out

5    there, a few more shots were fired.  I don't know

6    specific numbers at that time.  I remained on pretty

7    much the rear driver's side quarter panel of the

8    vehicle.  That was my position at that point in time.

9              I know that district cars, patrol officers,

10   they are required to take out a shotgun on every shift

11   and that was likely to be inside the vehicle.  There's

12   a mount inside the passenger compartment where the

13   shotgun is kept.  I knew that if the suspect had

14   gotten a hold of that gun, with his prior demeanor,

15   including the chase and his acts towards Detective

16   Ciritella, there could be further bodily harm

17   threatened and/or committed.

18              And the car eventually stopped in the

19   middle of the block.

20      Q.    Okay.  Talk about when you -- who shot first?

21      A.    Detective Ciritella.

22      Q.    Okay.  The suspect was driving at him?

23      A.    Yes, sir.

24      Q.    Okay.  And you observed him being in front of



Corporal Matthew Kurten

 1   the vehicle and retreating and moving off to the side?
 2   A.   Yes, sir.
 3   Q.   Trying to get out of his way, also?
 4   A.   Yes, sir.
 5   Q.   And you fired at the vehicle at around the same
 6   time fearing that he wouldn't be able to get out of
 7   the way and you were trying to stop him from running
 8   over Officer Ciritella?
 9   A.   That's correct.
10   Q.   Okay.  And so you fired a number of rounds at
11   that point.  Any idea how many?
12   A.   I would say maybe two, three.
13   Q.   Okay.  And then you reassessed it and stepped
14   back.  And he struck the parked vehicle?
15   A.   Yes.
16   Q.   Okay.  And at that point you didn't know where
17   he was going to go because he was in motion, it was
18   turning as it was driving the jeep around?
19   A.   He showed no, I guess, desire to stop.  He
20   wasn't going to stop.
21   Q.   Still accelerating?
22   A.   He was going to try to go somewhere.
23   Q.   Okay.  And there were officers in the area.
24   You could see that there was at least one officer to

```
 1    your left --
 2        A.    Mm-hmm.
 3        Q.    -- possibly in that vehicle's path again?
 4        A.    Mm-hmm, that is correct.
 5        Q.    Okay.  And that's when you fired your second --
 6        A.    Yes.
 7        Q.    -- round or rounds?
 8        A.    Yes.
 9        Q.    Okay.  Did the vehicle stop at that point?
10        A.    The vehicle -- no.  Proceeded slowly northbound
11    in the 500 block of Harrison Street.
12        Q.    Okay.  And at that point, once it was
13    travelling in a northbound direction, you fired at him
14    again fearing --
15        A.    Yes.
16        Q.    -- that the suspect would escape and would be
17    armed at that point --
18        A.    Yes.
19        Q.    -- at least with a shotgun that was in the car?
20        A.    Already armed with the car itself.
21        Q.    Okay.  Originally when the initial radio
22    broadcast came out, did you hear the reports of shots
23    fired?
24        A.    Yes, I did.
```



Corporal Matthew Kurten

```
1      Q.    Did you know who had fired what?

2      A.    I did not.  I did not know any of the

3   circumstances.

4      Q.    But you knew shots had been fired?

5      A.    That's correct.

6      Q.    Okay.  So in your mind, the suspect could have

7   possibly already been armed?

8      A.    Yes, sir.

9      Q.    Okay.  At the point where you and Detective

10  Ciritella arrived at 5th and Harrison streets, how did

11  you position your vehicles, the two of you?

12     A.    Detective Ciritella was parked in front of me

13  facing northbound, facing the corner that the -- the

14  northeast corner.  And I was directly behind him

15  facing --

16     Q.    Were the cars parked in a manner as to block

17  the intersection?

18     A.    Yes, yes.  There was no other avenue of escape

19  than what he tried to take.

20     Q.    Okay.  So at that point your intention was to

21  try to contain the situation, and at that point you

22  observed Detective Ciritella out of the car and you

23  were out of your car, as well?

24     A.    Yes.
```



**WILCOX & FETZER LTD.**
Registered Professional Reporters

**C16**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HARRY SMITH, JR. and ROSLYN          )
WOODARD SMITH, individually and      )
as Administrators of the ESTATE      )
OF HARRY SMITH, III,                 )
                                     )
            Plaintiffs,              )
                                     ) Civil Action
v.                                   ) No. 04-1254-GMS
                                     )
CITY OF WILMINGTON, JOHN             )
CIRITELLA, THOMAS DEMPSEY and        )
MATTHEW KURTEN,                      )
                                     )
            Defendants.              )


            Deposition of JOHNNY WHITEHEAD taken
pursuant to notice at the United States District
Court, District of Delaware, Conference Room 2204, 844
North King Street, Wilmington, Delaware, beginning at
8:35 a.m., on Tuesday, June 6, 2006, before Kurt A.
Fetzer, Registered Diplomate Reporter and Notary
Public.

APPEARANCES:

        KESTER I.H. CROSSE, ESQ.
        WILLIAMS & CROSSE
           1214 King Street - Suite 300
           Wilmington, Delaware  19801
              - and -
        ANNE T. SULTON, ESQ.
        SULTON LAW OFFICES
           Post Office Box 2763
           Olympia, Washington  98507
           For the Plaintiffs


                WILCOX & FETZER
    1330 King Street -  Wilmington, Delaware 19801
                (302) 655-0477
                www.wilfet.com



**WILCOX & FETZER LTD.**
Registered Professional Reporters



C17

```
 1              (A brief recess was taken.)
 2    BY MS. SULTON:
 3      Q.    Now, so you hear this call over the radio and
 4    you say you were dispatched.  Did they specifically
 5    ask for you and your partner, your car to go and check
 6    it out or was it kind of a general call to everybody
 7    working keep your eye out?
 8      A.    I don't recall.  I believe it may have been,
 9    because that's our district I believe we were
10    dispatched.
11      Q.    So you were told what as you remember it?
12      A.    That a tall, light-skinned, black male had ran
13    away from the hospital.
14      Q.    And then you were on the lookout for that
15    person?
16      A.    Yes.
17      Q.    And you eventually saw that person, correct?
18      A.    No.
19      Q.    How was your attention drawn to Harry Smith,
20    III?
21      A.    Well, I was responding to the hospital to go to
22    the bathroom and, again, I saw him running southbound
23    on the west side of the street with a band and a
24    hospital gown.  And then I thought that, I said man,
```



WILCOX & FETZER LTD.
Registered Professional Reporters

C18

```
 1    you know, this must be an epidemic.  Clearly he wasn't
 2    the guy we were looking for.  His physical stature did
 3    not match the guy we were initially looking for, so...
 4        Q.   And how did he appear to you when you saw him?
 5        A.   When I first saw him, he was just running
 6    southbound.  So I didn't see his facial expression.  I
 7    just know it was a dark-skinned, heavyset, black male
 8    running southbound.
 9        Q.   And it was your understanding what you were
10    looking for was a perhaps taller, light-skinned male
11    but someone who had eloped from the hospital?
12        A.   Yes.
13        Q.   And was it your understanding the person ran
14    away from the hospital because they were experiencing
15    some mental health problems?
16        A.   That could have very well be.  I don't actually
17    recall the state of mind of the escapee.
18        Q.   But it wasn't your impression that someone was
19    running away from cancer surgery or --
20        A.   Well, I don't think he was running from
21    surgery, but I mean people do that if they're waiting
22    too long or they're not comfortable with their
23    treatment from the hospital, they'll flee so it's not
24    uncommon.
```

```
 1      Q.    And you have to have a key to unlock it,
 2   correct?
 3      A.    You can unlock it with a key.  You can also
 4   unlock it with a button.
 5      Q.    You can unlock it with a button.  Where is the
 6   button?
 7      A.    It's on the console, center console.
 8      Q.    Before you started operating that vehicle, did
 9   you know where the button was on the center console?
10      A.    Yes.
11      Q.    Would I as a person off the street never having
12   driven a patrol car know where the button is on the
13   center console to unlock the shotgun?
14      A.    Probably not if you're not used to the police
15   vehicles.
16      Q.    But in this particular vehicle did it have a
17   lock with a key?
18      A.    It had a lock.  I'm not sure if we had a key or
19   not for that lock, but you can unlock it with a key
20   and you can unlock it with the button.
21      Q.    So if you have a key is it the same key that
22   you use for the ignition of the car?
23      A.    No.
24      Q.    It's a separate key?
```



1    Smith?

2      A.    I don't think that was my partner.  I believe

3    that was Sergeant Donohue.

4      Q.    So Sergeant Donohue got on the radio and said

5    what based on your understanding?

6      A.    I believe it was shots fired.

7      Q.    And how did she know shots were fired?

8      A.    She was responding, she was in the block when I

9    fired my shot.

10     Q.    So she saw you shoot Harry?

11     A.    I don't know what she saw.  I know that she was

12   in the block.  She was close enough to see.  Whether

13   or not she saw it or not, I don't know.

14     Q.    So at no point did you or your partner say that

15   Harry was shooting at you, correct?

16     A.    I did not say he was shooting at me, no.

17     Q.    And your partner didn't say that either,

18   correct?

19     A.    I'm not sure what he said.  I know I didn't say

20   that.

21     Q.    Have you talked with him?

22     A.    I spoke with him.

23     Q.    About the incident?

24     A.    Yes.

