**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HARRY SMITH, JR. and ROSLYN WOODARD SMITH, Individually and as Administrators of THE ESTATE OF HARRY SMITH, III | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No.  04-1254-GMS |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF WILMINGTON, JOHN CIRITELLA, THOMAS DEMPSEY, and MATHEW KURTEN, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PRETRIAL ORDER

This matter having come before the court at a pretrial conference held pursuant to Fed. R. Civ. P. ("Rule") 16, and attorneys Kester I.H. Crosse, 1214 King Street, Wilmington, DE 19801, telephone (302) 658-3488, and Anne T. Sulton, Post Office Box 2763, Olympia, WA 98507, telephone (609) 468-6029, having appeared as counsel for plaintiffs and John A. Parkins, Jr., and Tyler O'Connell, both of  920 North King Street, Wilmington, DE 19801, telephone (302) 651-7624, having appeared as counsel for defendants, the following actions were taken:

1.    The plaintiff's Estate brings this action pursuant to 42 U.S.C. т 1983 alleging a violation of the decedent's Harry Smith, III, rights under the Fourth Amendment.  It also alleges violation of 42 U.S.C. 1985 and 1986.  The Estate also alleges a survival claim under Delaware law.  The individual plaintiffs are the parents of Harry Smith, III.  They bring a wrongful death claim and abuse of corpse claim under Delaware law.

Jurisdiction to hear the Estate's civil rights claims is vested in this Court by 28 U.S.C. § 1331.  Jurisdiction to hear the Estate's state law claim and the parents' wrongful death claim and abuse of corpse claims are conferred by 28 U.S.C. § 1367.    Jurisdiction is not contested.

1

2.    **Facts:**

(a)    **Uncontested facts, which will become a part of the evidentiary record in the case (and which, in a jury trial, may be read to the jury by the court or any party);**

1.    On September 13, 2003, Harry Smith, III was shot to death by one or more Wilmington police officers.

2.    Harry Smith, III is survived by his parents and twin brother. His parents are the administrators of his Estate.

3.    The plaintiff, Harry Smith, Jr., is the father of Harry Smith, III.

4.    The plaintiff, Roslyn Woodard Smith, is the mother of Harry Smith, III.

5.    The defendant, City of Wilmington, is the employer of the defendant police officers, John Ciritella, Thomas Dempsey, and Mathew Kurten.

6.    Around 6:00 PM, on September 13, 2003, Harry Smith, III went to a local hospital, complaining of mental health related ailments. He was accompanied by his father.

7.    Before receiving treatment, Harry Smith, III ran out of the hospital, without the knowledge of hospital staff and over the objection of his father.

8.    Harry Smith, III ran southbound on Washington Street to the vicinity of 13th and Washington where he attracted the attention of Wilmington police officers Johnny Whitehead and Johnny Saunders, who were on routine patrol in marked Wilmington police car 1180 on Washington Street. Officer Whitehead drove the car toward Harry Smith, III, and both officers got out of the car. Officer Whitehead left the driver's side door open, the engine running and the emergency flashing lights on as he got out of the patrol car.

9.    The officers retreated as Harry Smith, III approached them, at which time Harry Smith, III jumped into the patrol car.

2

10. Officer Whitehead unsuccessfully tried to pull Harry Smith, III out of the patrol car. He then shot Harry Smith, III one time in the right leg with his departmental issued Smith & Wesson .40 caliber handgun.

11. Harry Smith, III drove away in patrol car 1180 leading Wilmington Police in a chase in the city which lasted approximately two minutes. The route of the pursuit was broadcast by the Wilmington police dispatcher, who obtained information about the route from officers pursuing Harry Smith, III.

12. Wilmington Police Detective John Ciritella stopped his car on North Harrison Street where it intersects 5th Street so as to partially block 5th Street. Wilmington Police Officer Matthew Kurten pulled his marked police car behind Detective Ciritella's so as to further block 5th Street. At that time, Harry Smith, III drove patrol car 1180 west on 5th Street toward the intersection with North Harrison Street. It was roughly 7 p.m. and there was still daylight.

13. The defendant police officers began shooting at Harry Smith, III in the vicinity of 5th and Harrison Streets. The circumstances surrounding the shooting are in dispute.

14. The medical examiner's report indicates six bullets struck Harry Smith, III out of 31 bullets fired by the defendants at 5th and Harrison Streets. Harry Smith, III was pronounced dead at the scene by Emergency Medical Technicians, who arrived at the scene at approximately 7:11 p.m.

15. An autopsy was performed on Harry Smith, III. Bullets found in his body, along with shell casings found at the scene and the defendant police officers' handguns, were submitted to the United States Bureau of Alcohol, Tobacco and Firearms for analysis.

16.    The Bureau of Alcohol Tobacco and Firearms reported that a bullet retrieved from Mr. Smith's brain was fired from the handgun assigned to Detective Ciritella.

**(b)    An agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested issues of fact or law not agreed to;**

<u>**BY PLAINTIFFS**</u>

1.    Harry Smith, III was shot after the stolen car stopped and after he was seen slumping over the steering wheel of the stolen car.

2.    Excessive force was used against Harry by the three defendant police officers.

3.    Harry's body was removed from the car, handcuffed, and remained on the street for about four hours, at which time it was moved by the Medical Examiner.

4.    Harry's corpse was abused.

<u>**BY DEFENDANTS**</u>

The disputed facts Defendants intend to prove are set forth in their pretrial brief/memorandum.

**(c)    Except for rebuttal exhibits, schedules in the form set out in the attached Schedule (c) of;**

**(1)    All exhibits (all exhibits shall be marked for identification before trial), including documents, summaries, charts and other items expected to be offered in evidence; and**

**(2)    Any demonstrative evidence and experiments to be offered during trial;**

1.

**BY PLAINTIFFS**

Please see Appendix A-1.

Plaintiffs will ask the Court to allow the jury to be transported by the marshals to actually view the scene of the incident, at 5th and Harrison Streets, and the police car driven by Harry Smith, III.  Defendants object to this request.  They contend there are dozens of photographs depicting the car and scene, and plaintiffs have made no showing why the Court should go to the time and expense in this five day trial of conducting such a view.

**BY DEFENDANTS**

Please see Appendix A-2.

**(d)    A list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list;**

**Objection by Defendants:**    Defendants object to plaintiffs' witness list for the following reasons:

1.    Plaintiffs have identified nearly 80 fact witnesses.  Ironically they have taken only four depositions in this trial, thus raising the spectrum of discovery while the witness is on the stand.  More importantly, this is a five day trial, it will be impossible for plaintiffs to call nothing more than a small fraction of the witnesses listed during the time allotted them.  This list therefore provides no hint to defendants of the witnesses to be called and is therefore tantamount to no witness list at all.

2.    Plaintiffs have not timely identified some of the "Neighborhood Residents/Visitors" as persons having knowledge of the facts.  They specifically identified only four individuals (consisting solely of the two individuals the defendants had already deposed) as having knowledge of the facts in their initial disclosures despite having already interviewed neighborhood residents.  Plaintiffs did not supplement their Rule 26(c) disclosures until after the

close of fact discovery.   On August 30, September 5 and September 12, 2006 they served defendants with supplemental responses.   Defendants were aware of some of these individuals from interviews conducted by the police and do not claim prejudice by reason of plaintiffs' late disclosure.   However, certain of the names are new to defendants and should be excluded. These include:

> Carlos Maldonado, Sr.
>
> Elizabeth Maldonado
>
> Carmen Garcia
>
> Dionne Lawds
>
> Rev. Moyer
>
> Charles Brittingham

With respect to Mr. Brittingham, he was deposed early in the case because of public statements he made concerning an investigation of this incident he allegedly conducted. Among other things, the deposition revealed he had no personal knowledge of these events. Now, for the first time, plaintiffs have disclosed that he has personal knowledge of the impact of these events upon the family.  (There were no questions asked of Mr. Brittingham about this in his deposition since defendants had not been advised he had knowledge of this).   Since plaintiffs' obviously knew this years ago and failed to disclose this to defendants they should be barred from calling him as a witness with respect to these matters.

3.     Plaintiffs have identified 25 witnesses under the category "Neighborhood Residents/Visitors."  Yet only one of them -- David Gwyn -- has been identified as having seen the wrongful conduct alleged in the complaint.   The remaining witnesses in this category, therefore, are not competent to give relevant testimony.   If per chance they could offer marginally relevant testimony, the probate value of that testimony is far out weighed by confusion of the issues and considerations of undue delay, waste of time or needless presentation of cumulative evidence."  F.R.E. 403.

4.      Plaintiffs have identified 44 Wilmington Police Officers as witnesses.  Few of them witnesses any of the events leading to the death of Mr. Smith.  Indeed, some of them were not even on duty on the night of September 13.  Defendants have produced all written statements and interviews of Wilmington police officers, so plaintiffs know which police officers witnessed a relevant event.  The objections to the "Neighborhood Resident" list apply here also.  Further, the Wilmington Police cannot reasonably be expected to function if 44 of its officers are under subpoena during plaintiffs' portion of the trial.

5.      As an example of plaintiffs' tactics, they have included Michael Szcerba, the Wilmington Chief of Police on their witness list.  There is no evidence showing that he has any personal knowledge of the events of September 13, 2003 on the events alleged in the Amended Complaint.


        **(e)      Stipulations or statements setting forth the qualifications of each expert witnesses in such form that the statement can be read to the jury at the time the expert witness takes the stand;**

        <u>**BY PLAINTIFFS**</u>

        Plaintiffs intend to call three expert witnesses.

        Dr. Jerry Boswell is a financial analyst/economist. Dr. Boswell holds a doctorate degree in business administration from Indiana University.  He is a Chartered Financial Analyst.  Dr. Boswell recently retired, having spent over 30 years teaching business administration related courses at the college level.

        Mr. Elbert Waters currently works for the Memphis School System.  He previously served 16 years as a patrol officer for the Chicago Police Department. During his service as a Chicago police officer, he spent five years as a plain clothes "tactical officer." Mr. Waters will offer his opinion about how a reasonable police officer on the scene should act when faced with a car theft situation, including the theft of a police car, after hearing radio transmissions

7

containing words such as "officer needs assistance" and "shots fired" and after observing the stolen car drive through densely populated streets erratically at speeds exceeding posted limits.

Mr. Joseph Stine is the former Police Chief of New Britain Township Pennsylvania (1990 – 2000). He is the former executive officer of the Police Training Bureau for the City of Philadelphia. In his 25 years with the Philadelphia Police Department, he served in every rank from Patrolman through Inspector. He was a Detective for three years and the night command Captain in charge of the Detective Bureau for 2 years. He was a patrol district supervisor at the ranks of Sergeant, Lieutenant and Captain for 12 years. He is the former School Director for the Philadelphia Police Recruit Training Academy. He currently is certified as an instructor for Police training for the Commonwealth of Pennsylvania. He has been retained by the Southeast Pennsylvania Transportation Authority Police Department to develop and deliver training to its officers. He has been an adjunct faculty member in Criminal Justice Departments at Temple University, Holy Family College, Delaware Valley College and Philadelphia Community College. He is a graduate of the Federal Bureau of Investigation National Academy and the Police Executive Research Forum. He graduated from St. Joseph University with a Master of Science in Administration of Criminal Justice. He served on the International Association of Chiefs of Police Education and Training Committee from 1991 through 2003. He has been recognized as an expert in the training, practices and procedures utilized by the police in the performance of their duties, and will be asked to offer testimony on these topics/areas as it pertains to the facts of this case.

## **BY DEFENDANTS**

The Defendants intend to call two expert witnesses.

Jon J. Nordby, Ph. D. is an expert in forensic science and forensic medicine. He specializes in the medical and legal aspects of death investigations, bloodstain pattern analysis, ballistics, firearms and gun shot residue testing, trace evidence analysis, and event

reconstruction. Dr. Nordby has worked for more than twenty years as a medical examiner and as an independent consultant to police departments and medical examiners' offices. In addition, he has worked as a tenured professor instructing students on the scientific method, forensic science and forensic medicine. He has also authored numerous scholarly articles and books in these areas. Dr. Nordby will apply his expertise to analyze the pertinent physical evidence in this case, and to determine which of the parties' competing factual theories of the case is consistent with the physical evidence.

Ronald H. Traenkle is an expert in reasonable police practices and the permissible use of force by police officers. Mr. Traenkle served as a police officer in the Bensalem Township Police Department for more than 25 years, rising from the rank of patrolman to captain – the highest sworn rank in the department. After serving as captain for 11 years, Mr. Traenkle served as the Director and Commanding Officer of the Temple University Police Academy. In addition, he has served as an instructor in various other universities, police academies, and other training programs, including training on the use of force, and he has helped draft Pennsylvania legislation on police training and pursuit practices. Mr. Traenkle will provide expert testimony regarding the reasonableness of the individual defendant police officers' actions on September 13, 2003 in light of the facts and circumstances known to them at that time.

| Jon J. Nordby, Ph. D. | Final Analysis Forensics<br>3532 Soundview Drive West<br>University Place, WA 98466 |
| --- | --- |
| Ronald H. Traenkle | 3605 Cloverdale Drive<br>Bensalem, PA 19020 |

(f)    **A list of all depositions, or portions thereof, to be read into evidence and statements of any objections thereto;**

**BY PLAINTIFFS**

Deposition testimony may be used as allowed by the Federal Rules of Civil Procedure. If a party wishes to use deposition testimony other than for impeachment purposes, it shall provide seven calendar days notice of the exact portions of testimony so as to allow the opposing party the opportunity to counter-designate testimony and raise objections to the testimony designated by the proffering party.

(g)    **An itemized statement of special damages;**

Plaintiffs claim Funeral and burial expenses are approximately $15,000. There is a dispute between the parties as to the total amount allowed by the law for recovery of these expenses. Plaintiffs will produce the receipts by October 5, 2006.

Economic losses, per report of Dr. Jerry Boswell, are $1.3 million.

(h)    **Waivers of any claims or defenses that have been abandoned by any party;**

**BY PLAINTIFFS**

None waived.

**BY DEFENDANTS**

None waived.

(i)    **For a jury trial, each party shall provide the following:**

(i)    **Trial briefs except as otherwise ordered by the court;**

(ii)    **Three sets of marked proposed jury instructions, verdict forms, and special interrogatories, if any; and**

10

(iii)     a list of the questions the party requests the court to ask prospective jurors in accordance with Fed.R.Civ.P. 47(a) and D.Del. LR 47.1(a);

**Joint Voir Dire:**

1.     Do you have any family members or friends working or having worked as a police officer or correctional officer?

2.     Do you or any members of your family own any guns?

3.     Do you or any members of your family have any experience working with automobiles, either in building, repairing or selling?

4.     Do you or any members of your family have any experience working as an educator or trainer?

5.     Have you read or heard any news media reports of this incident?

6.     Have you or any member of your family ever been injured by a police officer?

7.     Are you opposed to the death penalty under any circumstances?

8.     Are you opposed to police officers using deadly force in any situation?

(j)     **A statement summarizing the history and status of settlement negotiations, indicating whether further negotiations are ongoing and likely to be productive;**

The plaintiffs and their counsel, and defense counsel participated in a mediation/early neutral assessment session held by the Magistrate Judge.  Plaintiffs are willing to participate in

further discussions, but defendants do not believe that further settlement discussions will serve a useful purpose.

**(k)     A statement that each party has completed discovery, including the depositions of expert witnesses (unless the court has previously ordered otherwise). Absent good cause shown, no further discovery shall be permitted; and**

**Discovery is completed, except for expert witness depositions.**

\*\*Discovery is complete, except that defendants have been unable to take the deposition of one of plaintiffs' experts, Joseph Stine.  They timely sought to take his deposition but have been unable to do so because Mr. Stine has been traveling on vacation. The parties believe Mr. Stine's deposition can be completed without disruption of the schedule in this matter.  Mr. Stine's deposition will be scheduled for completion next week – the first week of October 2006.

**(l)     Motions in limine:  No party shall file more than ten (10) motions in limine without prior approval of the court.  Briefs (opening, answering, and reply) on all such motions shall be due at the time of the filing of this Pretrial Order.  Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages.  The parties should submit an original and two (2) copies.**

**BY PLAINTIFFS**

Plaintiffs served their motions *in limine* September 25, 2006.

**BY DEFENDANTS**

Defendants' Motions in Limine were served on September 8, 2006.

**3.     Trial of this case is expected to take seven (7) days, commencing on November 6, 2006.**

12

**4.       [Indicate the type of trial by placing an X in the appropriate box]**

**Jury  X                Non-jury __**

5.       The parties recommend that nine (9) jurors be selected at the commencement of the trial.  Each side will have three (3) preemptory strikes.

6.       This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

7.       Possibility of settlement of this case was considered by the parties.

<u>Other</u>

1.       Plaintiffs currently believe it will take seven (7) trial days, including jury selection, opening statements, and closing arguments.

2.       Defendants request the Court to time their opening statements, witness examinations and closing arguments to ensure that the trial time is evenly divided between the parties.  Plaintiffs object to evenly dividing trial time because they have considerably more witnesses to call than Defendants.

3.       Plaintiffs will advise defendants by 5:00 p.m. EST Friday, November 3, 2006 of the witnesses they plan to call the first day of trial.  Thereafter, the parties shall disclose at the end of the trial day the witnesses they will call the following day.

4.       Defendants' Motion for Summary Judgment is currently pending before this Court.  The Court's resolution of that motion may require modification of this Pretrial Order.

RLF1-3053106-1

Dated:_____          _____
                                                 United States District Judge


_____          _____

Anne T. Sulton                                   John A. Parkins, Jr. (#859)
Post Office Box 2763                             K. Tyler O'Connell (#4514)
Olympia, Washington 98507                        Richards, Layton & Finger
609-468-6029                                     One Rodney Square
                                                 P. O. Box 551
                                                 Wilmington, Delaware  19899
Kester I.H. Crosse (#638)                        302-651-7700
Williams & Crosse                                Parkins@rlf.com
1214 King Street, Suite 300                      Oconnell@rlf.com
Wilmington, Delaware 19801                       Attorneys for Defendants
302-658-3488
Attorneys for Plaintiffs




                                                 OF COUNSEL:

                                                 Rosamaria Tassone
                                                 City of Wilmington Law Department
                                                 City/County Building, 9th Floor
                                                 800 N. French Street
                                                 Wilmington, Delaware  19801
                                                 302-576-2175

SCHEDULE C

<u>Exhibits</u>

2.     The following exhibits were offered by plaintiff, received in evidence and marked as indicated:

3.     The following exhibits were offered by plaintiff and marked for identification. Defendant(s) objected to their receipt in evidence on the grounds stated:

       [State identification number and brief description of each exhibit.  Also state briefly the ground of objection, such as competency, relevancy or materiality, and the Fed. R. Evid. relied upon. Also state briefly plaintiff('s)(s') response to the objection, with reference to Fed. R. Evid. relied upon.]

4.     The following exhibits were offered by defendant(s), received in evidence and marked as indicated:

       [State identification number and brief description of each exhibit.]

5.     The following exhibits were offered by defendant(s) and marked for identification.

**Exhibit A-1 = Plaintiffs' Witness List**

<u>Experts Witnesses</u>:

Dr. Jerry Boswell, D.B.A., CFA
Summit Associates
2262 E. Terraridge Drive
Littleton, CO 80126

Mr. Elbert Waters
901 North
Memphis, TN

Mr. Joseph Stine
JJS Consulting Associates, Inc.
2368 Greensward South
Warrington, PA 18976

Dr. Jennie Vershvovsky, M.D.
Assistant Medical Examiner
Delaware Health and Social Services
200 South Adams Street
Wilmington, DE 19801

<u>Lay Witnesses -Plaintiffs</u>:
Harry Smith, Jr. [father -if he is able and has been deposed]
724 East 6th Street, Wilmington, DE 19801

Roslyn Smith [mother]; 18 Paynter Street, Bear, DE 19701

Thomas Dore Smith [twin brother]; 724 East 6th Street, Wilmington, DE 19801

<u>Lay Witnesses -Neighborhood Residents/Visitors</u>:

Gladys Hines, 515 N. Harrison Street, Wilmington, DE 19805

Ernell Hudson, 515 N. Harrison Street, Wilmington, DE 19805

Sarah Richardson, 517 N. Harrison Street, Wilmington, DE 19805

Carlos Maldonado, Sr., 513 N. Harrison Street, Wilmington, DE 19805

Carlos Maldonado, Jr., 513 N. Harrison Street, Wilmington, DE 19805

Elizabeth Maldonado, 513 N. Harrison Street, Wilmington, DE 19805

Bernard Thompson, 1124 West 6th Street, Wilmington, DE 19805

James Ford, 515 N. Harrison Street, Wilmington, DE 19805

Casey Wilson, 506 West 26th Street, Wilmington, DE 19802

Benesa Thomas, 502 North Harrison Street, Wilmington, DE 19805

Manuel Cintron, 502 North Harrison Street, Wilmington, DE 19805

Carmen Garcia, 500 North Harrison Street, Wilmington, DE 19805

Dwightnett Wright, 1113 W. 5th Street, Wilmington, DE 19805

Bernard Thompson, 1124 W. 6th Street, Wilmington, DE 19805

Flora Wallace, 1113 West 5th Street, Wilmington, DE 19805

Joe Moody, 1110 West 5th Street, Wilmington, DE 19805

Shirley Wise, 1132 Clifford Brown Walk, Wilmington, DE 19801

David Gwyn, 507 North Harrison Street, Wilmington, DE 19805

Betty Gwyn, 507 North Harrison Street, Wilmington, DE 19805

Dionne Lawds, 504 North Harrison Street, Wilmington, DE 19805

Marilyn Garcia, 1117 West 5th Street, Wilmington, DE 19805

Catrenia Bungy, 606 Lea Blvd., Wilmington, DE 19802

Alberto Rivera, 127 Hunn Road, New Castle, DE 19720

Charles Brittingham, c/o Wilmington NAACP, P.O. Box 9531, Wilmington, DE 19809

Rev. Dr. Maurice Moyer, 519 Rogers Road, New Castle, DE 19720

Lay Witnesses -WPD Officers:

All are believed to have the mailing address of:

Wilmington Police Department
300 North Walnut Street
Wilmington, DE 19899


Douglas Baylor

Heather Brown-Pierson

William Browne

Karen Buhrman

Gregory Ciotti

John Ciritella

Bruce Coffiey

Kurtis Crawford

Nancy Dietz

Donald Dempsey

Thomas Dempsey

Donna DiClemente

Deborah Donohue

William Draper

Michael Duckett

Richard Evans

Ronald Fioravanti

William Gearhart

Michael Gifford

Shawn Gordon

Reginald Harvey

Vincent Knoll

Matthew Kurten

Henry Law

Michael Lawson

Martin Lenhardt

Brian Lucas

Stephen Martelli

Stephen Misetic

Tarki Moody

Bruce Multine

Gerald Murray

David Prado

Mitchell Rentz

Paul Reutter

David Rosenblum

Joseph Sammons

Johnny Saunders

Michael Szczerba

Steven Thomas

Nelida Vega

Chris Villaverde

Keith Weidlich

Johnny Whitehead

Any witness listed by Defendants

**Exhibit A-2 = Defendants' Witness List**

| Defendants' Witness List | |
|---|---|
| Louise Traux | Wilmington Hospital<br>501 West 14th Street<br>Wilmington, Delaware 19801 |
| William Stevenson | 1313 Idlewood Road<br>Wilmington, Delaware 19805 |
| Charles Romano | New Castle, Delaware 19720 |
| Deborah Donohue | Sergeant<br>Wilmington Police Department<br>300 North Walnut Street<br>Wilmington, Delaware 19801 |
| William Browne | Detective<br>Wilmington Police Department<br>300 North Walnut Street<br>Wilmington, Delaware 19801 |
| Donna DiClemente | Detective<br>Wilmington Police Department<br>300 North Walnut Street<br>Wilmington, Delaware 19801 |
| Michael Lawson | Detective<br>Wilmington Police Department<br>300 North Walnut Street<br>Wilmington, Delaware 19801 |
| Donald Dempsey | Corporal<br>Wilmington Police Department<br>300 North Walnut Street<br>Wilmington, Delaware 19801 |
| Thomas Dempsey | Sergeant<br>Wilmington Police Department<br>300 North Walnut Street<br>Wilmington, Delaware 19801 |
| John Ciritella | Detective<br>Wilmington Police Department<br>300 North Walnut Street<br>Wilmington, Delaware 19801 |
| Matthew Kurten | Sergeant<br>Wilmington Police Department<br>300 North Walnut Street<br>Wilmington, Delaware 19801 |
| Carlos Maldonado | 513 North Harrison Street |

| Defendants' Witness List | |
|---|---|
| | Wilmington, Delaware 19805 |
| David Gwyn | 507 North Harrison Street<br>Wilmington, Delaware 19805 |
| Betty Gwyn | 507 North Harrison Street<br>Wilmington, Delaware 19801 |
| Kim Jenkins | 1214 King Street<br>Suite 300<br>Wilmington, Delaware |
| Jon J. Nordby, Ph. D. | Final Analysis Forensics<br>3532 Soundview Drive West<br>University Place, WA 98466 |
| Ronald H. Traenkle | 3605 Cloverdale Drive<br>Bensalem, PA 19020 |

21

**<u>Exhibit B-1 = Plaintiffs' Exhibit List</u>**

Plaintiffs might make some changes to this list, particularly if the same exhibits are used by defendants. Plaintiffs reserve the right to add exhibits re rebuttal or for cross-examination.

| Number | Description | Defendants' Objections |
|---|---|---|
| 1. | Death certificate | |
| 2. | Autopsy report | |
| 3. | WPD policies 6.3, 6.7 and 6.8 | |
| 4. | Videotape of Harry Smith, Jr. – up to portion where his interview ends and he leaves the room. However, if he is able to testify then tape will not be used. | |
| 5. | Videotapes of Defendants' interviews on 9/13 or 9/14 2003 | |
| 6. | Responses to Discovery Requests (admissions and interrogatories) | Defendants object to the absence of specification as to which discovery responses are to be introduced |
| 7. | Photos of scene at 5th and Harrison Street and photos of police car | Defendants object to the absence of specification as to which photos are to be introduced. |
| | | |

| 8. | Police car Harry drove | Defendants object. It is physically impossible to make the car part of the record. |
|----|------------------------|------------------------------------------------------------------------------------|
| 9. | Police officers' written reports re them responding to call or being involved in the chase or being involved in the investigation of the shooting | Defendants object to the absence of specification as to which reports are to be introduced. |

Plaintiffs will ask the Court to allow the jury to be transported by the marshals to actually view the scene of the incident, at 5th and Harrison Streets, and the police car driven by Harry Smith, III because so doing might eliminate the need to call several witnesses. At this time, plaintiffs anticipate this case will not be tried in one week – they currently need four full days to put in their case in chief because almost 80 potential witnesses have been identified. Defendants object to this request. They contend there are dozens of photographs depicting the car and scene, and plaintiffs have made no showing why the Court should go to the time and expense in this five day trial of conducting such a view.

**Exhibit B-2 = Defendants' Exhibit List**

Defendants will seek to introduce the following exhibits at trial:  All of plaintiffs' objections are based on relevance or hearsay.

| Number | Description | Plaintiffs' Objections |
|---|---|---|
| 1 | WC001-05 (Wilmington College Application) | Object |
| 2 | WC00010 (Wilmington College Registration Data) | Object |
| 3 | Affidavit from Wilmington College Registrar | Object |
| 4 | LU003-06 (Lincoln University Application) | Object |
| 5 | LU007 (Lincoln University Transcript) | Object |
| 6 | DT001-02 (Cover letter & Del. Tech. Transcript) | Object |
| 7 | RC0001-02 (Official Transcript - Al DuPont High School | Object |
| 8 | JJ001-05 (J&J Staffing Resources Records) | Object |
| 9 | AM 1 (Letter from Amazon.com stating decedent was only a temporary worker who was never employed there) | Object |
| 10 | (Not bates labeled) Letter from MBNA indicating they have no employment records for H. Smith (at record jacket entry 48) | Object |
| 11 | (Not bates labeled) Letter from Amin Plumbing and General Contracting confirming that Smith never worked for them (in record jacket) | Object |
| 12 | (Not bates-labeled):  Affidavit from Agilent Technologies, Inc. that they have no records of his employment | Object |
| 13 | ME0001 (Death Certificate) | |
| 14 | W0285-90 (Autopsy Report) | |

| Number | Description | Plaintiffs' Objections |
|---|---|---|
| 15 | Vershvovsky Dep. Ex. 2 (Diagram showing numbered wounds) | |
| 16 | Vershvovsky Dep. Ex. 3 (3 receipts for evidence turned over to WPD) | |
| 17 | ME0008 (Medical Examiners' Toxicology Report dated 9/16/03) | Object |
| 18 | W0252-84 (Wilmington Hospital ER Records 9/12/03 to 9/13/03) | Object |
| 19 | W0189 (Letter from Roger Cresto (Ballistic Operator, WPD) to Brian Glynn (BATF Wilmington) requesting submission of evidence to Rockville Lab | |
| 20 | W0292 (Letter from Roger Cresto, WPD, to Brian Glynn, BATF, submitting handguns for testing) | |
| 21 | W0293 - BATF evidence acknowledgement form | |
| 22 | W0294-95 - Memo from P. Fyock to Baltimore BATF enclosing evidence transmittal form | |
| 23 | W4229-33 (BATF Report attached to Marsonopoli Affidavit) | |
| 24 | W0056-59 (Cpl. Law's report re: evidence gathering at 5th & Harrison Streets) | |
| 25 | W0060 (Cpl. Law's report re: recovery of evidence from ME's office) | |
| 26 | W0061-62 (Cpl. Law's report re: transport of car and removal of ballistic evidence from same) | |
| 27 | W0063 (Cpl. Law's report re: tagging, packaging and storing evidence) | |
| 28 | W0067 (S. Cpl. Tolbert's report dated 10/20/03 regarding submission of evidence to records division) | |
| 29 | W0064-66 (Master Cpl. Salmon's supplement report dated October 14, 2003 regarding | |

| Number | Description | Plaintiffs' Objections |
|---|---|---|
| | processing scene) | |
| 30 | W0313-16 (WPD property receipt submitted by M/Cpl. Henry Law on 9/14/03 listing HL1-78) | |
| 31 | W0317 (WPD Property Receipt For ET1-3) | |
| 32 | W0309-12:  Master Cpl. Salmon's handwritten notes and diagram of crime scene with shell casings | |
| 33 | W0301-308:  M/Cpl. Henry Law's photographic log | |
| 34 | W0051-52 (Report of Cpl. Weidlich regarding collection of evidence at Wilmington Hospital) | Object |
| 35 | W0054-55 (Weidlich report of photographs taken at Washington St.) | |
| 36 | W033-35 (Investigative Report of Det. Lawson) (contains chain of custody information re: MVR tape) | |
| 37 | W0036 (Report of Sgt. Ciotti) (contains chain of custody information regarding MVR tape) | |
| 38 | W0053 (Report of Cpl. Weidlich) (contains chain of custody information re: MVR) | |
| 39 | W0427 (E-mail from Marylyn Dietz re: MVR camera not being operable for several days) | |
| 40 | W03997-98 (4/4/05 Memorandum from Captain Dietz to Chief Szczerba regarding removal of MVR units from uniformed services division) | Object |
| 41 | Videotape of H. Smith Jr., from 9/13/03 | |
| 42 | Tape of WPD Radio Transmissions on 9/13/03 | |
| 43 | Tape of Nurse Truax 911 Call | |
| 44 | W0240, 0242, 0243 (911 Dispatch entry for Truax call) | |
| 45 | Animation of chase and events at 5th and Harrison Streets | Object |

| Number | Description | Plaintiffs' Objections |
|--------|-------------|------------------------|
| 46 | Attorney General's Report (W1317-24) | Object – hearsay |
| 47 | City Solicitor's Report (1325-31) | Object – hearsay |
| 48 | Office of Professional Standards Report (W1332-46) | Object – hearsay |
| 49 | Investigative File from the OPS (W4142-224) | Object – hearsay |
| 50 | Wilmington Police Department - Supplement Report (W1347-82) | Object - hearsay |
| 51 | Affidavit of David Gwyn | |
| 52 | W0352-53 (9/20/03 News Journal Article containing statements of David Gwyn) | Object – hearsay |
| 53 | W1986-87 (3/31/04 News Journal Article containing statement of David Gwyn) | Object – hearsay |
| 54 | W003-05 (Report of Corporal Crawford from 9/13/03 - contains notes of early police interview with D. Gwyn) | |
| 55 | W0190 (Notes from 9/13/03 interview with David Gwyn) | |
| 56 | Plaintiffs' complaint against Wilmington Hospital | Object |
| 57 | Plaintiffs' Responses To Its First Set of Interrogatories to Defendants | |
| 58 | W0327-29:    Use   of   Force/Departmental Weapons Directive 6.7 | |
| 59 | Wilmington Hospital Security Videotape | Object |
| 60 | Downtown Visions Videotape | I need to see this first so I know whether or not to object |
| 61 | WPD Photographs of Crime Scene | |

Defendants will use the following demonstrative exhibits at trial:

28

1.      A transcript of the dispatch tape which they intend to show to the jury as the tape is played.  **Plaintiffs reserve right to object until they see the transcript.**

2.      An animation showing the route taken by Mr. Smith.  This will consist of a map of a portion of Wilmington showing the location and progress of the stolen police car and the cars in pursuit.  The dispatch tape will be auditable in this animation.  **Plaintiffs Object.**

3.      An animation of the scene (view from overhead) showing the location and movements of the three defendant officers as described by the defendants.  **Plaintiffs Object.**

4.      An animation of the scene (viewed from overhead) showing the location and movements of Wilmington police as described by David Gwyn. **Plaintiffs Object.**

5.      A comparison overhead drawings depicting the location of vehicles and officers at the outset of the incident as described by Mr. Gwyn and as described by the defendant police officers. **Plaintiffs Object because they have requested but have not seen this.**

6.      A blow-up of a previously produced drawing showing the location of shell casings (W0309) which is color coded to identify which casings came from which officer.

7.      Blow-ups of exhibits which have been admitted into evidence.

**Exhibit C-1 = Plaintiffs' Jury Instructions**

Civil Rights, 42 U.S.C. § 1983 Claims
Fourth Amendment Claim
Citizen Alleging Excessive Force

In this case, Plaintiffs claim each Defendant used excessive force against Harry Smith, III.  You must consider the claim as against each Defendant separately.  To succeed in this claim, Plaintiffs must prove each of the following things by a preponderance of the evidence:

      1.      Defendant used unreasonable force against Harry Smith, III;

      2.      Because of Defendant's unreasonable force, Harry Smith, III was harmed; and

      3.      Defendant acted under color of law.

If you find Plaintiffs have proved each of these things by a preponderance of the evidence, then you should find for Plaintiffs, and go on to consider the question of damages.

If, on the other hand, you find Plaintiffs did not prove any one of these things by a preponderance of the evidence, then you should find for Defendant, and you will not consider the question of damages.


FOURTH AMENDMENT:
EXCESSIVE FORCE -DEFINITION OF "UNREASONABLE"

You must decide whether Defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances Defendant faced. You must make this decision based on what the officer knew at the time he fired his gun, not based on what you know now.  In deciding whether Defendant's use of force was unreasonable, you must not consider whether Defendant's intentions were good or bad.  In performing his job, an officer can use force that is reasonably necessary under the circumstances.  An officer may use deadly force when a reasonable officer, under the same circumstances, would believe the

suspect's actions placed him or others in the immediate vicinity in imminent danger of death or serious bodily harm.

If you should find for Plaintiffs against any of the Defendants, you must then decide the issue of the Plaintiffs' damages. For damages to be the proximate or legal result of a constitutional deprivation, it must be shown that, except for that constitutional deprivation, such damages would not have occurred.

In considering the issue of the Plaintiffs' damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the Plaintiffs' damages, no more and no less. Compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable. On the other hand, compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury --tangible and intangible. Thus, no evidence of the value of such intangible things as physical or emotional pain and mental anguish has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate Plaintiffs for those claims of damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

The Plaintiffs also claim the acts of the Defendants were done with malice or reckless indifference to Harry Smith, III's federally protected rights so as to entitle Plaintiffs to an award of punitive damages in addition to compensatory damages.

If you find for Plaintiffs, and if you further find that any of the Defendants did act with malice or reckless indifference to Harry Smith, III's federally protected rights, the law would allow you, in your discretion, to assess punitive damages against that Defendant or those Defendants as punishment and as a deterrent to others.

**Exhibit C-1 = Defendants' Jury Instructions**

RLF1-3053503-2

GENERAL INSTRUCTIONS

GENERAL INSTRUCTIONS -- DELIBERATIONS.

When you retire to the jury room to deliberate, you may take with you these instructions, the verdict form, your notes and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trail was meant to influence your decision about the facts in any way. Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel forward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convections about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict. When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. If you have any questions or messages for me, you must write them down on a piece of

**Error! Unknown document property name.**

paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give you your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

<u>Source</u>: Third Circuit Pattern Civil Jury Instruction 3.1.

<u>EVIDENCE.</u>

The evidence from which you are to find the facts consists of the following:

1.      The testimony of the witnesses;

2.      Documents and other things received as exhibits;

3.      Any facts that are stipulated -- that is, formally agreed to by the parties; and

4.      Any facts that are judicially noticed -- that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1.      Statements, arguments and questions of the lawyers for the parties in this case;

2.      Objections by lawyers;

3.      Any testimony I told you to disregard; and

4.      Anything you may have seen or heard about this case outside the courtroom.

You must make your decision based only on the evidence that you saw and heard in court.  Do not let rumors, suspicions or anything else that you may have seen or heard outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what was received into evidence.  When a lawyer asked a question or offered an exhibit into evidence, and a lawyer on the other side thought that it is not permitted by the rules of evidence, that lawyer objected.  This simply meant that the lawyer requested that I make a decision on a particular rule of evidence.  You should not be influenced by the fact that an objection was made.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection was sustained, ignore the question.  If it was overruled, treat the answer like any other.  If you are instructed that some item of evidence was received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may have been ordered struck from the record and you will be instructed to disregard this evidence.  Do not consider any testimony or other

evidence that was struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

<u>Source:</u>        Third Circuit Pattern Civil Jury Instruction 1.5.

<u>DIRECT AND CIRCUMSTANTIAL EVIDENCE.</u>

There are two types of evidence that you may use in reaching your verdict.  One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses -- something the witness has seen, felt, touched or heard or did.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.  Another form of direct evidence is an exhibit where the fact to be proved is the existence of a current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you.  The law makes no distinction in the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

<u>Source</u>:        Third Circuit Model Jury Instruction 1.6.

<u>CREDIBILITY OF WITNESSES.</u>

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of the credibility of the witnesses.  "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness said or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:

**Error! Unknown document property name.**

1.      the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

2.      the quality of the witness's understanding and memory;

3.      the witness's manner while testifying;

4.      whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

5.      whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

6.      how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

7.      any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves

<u>Source:</u>       Third Circuit Model Jury Instructions 1.7.

<u>INTRODUCTION TO CLAIMS.</u>

Plaintiffs claim that Detective Ciritella, Sergeant Dempsey and Officer Kurten used excessive force in attempting to arrest Harry Smith, III.  The defendants deny that they did so. The Estate of Harry Smith, III, one of the plaintiffs, alleges two claims:  one under federal law and the other under Delaware law.  The parents of Harry Smith, III assert a claim known as a wrongful death action under Delaware law.  I will instruct you separately on each of these claims a little later.

There are three defendants in this case.  You should consider the claims separately against each defendant.  You may find that the plaintiffs have proven that all of the defendants

are liable, that they have proven that only one or two are liable, or that they have failed to prove that any of the defendants are liable to them.

I will now give you a brief summary of the what the plaintiffs must prove to make their case:

Source:  Third Circuit Pattern Jury Instruction 1.2.

THE ESTATE'S FEDERAL CLAIM.

I will now instruct you on the Estate's federal claim.  The Estate of Harry Smith, III is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under by persons acting under color of state law.  The parties agree that the defendants were acting under color of state law, but they disagree whether the defendants deprived Harry Smith, III of his constitutional rights.

The Estate claims, and must therefore prove, that either Detective Ciritella, Sgt. Dempsey or Officer Kurten (or any combination of them) deprived Harry Smith, III of the rights guaranteed to him by the Fourth Amendment of the United States Constitution.  Specifically, the Estate alleges that the defendants used excessive force in attempting to stop or arrest Mr. Smith and in attempting to prevent his escape.  The Fourth Amendment protects persons from being subjected to excessive force while being arrested or stopped by police.  In other words, a law enforcement official may only use the amount of force necessary under the circumstances to make an arrest or conduct a stop.  Every person has the constitutional right not to be subjected to excessive force while being arrested or stopped by police, even if the arrest or stop is otherwise proper.

An officer may not use deadly force to prevent a suspect from escaping unless deadly force is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.

**Error! Unknown document property name.**

Also, the officer must give the suspect a warning before using deadly force, if it is feasible under the circumstances to give such warning.

In order to establish that a defendant police officer violated the Fourth Amendment by using deadly force, the Estate must prove that the defendant intentionally committed acts that constituted deadly force against Harry Smith, III.   The Estate must prove at least one of the following things:

- Deadly force was not necessary to prevent Harry Smith, III's escape; or

- The officers did not have probable cause to believe that Harry Smith, III posed significant threat of serious physical injury to themselves or others.

In making this decision you should consider all the relevant facts and circumstances leading up to the time of the encounter that the defendants reasonably believed to be true at the time of the encounter.   The reasonableness of the defendants' acts must be judged from the perspective of a reasonable officer on the scene.   The concept of reasonableness makes allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are sometimes tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation.

As I told you earlier, the Estate must prove that the defendant intended to commit the acts in question; but apart from that requirement, the defendant's actual motivation is irrelevant. If the force the defendant used was unreasonable, it does not matter whether the defendant had good motivations.   And an officer's improper motive will not establish excessive force if the force used was objectively reasonable.

Source:  Third Circuit Pattern Jury Instructions 4.1, 4.3, 4.9.1.

Compensatory Damages.

I am now going to instruct you on damages relating to the Estate's federal law claim. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not any of the defendants should be held liable.

If you find that one or more of the defendants are liable, then you must consider the issue of compensatory damages.  You must award the Estate an amount that will fairly compensate it for any injury Harry Smith, III actually sustained as a result of the defendants' conduct.  Compensatory damages must not be based on speculation or sympathy.  They must be based on the evidence presented at trial, and only on that evidence.  The Estate has the burden of proving compensatory damages by a preponderance of the evidence.

The Estate claims compensation for the  physical harm to Harry Smith III during  the events at issue, including physical pain.  In assessing such harm, you should consider the nature and extent of the injury.

<u>Source</u>: Third Circuit Pattern Jury Instructions 4.8.1.

<u>STATE LAW CLAIMS - INTRODUCTION.</u>

The Estate of Harry Smith and Mr. and Mrs. Smith assert claims based on the alleged violation of Delaware law.  In their state law claims, the Smiths and the Estate allege that the defendant police officers used excessive force as defined by state law in attempting to stop or arrest Harry Smith, III and in attempting to prevent his escape.  In order to prevail on these claims, the plaintiffs must prove that one or more of the officers used excessive force.  Second, the plaintiffs must prove that the defendants acted wantonly or with gross negligence when they shot at Mr. Smith.  If you find that they have failed to prove either of these things, your verdict on the state law claims must be for the defendants.  If you find plaintiffs have proven both of these things, then you must determine the damages to be awarded to the Estate and to Mr. and Mrs. Smith.

Use of Deadly Force By a Police Officer.

**Error! Unknown document property name.**

Insofar as plaintiffs' state law claims are concerned, the use of deadly force is justified if the defendant believed that such force was necessary to protect him or another of the defendants against death or serious physical injury.  The issue is not whether the use of deadly force was reasonable under the circumstances or whether a reasonable person would have perceived the need for employing deadly force; rather the test is whether the defendant in fact had such a belief at the time deadly force was used.

Source:  11 Del. C. §§ 464, 465; Moore v. Licciardello, 463 A.2d 268 (Del. 1983); State v. Scott, 1989 Del. Super. LEXIS 291 (Del. Super., July 19, 1989).

Use of Deadly Force By A Police Officer To Prevent Escape.

You have heard testimony that the defendants shot at Mr. Smith to prevent his escape. Under the law, the defendants' use of deadly force to prevent Mr. Smith's escape is justified if:

1.      THEY BELIEVED MR. SMITH COMMITTED A FELONY INVOLVING PHYSICAL INJURY OR A THREAT OF PHYSICAL INJURY; AND

2.      THEY BELIEVED THAT THE FORCE EMPLOYED CREATED NO SUBSTANTIAL RISK OF INJURY TO INNOCENT PERSONS; AND

3.      THEY BELIEVED THERE WAS A SUBSTANTIAL RISK THAT MR. SMITH WOULD CAUSE DEATH OR SERIOUS PHYSICAL INJURY IF HIS APPREHENSION WAS DELAYED.

In determining whether the defendant officers believed these things, the test is not whether a reasonable person would have believed them; rather, the test is whether the defendants in fact believed them.

Source:  11 Del. C. § 467; Moore v. Licciardello, 463 A.2d 268 (Del. 1983); State v. Scott, 1989 Del. Super. LEXIS 291 (Del. Super., July 19, 1989).

The Scope of Public Officers' Immunity From Tort Liability.

**Error! Unknown document property name.**

If you find that either Detective Ciritella, Sgt. Dempsey or Officer Kurten used excessive force in attempting to arrest or stop Mr. Smith or in attempting to prevent his escape, you must then determine whether plaintiffs have proven that the defendant police officer acted who used excessive force acted wantonly or with gross negligence. Delaware law provides that no damages may be recovered against a public officer or employee if the claim arose because of the performance of an official duty that was conducted in good faith for the benefit of the public. This is known as sovereign immunity. There is an exception to this rule, however, if the public officer or employee acted with gross or wanton negligence. Gross or wanton negligence refers to conduct of such a nature or degree that it constitutes a gross deviation from what a reasonable, ordinary person would do in the same situation.

For plaintiffs' state law claims to fall within this exception to sovereign immunity, plaintiffs must prove that Detective Ciritella, Sergeant Dempsey or Officer Kurten acted with gross or wanton negligence.

Source: Superior Court Pattern Civil Jury Instruction 10.13.

The Estate's Damages

If you do not find that the Estate has sustained its burden of proof, the verdict must be for the defendants. If you do find that the Estate has sustained its burden of proof, you should consider the compensation to which it is entitled. I will now instruct you on those damages. As I told you earlier, the fact that I am instructing you on damages does not mean that I have an opinion on whether you should award damages.

The purpose of a damages award in a civil lawsuit is just and reasonable compensation for the harm or injury done. Certain guiding principles must be employed to reach a proper damages award. First, damages must be proved with reasonable probability and not left to speculation. Damages are speculative when there is merely a possibility rather than a reasonable probability that an injury exists. While pain and suffering are proper elements on

which to determine monetary damages, the damages for pain and suffering must be fair and reasonably determined and may not be determined by a fanciful or sentimental standard. They must be determined from a conclusion about how long the suffering lasted, the degree of suffering, and the nature of the injury causing the suffering.

If you find for Mr. Smith's Estate, you should award to it the sum of money that in your judgment would have fairly and reasonably compensated Mr. Smith for any conscious pain and suffering he suffered from the time of the first wrongful act you found one of these defendants committed until his death. Plaintiffs bear the burden of proving that Mr. Smith consciously suffered pain and suffering. If he dies instantaneously or almost instantaneously after the wrongful act you have found, or if he was unconscious from the time of the first wrongful act, then the law requires that you not make an award to the Estate.

Source: Superior Court Pattern Jury Instruction 22.1; Magee v. Rose, 405 A.2d 143 (Del. Super. 1979) (damages limited to conscious pain and suffering from time of injury until time of death and plaintiff bears burden of showing existence of conscious pain and suffering); Loden v. Getty Oil Co., 340 A.2d 174 (Del. Super. 1975) aff'd, 359 A.2d 161 (Del. 1976) (damages subsequent to or relating to death not recoverable).

Damages for Wrongful Death.

Mr. and Mrs. Smith assert a claim for wrongful death. The law recognizes that when a person dies as the result of another's wrongful conduct, there is injury not only to the deceased but also to immediate family members. While it is impossible to compensate the deceased for the loss of his life, it is possible to compensate certain family members for the losses that they have suffered from the death of a loved one. For this reason, Delaware law provides that when a person dies as a result of another's wrongful act, certain family members may recover fair compensation for their losses resulting from the death. In determining fair compensation, you may consider the following:

**Error! Unknown document property name.**

1.    the loss of the expectation of monetary benefits to Mr. and Mrs. Smith that would have resulted from the continued life of Harry Smith, III; that is, the expectation of inheritance that Mr. and Mrs. Smith have lost;

2.    the loss of the portion of Harry Smith, III's earnings and income that probably would have been used for the support of Mr. and Mrs. Smith;

3.    the loss of Harry Smith, III's household services;

4.    the reasonable cost of funeral expenses, not to exceed $2000; and

5.    the mental anguish suffered by Mr. and Mrs. Smith  as a result of Harry Smith, III's death.

The term "mental anguish" encompasses the grieving process associated with the loss of a loved one.  You may consider that the grieving process, accompanied by its physical and emotional upheaval, will be experienced differently by different people, both in its intensity and in its duration.  The ability to cope with the loss may be different for each person.  There is no fixed standard or measurement.  You must determine a fair and adequate award through the exercise of your judgment and experience after considering all the facts and circumstances presented to you during the trial.  Mr. and Mrs. Smith carry the burden of proving their damages by a preponderance of the evidence, but they are not required to claim and prove with mathematical precision exact sums of money representing their damages for mental anguish.  It is required only that Mr. and Mrs. Smith furnish enough evidence so that you, the jury, can make a reasonable determination of any damages for mental anguish.

Source:  Superior Court Pattern Jury Instruction 22.8.

**Exhibit D-1 = Plaintiffs' Verdict Forms**

SPECIAL INTERROGATORIES
TO THE JURY

Do you find from a preponderance of the evidence:

1.      That the Defendant _____ committed acts that violated Harry Smith, III's federal constitutional right not to be subjected to excessive or unreasonable force during an arrest?

Answer Yes or No

2.      That the Defendant's _____acts were the proximate or legal cause of damages sustained by Plaintiffs?

Answer Yes or No

[Note: If you answered No to either Question No. 1 or Question No. 2, you need not answer the remaining questions.]

3.      That Plaintiffs should be awarded damages to compensate for the reasonable cost of funeral and burial expenses?

Answer Yes or No

If your answer was Yes, in what amount? $

4.      That Plaintiffs should be awarded damages to compensate for physical as well as emotional pain and mental anguish?

Answer Yes or No

If your answer was Yes, in what amount? $

5.      That the Defendant _____ acted with malice or with reckless indifference to Harry Smith, III's federally protected rights and that punitive damages should be assessed against the Defendant _____.

Answer Yes or No

**Error! Unknown document property name.**

If your answer was Yes, in what amount? $

SO SAY WE ALL.


Foreperson


DATED:

**Exhibit D-2 = Defendants' Verdict Forms**

<u>The Federal Claims</u>

(1)    Do you find by a preponderance of the evidence that any of the defendants used excessive force and deprived Harry Smith, III of his rights under the Fourth Amendment?

YES_____                          NO_____

Instruction:

If your answer is "Yes," go to questions 2 and 3.

If your answer is "No," go to question 4, do not answer questions 2 and 3.

(2)    Which of the defendants do you find used excessive force and deprived Harry Smith, III of his Fourth Amendment rights?

Detective Ciritella          YES_____          NO_____

Sergeant Dempsey          YES_____          NO_____

Sergeant Kurten          YES_____          NO_____

(3)    State the amount you award to the Estate on behalf of Harry Smith, III?

$_____

(4)    Do you find by a preponderance of the evidence that any of the defendants participated in a conspiracy motivated by a racial animus?

YES_____                          NO_____

Instruction:

If you answered "Yes," answer questions 5 and 6.

If you answered "No," go to question 7.

(5)    Which of the defendants do you find participate in the conspiracy?

Detective Ciritella          YES_____          NO_____

Sergeant Dempsey          YES_____          NO_____

**Error! Unknown document property name.**

Sergeant Kurten                  YES_____                  NO_____

(6)    State the amount you award to the Estate for the injuries suffered by the estate as a result of the conspiracy.

$_____

State Law Claims

(7)    Do you find by a preponderance of the evidence that any of the defendants used excessive force in light of what you find they believed the circumstances to be at the time?

YES_____                  NO_____

Instruction:

If you answered "Yes," go to question 8.

If you answered "No," you are finished.  Do not answer the remaining questions.

(8)    Do you find by a preponderance of the evidence that the defendant who you found used excessive force also acted wantonly or with gross negligence?

YES_____                  NO_____

Instruction:

If you answered "Yes," go to question 9 and 10.

If you answered "No," go to question ____.

(9)    Which of the defendants do you find used excessive force and acted wantonly or with gross negligence?

Detective Ciritella              YES_____                  NO_____

Sergeant Dempsey               YES_____                  NO_____

Sergeant Kurten                 YES_____                  NO_____

(10)    State the amount you award to the Estate on behalf of Harry Smith, III.

$_____

**Error! Unknown document property name.**

Instruction:

Go to question 8.

(11)    For each defendant you answered "Yes" for any of the defendants in response to Question 9, do you find that the defendant or defendants for whom you answered "Yes" wrongfully caused the death of Harry Smith III. If you answered "NO" for a defendant in response to question 9, answer "Not Applicable" for that defendant.

                                                                        Not Applicable

Detective Ciritella        YES_____NO_____        _____

Sergeant Dempsey        YES_____NO_____        _____

Sergeant Kurten        YES_____NO_____        _____

Instruction:

If your answer is "Yes," to any of the three defendants, go to question 12.

If your answer is "No," or "Not Applicable" for all three defendants, go to question 13.

(12)    State the amount you award to Harry Smith Jr. and Roslyn Woodward Smith for the wrongful death of Harry Smith III.

        $_____

(13)    Do you find by a preponderance of the evidence that the defendants abused Harry Smith, III's corpse?

        YES_____                NO_____

Instruction:

If your answer is "Yes," go to question 14 and 15.

If your answer is "No," you are finished.

(14)    Which of the defendants do you find abused Harry Smith's corpse?

        Detective Ciritella                YES_____        NO_____

        Sergeant Dempsey                YES_____        NO_____

        Sergeant Kurten                YES_____        NO_____

**Error! Unknown document property name.**

(15)    State the amount you award to Mr. and Mrs. Smith for the abuse of Harry
Smith, III's corpse.

$_____