IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARRY SMITH, JR. and ROSLYN WOODARD SMITH, Individually and as Administrators of THE ESTATE OF HARRY SMITH, III | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 04-1254-GMS |
| v. | ) ) ) | |
| CITY OF WILMINGTON, JOHN CIRITELLA, THOMAS DEMPSEY, and MATHEW KURTEN, | ) ) ) ) | |
| Defendants. | ) | |

### DEFENDANTS' ANSWER TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE

Plaintiffs have moved to exclude on the basis of relevancy evidence relating to Mr. Smith's attempted carjacking, and his possession of a scalpel. In addition they seek to preclude evidence that Mr. Smith "had possession of a gun of any type." (D.I. 138). For the reasons stated below, the evidence plaintiffs seek to preclude is relevant to several issues in this matter.

### A. The Evidence.

At approximately 6 p.m. on September 13, 2003, Harry Smith, III entered the Emergency Room of the Wilmington Hospital for the second time in two days complaining that he was hearing voices. He was placed in Treatment Room 24 and waited there with his father. While waiting for treatment, Mr. Smith found a surgical kit in the cabinet and removed a scalpel. A struggle ensured with his father and at some point Mr. Smith stabbed himself in the chest with the scalpel.

Mr. Smith broke free of his father and ran out of the Emergency Room toward Washington Street. He ran south on Washington Street where he saw William Stevenson getting out of his car near the Washington Street Ale House. Mr. Smith, still carrying the scalpel, approached Mr. Stevenson and told him "Get out of my way. I'm going to steal your f ___ ing car."

Mr. Stevenson retreated into his car and attempted to close the door. A tug of war followed in which Mr. Smith tried to pull the door open. Eventually Mr. Stevenson got the door closed, whereupon Mr. Smith started beating on the car roof and window. Mr. Stevenson feared that he would succeed in breaking the window.

Wilmington police officers Whitehead and Saunders were on routine patrol in car 1180 on Washington Street when they saw the fracas involving Mr. Smith and Mr. Stevenson. Whitehead drove the car up to the scene and both officers got out of the car with their guns drawn; Officer Whitehead left the door open and the engine of the patrol car running. The officers saw that Mr. Smith was holding what appeared to be a knife. Mr. Smith walked toward the officers, who retreated while at the same time telling him to "drop the knife" and "get down." Mr. Smith suddenly spun and jumped into the police car. As Mr. Smith tried to get the car in gear, Officer Whitehead ran over to the car and tried to pull him out. Fearing that Mr. Smith might stab him with the scalpel Officer Whitehead abandoned his efforts to pull him out of the car, stepped back and shot him in the leg. Mr. Smith got the car in gear and sped off, as one witness described, "like a bat out hell."

While this was taking place Officer Saunders broadcast on his radio:

> 14th and Washington. Send backup. He's in the car.
>
> Shots fired. Shots fired. Shots fired. He's in the police car. Shots fired.

The dispatcher also broadcast that "he's armed with a knife." The ensuing pursuit ended in Mr. Smith's death at 5th and Harrison Streets.

### B. Why Evidence of the Events on Washington Street Is Relevant.

There are several reasons why this evidence is relevant. Each will be discussed separately.

1. **The Evidence Is Relevant Because It Provides Context.**

In order to most easily understand why the challenged evidence is essential to providing context, it is useful to take the unusual step of considering these events in reverse chronological order, beginning with the events at 5th and Harrison Streets.

(a) The officers knew from the police radio that "16-Charles" (Officer Saunders and Whitehead) had requested backup at 14th and Washington, that shots had been fired, that the suspect had a knife, and that "he's got the car."

(b) The evidence in paragraph (a) makes relevant the firing of the shots on Washington Street; Mr. Smith's theft of the police car; Officers Whitehead and Saunders saw that Mr. Smith had what appeared to be a knife; and that the officers retreated while Mr. Smith walked toward them, thus allowing Mr. Smith to gain access to the car.

(c) The fact that Officers Whitehead and Saunders were engaged with Mr. Smith makes relevant the question why they were engaged -- they saw Mr. Smith in an apparent carjacking.

2. **The Evidence Is Relevant To Plaintiffs' Expert Testimony On Police Conduct.**

Plaintiffs will introduce expert testimony critical of Wilmington police for, among other things "failure of [Officers Saunders and Whitehead] to provide adequate information [about what happened on Washington Street]" and "failure [of pursuing officers] to ascertain pertinent information ...." (Stine Rep., at 4) (Tab A). Thus, plaintiffs' own expert makes the information about what happened on Washington Street relevant to this case.

3. **Plaintiffs' And Their Experts' Characterization Of Mr. Smith's Conduct Makes This Evidence Relevant.**

The plaintiffs' experts, as well as plaintiffs themselves, incorrectly characterize Mr. Smith's conduct on Washington Street as a misdemeanor. Elbert Waters opines "Delaware identifies this

type of car theft as a misdemeanor." (Waters Rep., at 5) (Tab B). Similarly, Joseph Stine characterizes these events as merely Mr. Smith "was operating [the patrol car] without the consent of the Wilmington Police Department" (Stine Rep., at 3) and faults Detective Ciritella for using "deadly force against a person who was operating a motor vehicle without the consent of the owner." *Id.* at 5. Plaintiffs themselves have demonstrated a propensity to characterize Mr. Smith's conduct as a "misdemeanor car theft." (*E.g.* Pl. Ans. Br. 10, 14, 15; D.I. 116). The evidence shows, however, that Mr. Smith's conduct in stealing the police car while possessing a deadly weapon amounts to something far more serious than a "misdemeanor car theft" or operating a car without the consent of the owner. This characterization by plaintiffs and their experts thus makes the events on Washington Street relevant.

### 4.   The Evidence Is Relevant To Plaintiffs' Economic Expert's Testimony.

Plaintiffs will offer the expert testimony of Jerry Boswell, D.B.A., who will testify as to the money Mr. Smith would have earned during his lifetime. Dr. Boswell based his calculations on the assumption that Mr. Smith would have graduated from college in 2004 and started working at that time. However, the fact that Mr. Smith committed crimes punishable by a potentially lengthy prison sentence on Washington Street raises serious questions about Dr. Boswell's underlying assumptions that Mr. Smith would have graduated from college and started working in 2004. Thus, the challenged evidence is relevant to plaintiffs' economic claim.

### C. There Is Evidence That The Defendants Reasonably Believed Mr. Smith Had Access To A Shotgun Or Handgun

Plaintiffs seek to exclude evidence that Mr. Smith had possession "of a gun of any type" on the basis that there is "no evidence ... indicating the defendants ... had information indicating Harry Smith, III ... possessed a gun of any type." Defendants are not entirely certain what plaintiffs are seeking here. Defendants have readily acknowledged that--unknown to them at the time--Mr. Smith did not have immediate access to a gun. But the evidence shows that at the time of the incident,

4

they reasonably believed he had such access. It was the practice of the Wilmington Police Department to carry a loaded shotgun in the front seat of patrol cars[1] and the defendant officers therefore believed Mr. Smith likely had access to a shotgun. For example, Sgt. Dempsey testified that Mr. Smith "was in possession of a shotgun to my knowledge." (Dempsey, 75) (Tab C). Also, having heard the broadcast "shots fired" the defendant officers had to consider the possibility Mr. Smith had a handgun with him.

In sum, defendants do not plan to introduce evidence that Mr. Smith had immediate access to a gun, but they plan to introduce evidence that they reasonably believed at the time that he had such access.

|  |  |
|---|---|
| OF COUNSEL:<br>Rosamaria Tassone<br>City of Wilmington Law Department<br>City/County Building, 9th Floor<br>800 N. French Street<br>Wilmington, Delaware 19801<br>302-576-2175 | /s/ John A. Parkins, Jr.<br>John A. Parkins, Jr. (#859)<br>K. Tyler O'Connell (#4514)<br>Richards, Layton & Finger<br>One Rodney Square<br>P. O. Box 551<br>Wilmington, Delaware 19899<br>302-651-7700<br>Parkins@rlf.com<br>Oconnell@rlf.com<br>Attorneys for Defendants |

Dated: October 6, 2006

---

[1] Defendants anticipate that plaintiffs will argue that a 1995 WPD procedure required officers to place the shotgun in the trunk. The evidence will be that by 2003 the practice, but not the written procedure, was to place the shotgun in the shotgun racks located in the front seat of the recently purchased patrol cars. In any event, the 1995 regulation goes to the weight of the officers' testimony they believed Mr. Smith had access to a shotgun, not its admissibility.

5

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Kester I.H. Crosse, Esquire
Williams & Crosse
1214 King Street
Suite 300
Wilmington, DE 19801

I hereby certify that on October 6, 2006, I have sent by U.S. Regular Mail, the foregoing document to the following non-registered participants:

Anne T. Sulton, Esquire
Post Office Box 2763
Olympia, WA 98507

/s/ John A. Parkins, Jr.
John A. Parkins, Jr. (#859)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Parkins@rlf.com