**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

|  | Page |
|---|---|
| 1. Preponderance of the evidence | 2 |
| 2. Jury questions for witnesses | 3 |
| 3. Note taking by jurors | 4 |
| 4. Spoliation | 6 |
| 5. False statements | 7 |
| 6. Credibility of witnesses | 8 |
| 7. Impeachment of witnesses | 9 |
| 8. Multiple defendants | 10 |
| 9. Deadly force defined | 11 |
| 10. Use of deadly force | 12 |
| 11. Negligence as a matter of law | 14 |
| 12. Municipal tort immunity | 15 |
| 13. Wanton conduct defined | 16 |
| 14. Duty to maintain proper lookout | 17 |
| 15. Delaware self-defense with deadly force | 18 |
| 16. Delaware defense of others with deadly force | 19 |
| 17. 42 USC 1983 use of excessive force | 20 |
| 18. 42 USC 1983 state-created danger | 22 |
| 19. Abuse of corpse | 24 |
| 20. Delaware wrongful death compensatory damages | 25 |
| 21. Delaware wrongful death punitive damages | 27 |
| 22. 1983 compensatory damages | 28 |
| 23. 1983 punitive damages | 29 |
| 24. Abuse of corpse damages | 30 |

**Preponderance of the Evidence**

This is a civil case. Plaintiffs are the parties bringing this lawsuit. Defendants are the parties against whom the lawsuit was filed. Plaintiffs have the burden of proving their case by what is called the preponderance of the evidence.  This means, Plaintiffs have to prove to you, in light of all the evidence, that what they claim is more likely so than not so.

To say it differently: if you were to put the evidence favorable to Plaintiffs and the evidence favorable to a Defendant on opposite sides of the scales, Plaintiffs would have to make the scales tip somewhat on their side.  This is the same analysis you will use for each Defendant.  As an example, if you were to put the evidence favorable to Plaintiffs and the evidence favorable to Defendant John Ciritella on opposite sides of the scales, Plaintiffs would have to make the scales tip somewhat on their side.

If Plaintiffs fail to meet this burden, the verdict must be for that particular Defendant. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

**Source:**

**U.S. Third Circuit Model 1.10**

Plaintiffs request this instruction be given at both the beginning of the case and at the close of the evidence.

2

**Jury Questions for Witnesses**

You will have the opportunity to ask questions of the witnesses in writing.  When a witness has been examined and cross-examined by counsel, and after I ask any clarifying questions of the witness, I will ask whether any juror has any further clarifying question for the witness.

If so, you will write your question on a piece of paper, and hand it to my Deputy Clerk. Do not discuss your question with any other juror. I will review your question with counsel at sidebar and determine whether the question is appropriate under the rules of evidence.  If so, I will ask your question, though I might put it in my own words.  If the question is not permitted by the rules of evidence, it will not be asked, and you should not draw any conclusions about the fact your question was not asked. Following your questions, if any, the attorneys may ask additional questions.  If I do ask your question you should not give the answer to it any greater weight than you would give to any other testimony.

**Source:**

**U.S. Third Circuit Model 1.8**

**Note-Taking By Jurors**

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law.  My Courtroom deputy will arrange for pens, pencils, and paper.  Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial.  But you should not assume the transcripts will be available for your review during your deliberations.  Nor should you consider notes that you or fellow jurors may take as a kind of written transcript.  Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations.  Here are some other specific points to keep in mind about note taking:

1. Note-taking is permitted, not required.  Each of you may take notes.  No one is required to take notes.

2. Be brief.  Do not try to summarize all of the testimony.  Notes are for the purpose of refreshing memory.  They are particularly helpful when dealing with measurements, times, distances, identities, and relationships.  Overuse of note-taking may be distracting.  You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand.  Note-taking must not distract you from that task.  If you wish to make a note, you need not sacrifice the opportunity to make important observations.  You may make your note after having made an observation.

3. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes.  As I mentioned earlier, your notes are not official transcripts.  They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial.  They are valuable, if at all, only as a way to refresh your memory.

Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.  You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Noted are not to be used in place of the evidence.

4.Do not take your notes away from court.  I repeat, at the end of each day, please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations."]

**Source:**

**U.S. Third Circuit Model 1.9**

**Spoliation**

There is evidence from which you may conclude that one or more of the Defendants, or someone working on their behalf, may have intentionally and/or recklessly suppressed or destroyed the video tape located in the police car Harry Smith, III was driving.   In your deliberations, if you conclude that this is the case, that is, that the loss or destruction of this video tape was due to the intentional and/or reckless conduct of one or more of the Defendants, or someone working on their behalf, then you may conclude that the missing evidence would have been unfavorable to the Defendants in this case.

**Source:**

**Delaware Jury Instruction 23.17**

**False Statements**

You may consider statements given by a party or a witness before trial as evidence of the truth of what they said in the earlier statements, as well as in deciding what weight to give their testimony.

In considering prior inconsistent statements, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

**Source:**

**Credibility Of Witnesses**

In saying you must consider all of the evidence, I do not mean you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making this decision you may believe or disbelieve any witness, in whole or in part.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?

**Source:**

**U.S. 11th Circuit Pattern Jury Instruction 3**

**Impeachment Of Witnesses - Inconsistent Statement**

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**Source:**

**U.S. 11th Circuit Pattern Jury Instruction 4.1**

**Multiple Defendants**


There are several Defendants in this case.  Some may be liable while others are not. All the Defendants are entitled to your fair consideration of their own defenses. If you find against one Defendant, that shouldn't affect your consideration of other Defendants.

Unless I tell you otherwise, all my instructions apply to every defendant.


**Source:**

**Delaware Jury Instruction 5.5**


Plaintiffs request this instruction be given at both the beginning of the case and at the close of the evidence.

**Deadly Force Defined**

"Deadly force" means force which the defendant uses with the purpose of causing or which the defendant knows creates a substantial risk of causing death or serious physical injury. Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force. A threat to cause death or serious bodily harm, by the production of a weapon or otherwise, so long as the defendant's purpose is limited to creating an apprehension that deadly force will be used if necessary, does not constitute deadly force.

**Source:**

**Delaware Statutes, Title 11, § 471(d)**

**Justification - Use Of Deadly Force In Law Enforcement**

Delaware Statutes, Title 11, Section 467(c) provides that the use of deadly force by a police officer is justifiable if:

1) all other reasonable means of apprehension have been exhausted, and:

2) the police officer believes the arrest is for any crime involving physical injury or threat thereof, and the deadly force is directed at a vehicle to disable it for the purpose of effecting the arrest, or the police officer believes the arrest is for a felony involving physical injury or threat thereof; and

3) the police officer believes the force employed creates no substantial risk of injury to innocent persons; and

4) the police officer believes there is a substantial risk that the person to be arrested will cause death or serious physical injury, or will never be captured if apprehension is delayed.

Delaware Statutes, Title 11, Section 470 (a), provides that when the police officer believes force is necessary, but the police officer is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of the use of force, then the justification afforded by Section 467(c) is not available to the police officer in a case such as this, wherein, among their allegations, the Plaintiffs allege recklessness or negligence.

Furthermore, Delaware Statutes, Title 11, Section 470 (b) provides that when a police officer is justified in using force, but the police officer recklessly or negligently injures or creates

12

a risk of injury to innocent persons, the justification afforded by Section 467 is unavailable in a prosecution for an offense involving recklessness or negligence towards innocent persons.

**Source:**

**Delaware Statutes, Title 11, §§ 467(c), 470, 471**

**Negligence As A Matter Of Law**


A person is considered negligent if he violates a statute and/or regulation that has been enacted for people's safety. The violation of the statute and/or regulation is negligence as a matter of law.  If you find that one or more of the Defendants has/have violated the statute and/or regulation that I am about to read to you, then you must conclude that the Defendant or those Defendants were negligent.

Statute:


Regulation:


**Source:**

**Delaware Jury Instruction 5.7**

**Municipal Tort Immunity**

Delaware law provides that no damages may be recovered against a governmental entity or any public officer or employee if the claim arose because of the performance of an official duty that was conducted in good faith for the benefit of the public. This is known as sovereign immunity.

There is an exception to this rule, however, if the public officer or employee acted with gross or wanton negligence.

Gross or wanton negligence refers to conduct of such a nature or degree that it constitutes a gross deviation from what a reasonable, ordinary person would do in the same situation.

For Plaintiffs' claims to fall within this exception to sovereign immunity, Plaintiffs must prove that the Defendant acted with gross or wanton negligence.

**Source:**

**Delaware Jury Instruction 10.13**

**Wanton Conduct Defined**

Wanton conduct occurs when a person, though not intending to cause harm, does something so unreasonable and so dangerous that the person either knows or should know that harm will probably result. It reflects a foolhardy "I don't care" attitude.

**Source:**

**Delaware Jury Instruction 5.10**

**Duty To Maintain Proper Lookout**

People have a duty to keep a proper lookout for their own safety. The duty to look implies the duty to see what is in plain view unless some reasonable explanation is offered. It is negligent not to see what is plainly visible where there is nothing to obscure one's vision, because a person is not only required to look, but also to use the sense of sight in a careful and intelligent manner to see things that a person in the ordinary exercise of care and caution would see under the circumstances.

**Source:**

**Delaware Jury Instruction 10.21**

**Delaware Wrongful Death / Self-Defense With Deadly Force**

Defendant John Ciritella contends he acted in self-defense after Harry Smith, III allegedly attempted to hit him with the car. You may find that Defendant Ciritella used deadly force.

"Deadly force" is force used with the purpose of causing death or serious physical injury or with the knowledge of a substantial risk of causing death or serious physical injury.

Deadly force by Defendant Ciritella is justified if he believed it was necessary to protect himself against death or serious physical injury.

"Serious physical injury" means physical injury that creates a substantial risk of death, or that causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ.

The use of deadly force is not justified if Defendant Ciritella, with the purpose of causing death or serious physical injury, provoked the use of force in the same encounter. Nor is deadly force justified when Defendant Ciritella knows that he can avoid the use of deadly force with complete safety by retreating.

Self-defense may not be used as a justification after Defendant Ciritella no longer is in danger of death or serious physical injury.

If you find that Defendant Ciritella was not acting in self-defense, or that his use of deadly force was not justified, you must find in favor of Plaintiffs. But if you find that Defendant Ciritella was acting in self-defense and was justified in using deadly force, you must find in favor of Defendant Ciritella.

**Source:**

**Delaware Jury Instruction 13.6**

**Delaware Wrongful Death / Defense Of Others With Deadly Force**

Plaintiffs allege Defendants wrongfully caused the death of Harry Smith, III.  Defendants Thomas Dempsey and Matthew Kurten allege they acted in defense of Defendant Ciritella. Dempsey and Kurten admit they intentionally used deadly force.

The use of deadly force by Defendant Thomas Dempsey upon or toward Harry Smith, III is justifiable if he believed he was protecting Defendant Ciritella from death or serious physical injury.

The use of deadly force by Defendant Matthew Kurten upon or toward Harry Smith, III is justifiable if he believed he was protecting Defendant Ciritella from death or serious physical injury.

The use of deadly force by Defendant Dempsey upon or toward Harry Smith, III is NOT justifiable if he knows Defendant Ciritella is not in danger.  Furthermore, if Defendant Dempsey knew using deadly force could be avoided if Defendant Ciritella retreated, then Defendant Dempsey was obliged or obligated to try and cause Defendant Ciritella to retreat before Defendant Dempsey used deadly force.

The use of deadly force by Defendant Kurten upon or toward Harry Smith, III is NOT justifiable if he knows Defendant Ciritella is not in danger.  Furthermore, if Defendant Kurten knew using deadly force could be avoided if Defendant Ciritella retreated, then Defendant Kurten is obliged or obligated to try and cause Defendant Ciritella to retreat before Defendant Kurten used deadly force.

**Source:**

**Delaware Statutes Title 11 § 465; Delaware Jury Instruction 13.6**

**42 U.S.C. Section 1983 Excessive Use of Force**

Plaintiffs are suing under 42 U.S.C. Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights by persons acting under color of state law.

Plaintiffs and Defendants agree Defendants were acting under the color of state law.

By a preponderance of the evidence, Plaintiffs must prove that Defendant John Ciritella deprived Harry Smith, III of his federal constitutional right.

By a preponderance of the evidence, Plaintiffs must prove that Defendant Thomas Dempsey deprived Harry Smith, III of his federal constitutional right.

By a preponderance of the evidence, Plaintiffs must prove that Defendant Matthew Kurten deprived Harry Smith, III of his federal constitutional right.

I will now tell you the elements Plaintiffs must prove to establish the violation of Harry Smith, III's federal constitutional right.

The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested or stopped by police.  In other words, a police officer may only use the amount of force necessary under the circumstances to make the arrest or to conduct the stop.  Every person has the constitutional right not to be subjected to excessive force while being arrested or stopped by police, even if the arrest or stop is otherwise proper.

In this case, Plaintiffs claim each Defendant used excessive force when he used deadly force against Harry Smith, III.  In order to establish each Defendant used excessive force, Plaintiffs must prove both of the following by a preponderance of the evidence:

First:  The Defendant intentionally committed certain acts.

Second: Those acts violated Harry Smith, III's Fourth Amendment right not to be subjected to excessive force.

"Deadly force" means force which the defendant uses with the purpose of causing or which the defendant knows creates a substantial risk of causing death or serious physical injury. Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force.

Defendant's use of deadly force was **NOT** excessive, if you find **ALL** of the following:

1) all other reasonable means of apprehension had been exhausted; **and**

2)  the defendant believed the arrest is for a felony involving physical injury or threat thereof, **and** he was not reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of the use of force; **and**

3) the defendant believed the force employed did not create a substantial risk of injury to innocent persons, **and** did not recklessly or negligently injure or create a risk of injury to innocent persons; **and**

4) the defendant believed deadly force was immediately necessary to prevent Harry Smith, III from committing a crime that would cause death or serious physical injury, or would never be captured if apprehension was delayed, **and** that the use of deadly force presented no substantial risk of injury to innocent persons.

If you do not find **ALL** of the above noted, then you must find for the Plaintiffs.


**Source:**

**U.S. Third Circuit Model 4.1, 4.3, 4.9 – and Delaware Title 11, Sections 467, 470, 471,**

_Comment_: Delaware Statutes -**Title 11** sets forth when a police officer may use deadly force.  It is more restrictive than the Fourth Amendment to the U.S. Constitution, providing broader protections to which Harry Smith, III was entitled.  Per Section **467**, a police officer may only use deadly force when "the force employed creates no substantial risk of injury to innocent persons." Per Section **470**, even when a police officer is justified in using force, the justification is unavailable when "the defendant recklessly or negligently injures or creates a risk of injury to innocent persons."  It is undisputed Ms. Garcia, an innocent person, was hit in the leg by one of the 31 bullets shot by Defendants.

**42 U.S.C. Section 1983 – State Created-Danger**

Plaintiffs claim Harry Smith, III was killed as a result of Defendants shooting him.  The United States Constitution prohibits police officers from engaging in conduct that renders an individual more vulnerable to harm.

In this case, Plaintiffs claim City of Wilmington police officers rendered Harry Smith, III more vulnerable to harm by failing to follow departmental policies.  This failure created and set into motion a chain of events leading to his death.

To establish this claim, Plaintiffs must prove all of the following four things by a preponderance of the evidence:

First: The harm to Harry, i.e., his death by police gunfire, was a foreseeable and fairly direct result of City of Wilmington police officers' conduct.

Second: City of Wilmington police officers acted with conscious disregard of a great risk of serious harm or deliberate indifference.

Third: There was a relationship between City of Wilmington police officers and Harry that distinguished Harry from the public at large.

Fourth:  City of Wilmington police officers' actions made Harry more vulnerable to being shot to death by Defendants Ciritella, Dempsey and Kurten, or police used their authority to create an opportunity that otherwise would not have existed for harm to occur.

The first of these four elements requires Plaintiffs to show Harry's death by police gunfire was a foreseeable and fairly direct result of City of Wilmington police officers' conduct.  This element includes two related concepts:  foreseeability and directness.

Foreseeability concerns whether City of Wilmington police officers should have foreseen Harry's death by Defendants' gunfire.

Directness concerns whether it is possible to draw a direct enough connection between City of Wilmington police officers' conduct and Harry's death by Defendants' gunfire.  To

consider the question of directness, you should look at the chain of events that led to Harry's death, and you should consider where City of Wilmington police officers' conduct fits within that chain of events, and whether that conduct can be said to be a fairly direct cause of Harry's death by Defendants' gunfire.

**Source:**

**U.S. Third Circuit Model 4.14**

**Delaware Abuse of Corpse**

Plaintiffs allege Defendant City of Wilmington abused the corpse of Harry Smith, III.  If you find, by a preponderance of the evidence, that Harry Smith, III's corpse was treated in a way that a reasonable person knows would outrage ordinary family sensibilities, then you should find for Plaintiffs.

**Delaware Wrongful Death: Compensatory Damages**

The law recognizes when a person dies as the result of another's wrongful conduct, there is injury not only to the deceased but also to immediate family members. While it is impossible to compensate the deceased for the loss of his life, it is possible to compensate certain family members for the losses they have suffered from the death of a loved one. For this reason, Delaware law provides when a person dies as a result of another's wrongful act, certain family members, such as the Parents in this case, may recover fair compensation for their losses resulting from the death of their son, Harry Smith, III.

In determining a fair compensation, you may consider the following:

(1) the loss of the expectation of monetary benefits that would have resulted from the continued life of Harry; that is, the expectation of inheritance that Harry's parents have lost;

(2) the loss of the portion of Harry's earnings and income that probably would have been used for the support of his parents;

(3) the loss of Harry's household services;

(4) the reasonable cost of funeral expenses, up to $7,000; and

(5) the mental anguish suffered by Harry's parents as a result of Harry's death.


The term "mental anguish" encompasses the grieving process associated with the loss of a loved one. You may consider that the grieving process, accompanied by its physical and emotional upheaval, will be experienced differently by different people, both in its intensity and in its duration. The ability to cope with the loss may be different for each person. There is no fixed standard or measurement. You must determine a fair and adequate award through the exercise of your judgment and experience after considering all the facts and circumstances presented to you during the trial.

While Plaintiffs carry the burden of proving their damages by a preponderance of the evidence, they are not required to claim and prove with mathematical precision exact sums of money representing their damages for mental anguish. It is required only that Plaintiffs furnish enough evidence so that you, the jury, can make a reasonable determination of those damages.

**Source:**

**Delaware Jury Instruction 22.8**

**Delaware Wrongful Death: Punitive Damages**

The Plaintiffs also claim the Defendants acted maliciously, wantonly or with reckless indifference when they killed Harry Smith, III, so as to entitle Plaintiffs to an award of punitive damages in addition to compensatory damages.

If you find for Plaintiffs, and if you further find that any of the Defendants did act maliciously, wantonly or with reckless indifference when he or they killed Harry Smith, III, the law allows you, in your discretion, to assess punitive damages against that Defendant or those Defendants as punishment and as a deterrent to others.

## Section 1983: Compensatory Damages

If you should find that any of the Defendants violated Harry Smith, III's constitutional rights, then you must then decide the issue of the Plaintiffs' damages.

In considering the issue of the Plaintiffs' damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the Plaintiffs' damages, no more and no less.

Compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.  On the other hand, compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury -- tangible and intangible.  Thus, no evidence of the value of such intangible things as physical or emotional pain and mental anguish has been or need be introduced.  In that respect it is not value you are trying to determine, but an amount that will fairly compensate Plaintiffs for those claims of damage.  There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

**Source:**

**U.S. Third Circuit Model 4.8.1**

**Section 1983: Punitive Damages**

The Plaintiffs also claim the Defendants acted maliciously, wantonly or with reckless indifference to Harry Smith, III's federally protected rights so as to entitle Plaintiffs to an award of punitive damages in addition to compensatory damages.

If you find for Plaintiffs, and if you further find that any of the Defendants did act maliciously, wantonly or with reckless indifference to Harry Smith, III's federally protected rights, the law allows you, in your discretion, to assess punitive damages against that Defendant or those Defendants as punishment and as a deterrent to others.

**Source:**

**U.S. Third Circuit Model 4.8.3**

**Abuse of Corpse: Damages**

Plaintiffs allege the corpse of Harry Smith, III was abused.  If you find, by a preponderance of the evidence, the corpse of Harry Smith, III was treated in a way that a reasonable person knows would outrage ordinary family sensibilities, then you should award Plaintiffs an amount that will fairly compensate them for the emotional and/or mental suffering and/or anguish they experienced.

The Plaintiffs also claim Defendant City of Wilmington acted maliciously, wantonly or with reckless indifference when it abused Harry Smith, III's corpse, so as to entitle Plaintiffs to an award of punitive damages in addition to compensatory damages.

If you find for Plaintiffs, and if you further find that Defendant City of Wilmington did act maliciously, wantonly or with reckless indifference when it abused Harry Smith, III's corpse, the law allows you, in your discretion, to assess punitive damages against that Defendant as punishment and as a deterrent to others.