IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARRY SMITH, JR. and ROSLYN WOODARD SMITH, Individually and as Administrators of THE ESTATE OF HARRY SMITH, III | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 04-1254-GMS |
| v. | ) ) | |
| CITY OF WILMINGTON, JOHN CIRITELLA, THOMAS DEMPSEY, and MATHEW KURTEN, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

Rosemaria Tassone
City of Wilmington Law Department
City/County Building, 9th Floor
800 N. French Street
Wilmington, Delaware 19801
302-576-2175

John A. Parkins, Jr. (#859)
Steven J. Fineman (#4025)
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
302-651-7700
parkins@rlf.com
fineman@rlf.com
Attorneys for Defendants

Dated: March 14, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT ................................................................................................... 1

INTRODUCTION ............................................................................................. 1

I.    THE UNREBUTTED EVIDENCE SHOWS THAT PLAINTIFFS CANNOT
      ESTABLISH THAT THE DEFENDANTS USED EXCESSIVE FORCE. ...................... 1

      A.    The Unrebutted Evidence Conclusively Shows It Was Reasonable To
            Use Deadly Force During Phase-2. ...................................................... 4

      B.    There Is No Evidence Showing That The Phase 3A Shots Were
            Unreasonable. ................................................................................ 6

      C.    There Is No Evidence That Smith Suffered Compensable Injuries During
            Phase 3B. ...................................................................................... 9

      D.    Plaintiffs' Arguments Are Unsupported By The Record And Wrong As
            A Matter Of Law. ............................................................................ 11

            1.    It Does Not Matter Whether Smith Possessed A Gun Because He
                  Was Using The Police Car As A Deadly Weapon. ........................... 11

            2.    The Alleged Violation Of WPD Policies And State Law Is Irrelevant
                  To The Constitutional Issue. ..................................................... 12

            3.    Plaintiffs' Assertion That The Jurors Could Disbelieve Defendants Is
                  Based Upon A False Premise And Is Also Insufficient As A Matter
                  Of Law. ................................................................................ 13

II.   PLAINTIFFS DO NOT POINT TO ANY EVIDENCE TO SUPPORT
      THEIR MONNELL CLAIMS. ............................................................................ 15

      A.    This Court Should Not Consider The Monnell Claims Because Plaintiffs
            Have Failed To Show An Underlying Constitutional Deprivation. ............. 16

      B.    There Is No Evidence To Support Plaintiffs' Failure To Train Claims. ........ 16

      C.    There Is No Evidence To Support Plaintiffs' Failure To Investigate And
            Discipline Claims. ........................................................................... 16

CONCLUSION ................................................................................................ 18

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................14

*Arnold v. IBM Corp.*,
637 F.2d 1350 (9th Cir. 1981) ...............................................................................10

*Berg v. County of Allegheny*,
219 F.3d 261 (3rd Cir. 2000) ..................................................................................15

*Berry v. City of Detroit*,
25 F.3d 1342 (6th Cir. 1994) .....................................................................................4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................13

*Favorito v. Pannell*,
27 F.3d 716 (1st Cir. 1994)......................................................................................14

*Graham v. Connor*,
490 U.S. 386 (1989)...............................................................................................5, 13

*Hygh v. Jacobs*,
961 F.2d 359 (2nd Cir. 1992)...................................................................................4

*McLenagan v. Karnes*,
27 F.3d 1002 (4th Cir. 1994), *cert. denied*, 513 U.S. 1018 (1994)....................5

*Metropolitan Pittsburgh Crusade for Voters v. City of Pittsburgh, Pa.*,
964 F.2d 244 (3d Cir. 1992)....................................................................................10

*Moor v. Licciardello*,
463 A.2d 268 (Del. 1983) ........................................................................................13

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985) ..................................................................................................17

*Pace v. Capobianco*,
283 F.3d 1275 (11th Cir. 2002) ..............................................................................11

*Perrien v. Towles*,
2006 U.S. Dist. LEXIS 35331 (ND Ohio May 30, 2006)...................................................................4

*Petrucelli v. Bohringer & Ratzinger*,
46 F.3d 1298 (3d Cir. 1995).............................................................................................................13

*Robinson v. Arrugueta*,
415 F.3d 1252 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 1063 (2006)............................................5

*Smith v. Cupp*,
430 F.3d 766 (6th Cir. 2005) .......................................................................................................2, 3

*Smith v. Freeland*,
954 F.2d 343 (6th Cir. 1992), *cert. denied*, 504 U.S. 915 (1992)..............................................2, 12

*Tennessee v. Garner*,
471 U.S. 1 (1985)..............................................................................................................................6

*Thompson v. City of Chicago*,
472 F.3d 444 (7th Cir. 2006) ......................................................................................................4, 12

*Thompson v. Hubbard*,
257 F.3d 896 (8th Cir. 2001) ..........................................................................................................14

*Troupe v. Sarasota County, Fla.*,
419 F.3d 1160 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 1914 (2006)............................................5

*Whren v. United States*,
517 U.S. 806 (1996)........................................................................................................................12

RLF1-3122015-1

**ARGUMENT**

**INTRODUCTION**

It is difficult to reply to plaintiffs' brief because plaintiffs have chosen to ask the Court and the defendants to do their work for them. For example:

- Plaintiffs state that the defendants' "summary of [*Scott v Edinburg*] is incorrect." (S. Ans. Br. 28). They do not say why.

- Plaintiffs argue that the defendants "violated numerous written Wilmington Police Department policies." (*Id* 30). They cite only one.

- Plaintiffs argue that there were police officers at the intersection of 6th and Harrison who ostensibly could have prevented Smith's escape. (*Id* ). They do not say who these officers were or tell the Court where in the record this information appears (it does not).

- Plaintiffs simply ignore substantial arguments made in Defendants' Opening Brief.

- Plaintiffs continue to fabricate "facts" that are unsupported by the record. For instance, they assert the defendants claimed they "knew" a shotgun was in the front seat of the stolen police car when, in fact, the defendants never made such a claim.

**I.    THE UNREBUTTED EVIDENCE SHOWS THAT PLAINTIFFS CANNOT ESTABLISH THAT THE DEFENDANTS USED EXCESSIVE FORCE.**

For ease of analysis the defendants divided the shots into Phases 1, 2, 3A and 3B. Phase 1 is the shot fired on Washington Street by a non-party police officer and does not form the basis of any claim in this lawsuit. Phase 2 are the shots fired at Smith while he was on Fifth Street; Phase 3A are those shots fired at him while he was on Harrison Street before the car stopped; and

1

Phase 3B are those shots allegedly fire at Smith after the car stopped and while he was allegedly slumped over the wheel, unconscious. In their opening brief in support of the instant motion, as well as their opening brief in support of their initial motion, defendants demonstrated that, even taking the facts in the light most favorable to plaintiffs, they are entitled to summary judgment. As they did in their first Answering Brief, plaintiffs have failed to even respond to some of the key arguments raised by defendants. For example, defendants discussed at some length that there is no evidence that the fatal shot by Ciritella was fired after the car stopped. They further showed that the forensic evidence shows that the car was still moving when that shot was fired. Despite the fact that this is central to plaintiffs' latest theory of their case, they have chosen to wholly ignore this argument in their Answering Brief.

Before turning to the individual phases, defendants remind the Court of *Smith v Freeland*, 954 F.2d 343 (6th Cir. 1992), *cert. denied*, 504 U.S. 915 (1992) the facts of which are virtually indistinguishable from those in the case at bar. Although defendants paid considerable attention to that case in their opening brief[1], plaintiffs made no effort to distinguish it from the facts now before the Court. This opinion is critical to the present matter, and it is fair to assume that if plaintiffs had any way to draw a meaningful distinction between their case and *Freeland*, they would have done so. The absence of any such effort can only mean that defendants are unable find any distinction.

Defendants rely upon *Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005) (S. Ans. Br. 28).[2] But *Cupp* is easily distinguishable from the present matter. In that case, the evidence in the light

---

[1] Plaintiffs acknowledge that "Defendants extensively cite *Smith v. Freeland*." (S. Ans. Br. 28).

[2] The briefs in connection with the Supplemental Motion for Summary Judgment are denoted with the prefix "S." Thus "S. Ans. Br." refers to plaintiffs' answering brief in opposition to defendants' supplemental motion for summary judgment.

2

most favorable to the plaintiff showed that suspect, who was arrested for making threatening phone calls, was cooperative with the police. The evidence was that after suspect was placed in the police car he gained access to the driver's seat and attempted to drive away, never placing the officer or anyone else in danger. Key to the court of appeals' analysis -- which that court labeled a close case[3] -- was that there was evidence that the officer was never in danger, a fact which was repeated several times by the court:

- "If the facts are taken in the light most favorable to the plaintiffs, no person at the scene was ever in danger." (*Cupp*, 430 F.3d at 774).

- "The evidence would support a jury finding that [the defendant officer] was never in the line of flight." (*Id.*).

- "this is not a case where a dangerous situation evolved quickly to a safe one before the police officer had a chance to realize the change." (*Id.* at 774-5).

- "this is a case where a the jury could conclude that [the defendant officer] was not in any danger in the first place." (*Id.* at 775).

- "Though Smith could have used the police cruiser to injure or kill [the defendant officer], under the plaintiffs' version of the facts he was not doing so when [the defendant officer] shot him or even before [the defendant] shot him." (*Id.*).

- "In this case, the plaintiff's facts show there was no danger." (*Id.* at 776).

- The suspect "never displayed any violent tendencies." (*Id.*).

- "a suspect fleeing in a car that has never posed a danger." (*Id.* at 777).

In sharp contrast, the *uncontested* evidence here shows that Smith posed a danger to the citizens on 7th Street (where Smith drove the wrong way) and more so to Ciritella when he

---

[3] *Cupp*, 430 F.3d at 773.

accelerated the car and drove straight at him. Thus *Cupp* is inapplicable to the case at bar. *Perrien v. Towles*, 2006 U.S. Dist. LEXIS 35331 (N.D. Ohio May 30, 2006) (distinguishing *Cupp* on the same basis).

A.    **The Unrebutted Evidence Conclusively Shows It Was Reasonable To Use Deadly Force During Phase-2.**

Plaintiffs have failed to point to any evidence to rebut the following:

- Despite, as plaintiffs claim, the streets were filled with people sitting outside, plaintiffs have failed to produce a single witness to contradict the eyewitness testimony that Smith appeared to be stopping on 5th Street. As this occurred, Detective Ciritella came out from cover behind a building and shouted to Smith to get out of the car.

- All of the eyewitnesses' testimony is that Smith then accelerated the stolen police car and drove directly at Detective Ciritella.

- The unrebutted expert forensic testimony supports the conclusion that Smith drove in the direction of Ciritella and narrowly missed hitting him.

- Although plaintiffs' expert offers the legal conclusion (which is inadmissible)[4] that it was unreasonable for Detective Ciritella to use deadly force, plaintiffs' expert concedes that it was reasonable for Ciritella to fear he was in danger as Smith was driving toward him. (SC 7 at 181).

---

[4] *E.g., Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006) (expert testimony on whether officer used excessive force excluded because the "jury, after having heard all of the evidence presented, was in as good a position as the experts to judge whether the force used by the officers ... was objectively reasonable ...."); *Hygh v. Jacobs*, 961 F.2d 359 (2nd Cir. 1992) (expert testimony that officers use of deadly force was excessive excluded because it was a legal conclusions); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (same).

4

- Plaintiffs concede in their brief in opposition to the initial motion for summary judgment that "[a]t this moment the window of opportunity to use deadly force opens because a car is headed in their direction and they do not know the intentions of the driver." (Pl. Ans. Br. 12; D.I. 116).

- Plaintiffs can point to no evidence to support their contention that Smith had already passed Ciritella when Ciritella began to shoot at Smith. To the contrary, they concede that the first shots entered the front windshield of the car, which necessarily means, of course, that the police car had not already passed the detective.

Plaintiffs suggest that Detective Ciritella's shots were excessive because he was able to avoid death or serious injury by jumping back and narrowly escaping the accelerating car. But Detective Ciritella's quick decision to fire his weapon in an effort to save his life is precisely the sort of split second decision that should not be subject to later second-guessing. *Graham v. Connor*, 490 U.S. 386, 396-7 (1989)(reasonableness of particular use of force must be judged from perspective of the officer on the scene and must take into account "that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving."). Courts faced with similar situations find that the use of deadly force is reasonable. *See, e.g., Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1168 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 1914 (2006) (permissible to use deadly force 2 to 5 seconds after immediate danger passed even if, in hindsight, the facts show that the S.W.A.T team could have escaped unharmed); *Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 1063 (2006) (shooting within a reaction time of less than three seconds was reasonable, even if in hindsight the facts show that the officer could have escaped unharmed);

5

*McLenagan v. Karnes*, 27 F.3d 1002, 1007-8 (4th Cir. 1994), *cert. denied*, 513 U.S. 1018 (1994) (use of deadly force against unarmed individual based upon fellow officer's assertion he had seen a gun in suspect's hands upheld by court in large part because the officer "had no time to consider anything at all.").

**B.    There Is No Evidence Showing That The Phase 3A Shots Were Unreasonable.**

The constitutional principle here is straightforward:  "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  Here, there is no question that it was reasonable for the defendants to believe that Smith was trying to escape after attempting to rundown Ciritella. Even plaintiffs' expert concedes that the officers were justified in believing Smith was trying to escape:

> Q.    And we have already discussed the fact that it's reasonable for the police officers to have believed at that time that he was attempting to evade police when he drove around the barricade?
>
> A.    Yes.
>
> Q.    And so, therefore, it would be reasonable for the police officers to conclude that he was attempting to escape?
>
> A.    Yes. Yes.

(SC 5-6 at 145-6).  Thus, the sole issue is whether it was reasonable for the defendants to believe that Smith posed a threat to the citizens of Wilmington should he make good on his escape.

The undisputed facts show that the officers reasonably believed that Smith posed a threat to the safety of others:

6

- They believed from the radio broadcasts that Smith had just been involved in an incident in which shots had been fired.

- They believed that Smith had attempted to evade police by driving the wrong way on a narrow one-way street (7th Street) and thus -- as plaintiffs' expert concedes -- put citizens at risk. (SC 2 at 109).

- Plaintiffs' expert conceded that Smith "appeared to have been trying to evade police by his actions up until the barricade. He continued to be appearing to try to avoid them ...." (SC 4 at 128).

- They believed that Smith attempted to run down Detective Ciritella at 5th and Harrison by accelerating the police car and driving straight at him.

- They saw Smith drive on the sidewalk and smash into a parked Jeep to evade the police.

- After Smith crashed into the Jeep, he accelerated and spun the parked vehicle nearly 180 degrees. Then defendants saw Smith "continue[] to drive the car up ... Harrison St." (Second Amended Complaint ¶ 23).

In sum, the undisputed evidence shows the officers reasonably believed that Smith had already put the citizens of Wilmington at risk when he drove the wrong way on 7th Street; had put the life of an police officer in jeopardy when he accelerated the car, turned and drove straight at him; and had smashed into a parked jeep in an effort to evade the police. Without doubt, under these circumstances the officers cannot be faulted for making the split second decision that Smith posed a threat to the citizens of Wilmington if he escaped.

Plaintiffs seek to avoid this conclusion by making up the theory that there were officers at the corner of 6th and Harrison Streets who ostensibly could have apprehended Smith. (S. Ans.

Br. 30). There is no evidentiary support for the notion that there were officers at 6th and Harrison Streets who could have apprehended Smith. Plaintiffs do not cite to the record or identify the officers ostensibly able to apprehend Smith in their argument, so defendants assume they probably rely upon portions of paragraph 9 in their Statement of Facts. (S. Ans. Br. 6). In that paragraph they recite the names of officers and purport to state where some of them were located. It is important to note that plaintiffs did not depose a single one of these officers; consequently, defendants assume that plaintiffs are simply relying upon the reports written by the officers. Those reports, however, indicate that none of the officers was in a position to apprehend Smith at the intersection of 6th and Harrison because they arrived at the scene after Smith was shot. Judging from that paragraph in the Statement of Facts, plaintiffs apparently contend that Officers Fiorvanti, Villaverde and W. Brown (erroneously referred to in plaintiffs' brief as "H. Brown") were at 6th and Harrison.[5] But the reports written by these officers do not indicate they were there at a time when they could have apprehended Smith as he made his escape:

- Officer Fiorvanti is described as being "north of the scene." His report indicates he did not arrive at the scene until the stolen police car had already stopped: "Upon arrival, this writer exited my police vehicle north of the crime scene, where I observed a black and white marked police vehicle ... stopped in the middle of the block." (SC 9).

- In their Statement of Facts plaintiffs state Officer Villaverde "was at 6th and Harrison." This is misleading. In his report the officer stated that he reported to

---

[5] Defendants assume plaintiffs are contending that officers listed as being at "6th and Harrison" or "north of the scene" in the Statement of Facts are the officers to whom they are referring. As noted in the text, plaintiffs do not provide this information in their brief.

8

the "area of the 500 block of N. Harrison" to assist in keeping a large crowd away from the crime scene. Later he assisted in collecting shell casings. Then, and only then, was he "assigned to a fixed traffic post at the intersection of W. 6th and N. Harrison." (SC 11).

- Plaintiffs describe Officer W. Brown as being "in 600 block of Harrison and says saw stolen car slowly roll to a stop." There is no indication that this officer saw anything before the car rolled to a stop, and thus does not show that he would have been able to apprehend Smith if he the defendants had simply let him drive away. (SC 10).

Plaintiffs' argument also ignores the testimony of all three of the defendants that they never saw any officers up Harrison Street even though two of them (Dempsey and Kurten) were behind the stolen police car and firing in that direction. Likewise, there is no indication from the reports of officers Fiorvanti, Villaverde and Brown that any of them were in a position where they could have been seen by the defendants. The uncontradicted record, therefore, shows that it was reasonable for the defendants to believe that Smith was in the open field and capable of making good his escape.

## C.    There Is No Evidence That Smith Suffered Compensable Injuries During Phase 3B.

Phase 3B are those shots allegedly fired from behind the stolen police car after the car had stopped and Smith was allegedly seen slumping over the wheel, apparently unconscious. The only person claiming to have seen any Phase 3B shots is David Gwyn. But even accepting his testimony as true, defendants are still entitled to summary judgment. It is important to again note that plaintiffs never responded to this argument.

In their opening brief, defendants pointed out that there is no evidence that the fatal shot was fired in Phase 3B because David Gwyn -- the only person who claims to have seen anyone shooting at Smith after the car stopped and Smith was slumped over the wheel -- never saw Detective Ciritella. Plaintiffs do not contest in their brief that the fatal shot was fired by Detective Ciritella[6] nor do they dispute that there is no evidence Gwyn ever saw him. Likewise, plaintiffs do not dispute that the sole forensic expert will testify that the physical evidence shows that the car was still moving when Ciritella fired the fatal shot. The record is thus devoid of any evidence supporting the notion that Ciritella fired the fatal shot after the car stopped and after Smith was allegedly slumped over the wheel, unconscious.

Defendants also pointed out in their brief that Smith (or his representatives) can receive compensation only for the conscious pain and suffering incurred by Smith. In their brief defendants pointed out that plaintiffs allege Smith was "apparently unconscious" when struck by any bullets fired during Phase 3B. As a consequence, there is no evidence that he endured

---

[6] Plaintiffs do not address this point in the Argument section of their brief. In their Statement of Facts they state that the Medical Examiner testified that "all shots fired contributed to Smith's death." (S. Ans. Br. 16) This falls far short of a showing that the other shots were the proximate cause of Smith's death. The cases which have considered the issue have required the plaintiff to prove both that (1) but for the alleged conduct, the injury would not have occurred and (2) the alleged conduct was the proximate cause of the injury. *Arnold v. IBM Corp.*, 637 F.2d 1350, 1354 (9th Cir. 1981). But as a matter of law, the fact that conduct "contributed" to the death does not by itself satisfy the "but for" test. *Metropolitan Pittsburgh Crusade for Voters v. City of Pittsburgh, Pa.*, 964 F.2d 244, 251 (3d Cir. 1992) ("A requirement that the lawsuit be a 'but for' cause or 'the proximate cause' of the benefit achieved is significantly more stringent than the 'material contributing factor' test ...."). The absence of any evidence that "but for" the other wounds Smith would have lived is not merely a matter of semantics. The Medical Examiner listed Smith's cause of death as a "gunshot wound to the head;" no mention is made of the arm and back wounds in her report as the cause of Smith's death. Likewise, there is no explanation in either the Medical Examiner's report or her deposition as to how the remaining wounds would have caused Mr. Smith's death. She was unable to say whether any of those bullets struck a major blood vessel because she did not dissect any of the wounds. (SC 15, SC 18, SC 22). And none of these remaining bullets struck a major organ. (SC 15, SC 18, SC 21-2) (Autopsy Report at 5; "The body cavities are free of blood .... There is no injury to the pleural cavity or abdominal cavity.").

10

conscious pain and suffering from the 3B shots. Plaintiffs do not respond to this argument in their brief.

### D. Plaintiffs' Arguments Are Unsupported By The Record And Wrong As A Matter Of Law.

Plaintiffs make a series of arguments which are not supported by a single citation to legal authority or a single citation to the record. They claim that (1) there is evidence that the defendants knew that Mr. Smith was unarmed (S. Ans. Br. 30); (2) that the defendants violated WPD policies (*Id* at 30-31); (3) that the defendants violated state law (*Id.*); and (4) that the jurors could disbelieve defendants. These theories are unsupported by the record and legally flawed.

#### 1. It Does Not Matter Whether Smith Possessed A Gun Because He Was Using The Police Car As A Deadly Weapon.

Plaintiffs claim that the defendant officers could see that Smith was not armed. Not only does this misstate the record, but it also misses the point -- the car was a deadly weapon.

Even if plaintiffs' factual assertion -- that the defendants could see that Smith had no weapon -- were true, it misses the point. The question whether Smith possessed a firearm or knife is irrelevant to the inquiry here, because the stolen police car itself constituted a deadly weapon. *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002) (shooting victim used car so as to give reasonable police officer probable cause to believe it had become a deadly weapon).

Moreover, the idea that the defendants could see that Smith had no weapon is unsupported by the record. Plaintiffs point to no evidence that the defendant officers could see that Smith was unarmed. To the contrary, one of plaintiffs' experts testified that the officers behind the car (Kurten and Dempsey) would not be able to see Smith because of the partition between the front and rear seat. According to plaintiffs' expert:

11

[W]hen you're behind the car, outside, you can't see. You can barely see through a police car. You can hardly see the driver because that's where usually there's a metal or some type of reinforcement.

(SC 25).

### 2. The Alleged Violation Of WPD Policies And State Law Is Irrelevant To The Constitutional Issue.

Plaintiffs contend that the alleged violation of state law and police regulations establish a deprivation of Mr. Smith's Fourth Amendment rights. This is wrong as a matter of law and is also logically flawed.

It is well established that the alleged violation of state law or police regulations is not relevant to the determination whether a police officer used excessive force in violation of the Fourth amendment. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (holding in excessive force case that "violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution was been established."). This rule makes sense, because state laws and police regulations vary with the locale, and thus cannot be a basis for measuring the uniformly applied Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 815-6 (1996) (because police procedures vary from place to place, they are not a reliable gauge in determining whether an officer's conduct was reasonable under the Fourth Amendment); *Smith v. Freeland*, 954 F.2d 343, 348 (6th Cir. 1992) (rejecting use of police procedures and writing "[t]o hold that cities with strict policies commit more constitutional violations than those with lax policies would be an unwarranted extension of the law, as well as a violation of common sense."). Consequently even if the alleged violations were true (which they are not), they would not establish a constitutional violation.

Plaintiffs' assertion that a "reasonable jury could conclude the defendant police officers were not objectively reasonable in their actions because they violated Delaware state law" also

12

ignores a fundamental difference between Delaware and federal law. (S. Ans. Br. 31). In Delaware, claims of self defense are not analyzed under a reasonable man theory but rather are analyzed "from the standpoint of [defendant's] subjective belief." *Moor v. Licciardello*, 463 A.2d 268, 270-1 (Del. 1983).[7] But the subjective intent of the defendant does not enter into the Fourth Amendment calculus. *Graham v. Connor,* 490 U.S. 386, 399 (1989) ("The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts ... have no proper place in that inquiry.").

### 3. Plaintiffs' Assertion That The Jurors Could Disbelieve Defendants Is Based Upon A False Premise And Is Also Insufficient As A Matter Of Law.

Plaintiffs contend that summary judgment should be denied because the jury may not believe the defendants. They assert that the defendants testified they "knew" Smith had access to a shotgun when in fact he did not. They theorize that the jury may choose to disbelieve the rest of defendants' testimony. This argument fails for at least two reasons. First, the premise of the argument -- that the defendants testified they "knew" Smith had the shotgun -- is false. Second, plaintiffs' argument misapprehends their burden on summary judgment.

Contrary to the plaintiffs' arguments, the defendant officers never testified they "knew" Smith had the shotgun with him in the front of the car. Rather, they testified that they assumed it was likely he did because it was then the common practice for officers at that time to do so. Hence, the underlying premise of plaintiffs' argument is untrue.

More importantly, plaintiffs misunderstand the burden they bear. They are obligated to come forward with affirmative evidence that the defendants' use of force was constitutionally excessive. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Petrucelli v. Bohringer &*

---

[7] Defendants recognize that *Moor* applied 11 *Del. C.* § 464, whereas section 467 is at issue here. However there is no material difference between the statutes in that both turn on whether "the defendant believes ...."

13

*Ratzinger*, 46 F.3d 1298, 1308 (3d Cir. 1995). The fact that the jury might somehow choose to disbelieve the defendants does not satisfy that obligation. In *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242 (1986) the Court wrote:

> Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Based on the Rule, *Cities Service, 391 U.S., at 290*, held that the plaintiff could not defeat the properly supported summary judgment motion of a defendant charged with a conspiracy without offering any significant probative evidence tending to support the complaint. As we have recently said, discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion.

(477 U.S. at 256) (internal quotation marks omitted); *accord Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) (plaintiffs in an excessive force case "may not stave off summary judgment armed with only the hope that the jury might disbelieve witnesses' testimony.") (internal quotation marks omitted); *Favorito v. Pannell*, 27 F.3d 716, 721 (1st Cir. 1994) ("It is well established that a mere challenge to the credibility of a movant's witnesses without any supporting evidence does not raise a trialworthy issue of fact.") (internal quotation marks omitted).

## II.    PLAINTIFFS DO NOT POINT TO ANY EVIDENCE TO SUPPORT THEIR *MONNELL* CLAIMS.

When plaintiffs filed their motion for leave to amend to assert their *Monnell* claims they represented to the Court that this amendment was needed "to conform to the evidence obtained during discovery," thus implicitly telling the Court that there was in fact evidence to support a *Monnell* claim. Plaintiffs' motion required a response from defendants, followed by an opinion and order from the Court. Defendants were, of course, obligated to research and brief the issue, and now scarce judicial resources are being taxed by having to consider whether there is evidence to support the *Monnell* claims. After prompting this effort by both defendants and the Court, plaintiffs devote less than a page and a half to their *Monnell* claims in their Answering Brief (S. Ans. Br. 32-3). They fail to cite a single case[8] and make no references to the record whatsoever, except for a meaningless reference to a Wilmington Police policy and one line of deposition testimony both referring to barricades. (There are no *Monnell* claims alleged in the Second Amended Complaint which relate to barricades.)

Plaintiffs' willingness to waste the Court's time and unnecessarily drive up expenses is well illustrated by their failure-to-train claim. They allege in their Second Amended Complaint that the Wilmington Police Department "continue[s] to teach City of Wilmington Police officers that it is acceptable to shoot at a moving vehicle ...." (Second Amended Complaint, ¶ 74(e)). In their opening brief, defendants pointed out that this is inconsistent with plaintiffs' earlier representation to the Court that "WPD trained these defendants not to shoot at moving vehicles."

---

[8] In an earlier section of their brief plaintiffs cite *Monnell* for the point that a "municipality is liable for acts pursuant to an unconstitutional policy, custom or practice." (S. Ans. Br. 29). They also cite *Berg v. County of Allegheny*, 219 F.3d 261 (3rd Cir. 2000) for the point that the court held that a municipality is liable when a plaintiff shows his injury was caused by "municipal action was taken with deliberate indifference as to its known or obvious consequences." *Id.* at 276. Both propositions are, of course, unremarkable. No effort is made to relate these holdings, or the holdings of any other cases for that matter, to the instant record.

15

(S. Op. Br. 14). Nowhere in their Answering Brief did plaintiffs attempt to explain this discrepancy to the Court. In fact they make no effort (or even mention) at all in their brief to justify their failure-to-train claim. Indeed, they once again contradict their claim, telling the Court:

> WPD *trained these defendants not to shoot at moving vehicles*, not to shoot if a citizen likely will be hit, not to use their vehicles as barricades, and to discontinue a vehicle pursuit if it appears likely a citizen will be injured.

(S. Ans. Br. 18)(emphasis added).

It is manifest that the plaintiffs' representation to this Court that the amendment was to "conform to the evidence obtained during discovery" simply cannot be true. In any event, none of the plaintiffs' arguments come even remotely close to the showing necessary to successfully resist defendants' supplemental motion for summary judgment.

A.    **This Court Should Not Consider The *Monnell* Claims Because Plaintiffs Have Failed To Show An Underlying Constitutional Deprivation.**

In their opening brief in support of their Supplemental Motion for Summary Judgment, defendants pointed out that this Court should not address plaintiffs' *Monnell* claims if plaintiffs fail to make out an underlying constitutional claim. (S. Op. Br. 26-7). Plaintiffs do not address this point.

B.    **There Is No Evidence To Support Plaintiffs' Failure To Train Claims.**

In their opening brief defendants demonstrated why plaintiffs' failure to train claims should be dismissed. (S. Op. Br. 28-30). Plaintiffs do not address this point.

C.    **There Is No Evidence To Support Plaintiffs' Failure To Investigate And Discipline Claims.**

In their opening brief defendants showed that the record was devoid of any evidence of previous failures to investigate and discipline and was likewise devoid of any evidence that the

16

alleged failures proximately caused harm to Smith. (S. Op. Br. 30-32). As defendants anticipated, plaintiffs were unable to cite even a single instance of a prior failure to investigate by the Wilmington Police. At most they content themselves with superficial, and erroneous, criticism of the investigation in this case.[9] But as stated in defendants' opening brief, even assuming this investigation was somehow flawed, a single failure to investigate does not establish the requisite deliberate indifference. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-4 (1985) (cited at S. Op. Br. 30). Plaintiffs do not address this point.

Defendants also pointed out in their opening brief that there is no evidence in the record showing that the alleged failure to investigate and discipline proximately caused injury to Smith. Yet again, plaintiffs do not address this point. Rather they leave it to the imagination of the Court to divine some manner in which the after-the-fact failure to investigate and discipline proximately caused injury to the already deceased Mr. Smith.

---

[9] Plaintiffs argue that the videotaped interviews of the defendant officers took "about 10 minutes ... each." (S. An. Br. 32). Assuming this to be true, plaintiffs still fail to mention what information investigators should have obtained from the officers but did not. They also state that investigators "did not even determine which of the defendant police officers shot Marilyn Garcia." (*Id.*). They offer no evidence that it was even possible to make such a determination.

In criticizing the investigation plaintiffs make no mention that Wilmington police interviewed or obtained statements from dozens of witnesses, reviewed and obtained videotapes from security cameras, obtained and preserved evidence, exhaustively photographed the scene, and submitted evidence to ATF for analysis.

17

## CONCLUSION

For the foregoing reasons and for the reasons stated in connection with Defendants'
[First] Motion for Summary Judgment, summary judgment should be entered dismissing all
claims against the defendants.

OF COUNSEL:

Rosemaria Tassone
City of Wilmington Law Department
City/County Building, 9th Floor
800 N. French Street
Wilmington, Delaware  19801
302-576-2175

Dated:  March 14, 2007

John A. Parkins, Jr. (#859)
Steven J. Fineman (#4025)
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware  19899
302-651-7700
parkins@rlf.com
fineman@rlf.com
Attorneys for Defendants

18

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2007, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

> Kester I.H. Crosse, Esquire
> Williams & Crosse
> 1214 King Street
> Suite 300
> Wilmington, DE  19801

I hereby certify that on March 14, 2007, I have sent by U.S. Regular Mail, the foregoing

document to the following non-registered participants:

> Anne T. Sulton, Esquire
> Post Office Box 2763
> Olympia, WA 98507

> John A. Parkins, Jr. (#859)
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700
> parkins@rlf.com