IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY SMITH, JR. and ROSLYN WOODARD SMITH, Individually and as Administrators of THE ESTATE OF HARRY SMITH, III<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF WILMINGTON, JOHN CIRITELLA, THOMAS DEMPSEY, and MATHEW KURTEN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No.  04-1254-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>FINAL PRETRIAL ORDER</u>**

This matter having come before the court at a pretrial conference held pursuant to Fed. R. Civ. P. ("Rule") 16, and attorneys Kester I.H. Crosse, 1214 King Street, Wilmington, DE 19801, telephone (302) 658-3488, and Anne T. Sulton, Post Office Box 2763, Olympia, WA 98507, telephone (609) 468-6029, having appeared as counsel for plaintiffs and John A. Parkins, Jr., and Tyler O'Connell, both of  920 North King Street, Wilmington, DE 19801, telephone (302) 651-7624, having appeared as counsel for defendants, the following actions were taken:

1. This is an action for wrongful death and the jurisdiction of the court is involved under 42 U.S.C. § 1983.  Jurisdiction is not disputed.

2. The following stipulations and statements were submitted and are attached to and made a part of this Order.

> (a) comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case (and which, in a jury trial, may be read to the jury by the court or any party);

1

1. **On September 13, 2003, Harry Smith, III was shot to death by one or more Wilmington police officers.**

2. **Harry Smith, III is survived by his parents and twin brother. His parents are the administrators of his Estate.**

3. The plaintiff, Harry Smith, Jr., is the father of Harry Smith, III.

4. The plaintiff, Roslyn Woodard Smith, is the mother of Harry Smith, III.

5. The defendant, City of Wilmington, is the employer of the defendant police officers, John Ciritella, Thomas Dempsey, and Matthew Kurten.

6. Around 6:00 PM, on September 13, 2003, Harry Smith, III went to a local hospital, complaining of mental health related ailments. He was accompanied by his father.

7. Before receiving treatment, Harry ran out of the hospital.

8. Harry Smith, III ran southbound on Washington Street to the vicinity of 13th and Washington where he attracted the attention of Wilmington police officers, Johnny Whitehead and Johnny Saunders who were on routine patrol in marked Wilmington police car 1180 on Washington Street. Officer Whitehead drove the car toward Harry Smith, III, and both officers got out of the car. Officer Whitehead left the driver's side door open, the engine running and the emergency flashing lights on as he got out of the patrol car.

9. The officers retreated as Harry Smith, III approached them, at which time Harry Smith, III jumped into the patrol car.

10. Officer Whitehead shot Harry Smith, III one time in the right leg with his departmental issued Smith & Wesson .40 caliber handgun.

11. **Harry Smith, III drove away in patrol car 1180. Wilmington police pursued him. The route of the pursuit was broadcast by the Wilmington police dispatcher, who obtained information about the route from officers pursuing Harry Smith, III.**

12. **Wilmington Police Detective John Ciritella stopped his car on North Harrison Street where it intersects 5th Street so as to partially block 5th Street. Wilmington Police Officer Matthew Kurten pulled his marked police car behind Detective Ciritella's so as to further block 5th Street. At that time, Harry Smith, III drove patrol car 1180 west on 5th Street toward the intersection with North Harrison Street. It was about 7 p.m. and there was still daylight.**

13. **The defendant police officers began shooting at Harry Smith, III in the vicinity of 5th and Harrison Streets. The circumstances surrounding the shooting are in dispute.**

14. **The medical examiner's report indicates six bullets struck Harry Smith, III out of 31 bullets fired by the defendants at 5th and Harrison Streets. Harry Smith, III was pronounced dead at the scene by Emergency Medical Technicians, who arrived at the scene shortly thereafter.**

15. **An autopsy was performed on Harry Smith, III. Bullets found in his body, along with shell casings found at the scene, and the defendant police officers' handguns, were submitted to the United States Bureau of Alcohol, Tobacco and Firearms for analysis.**

16. **The Bureau of Alcohol Tobacco and Firearms reported that a bullet retrieved from Mr. Smith's brain was fired from the handgun assigned to Detective Ciritella.**

==

(b) an agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested issues of fact or law not agreed to;

**BY PLAINTIFFS:**

1. **Excessive force was used against Harry Smith, III by the three defendant police officers, causing him to suffer emotional and physical pain and death.**

2. **The City of Wilmington is responsible for Plaintiffs' damages because it has a policy, custom or usage of creating an environment wherein police officers use excessive force because it does not properly investigate complaints of excessive force or discipline police officers using excessive force.**

3. **Harry Smith, III's corpse was abused.**

**BY DEFENDANTS:**

**The disputed facts Defendants intend to prove are set forth in their pretrial brief/memorandum.**

==

(c) Except for rebuttal exhibits, schedules in the form set out in the attached Schedule (c) of;

    (1) all exhibits (all exhibits shall be marked for identification before trial), including documents, summaries, charts and other items expected to be offered in evidence; and

    (2) any demonstrative evidence and experiments to be offered during trial;

**BY PLAINTIFFS:**

 **Please see Appendix A-1 attached hereto.**

 **Plaintiffs will ask the Court to allow the jury to be transported by the marshals to actually view the scene of the incident, at 5th and Harrison Streets, and the police car driven by Harry Smith, III. Defendants object to this request. They contend there are dozens of photographs depicting the car and scene, and plaintiffs have made no showing why the Court should go to the time and expense in this five day trial of conducting such a view.**

**BY DEFENDANTS:**

 **Please see Appendix A-2 attached hereto.**

==

 (d) a list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list;

**PLAINTIFFS' WITNESS LIST:**

 **Please see Appendix B-1 attached hereto.**

**DEFENDANTS' WITNESS LIST:**

 **Please see Appendix B-2 attached hereto.**

**PLAINTIFFS' OBJECTION TO DEFENDANTS' WITNESS LIST:**

**Plaintiffs object to Defendants calling Louise Traux (a nurse at Wilmington Hospital), William Stevenson (a man allegedly claiming the decedent attempted to steal his car), Charles Romano (a man allegedly claiming he saw the decedent attempt to steal Mr. Stevenson' car), and Kim Jenkins (the secretary to attorney Kester Crosse). Their testimony is not relevant to a determination of the issues presented for trial. The defendant police officers claim they were not aware Harry Smith, III had gone to the hospital or that an alleged attempted car-jacking had occurred. Ms. Jenkins notarized the signature of David Gwyn on his affidavit – she has no other connection to this case.**

**DEFENDANTS' OBJECTION TO PLAINTIFFS' WITNESS LIST:**

**Defendants object to plaintiffs' witness list for the following reasons:**

**1.    Plaintiffs have identified nearly 80 fact witnesses. Ironically they have taken only four depositions in this trial, thus raising the specter of discovery while the witness is on the stand. More importantly, because this is a five day trial, it will be impossible for plaintiffs to call nothing more than a small fraction of the witnesses listed during the time allotted them. This list therefore provides no hint to defendants of the witnesses to be called and is therefore tantamount to no witness list at all.**

**2.    Plaintiffs have not timely identified some of the "Neighborhood Residents/Visitors" as persons having knowledge of the facts. They specifically identified only four individuals (consisting solely of the two individuals the defendants had already deposed) as having knowledge of the facts in their initial disclosures despite having already interviewed neighborhood residents. Plaintiffs did not supplement their Rule 26(c)**

6

disclosures until after the close of fact discovery. On August 30, September 5 and September 12, 2006 they served defendants with supplemental responses. Defendants were aware of some of these individuals from interviews conducted by the police and do not claim prejudice by reason of plaintiffs' late disclosure with respect to them. However, certain of the names are new to defendants and should be excluded. These include:

        Carlos Maldonado, Sr.

        Elizabeth Maldonado

        Carmen Garcia

        Dionne Lawds

        Rev. Moyer

        Charles Brittingham

Mr. Brittingham was deposed early in the case because of public statements he made concerning an investigation of this incident he allegedly conducted. Among other things, the deposition revealed he had no personal knowledge of these events. Now, for the first time, plaintiffs have disclosed that he has personal knowledge of the impact of these events upon the family. (There were no questions asked of Mr. Brittingham about this in his deposition since defendants had not been advised he had knowledge of this). Since plaintiffs' obviously knew this years ago and failed to disclose this to defendants they should be barred from calling him as a witness with respect to these matters.

    3.    Plaintiffs have identified 25 witnesses under the category "Neighborhood Residents/Visitors." Yet only one of them -- David Gwyn -- has been identified as having seen the wrongful conduct alleged in the complaint. The remaining witnesses in this

7

category, therefore, are not competent to give relevant testimony. If per chance they could offer marginally relevant testimony, the probate value of that testimony is far out weighed by confusion of the issues and considerations of undue delay, waste of time or needless presentation of cumulative evidence." F.R.E. 403.

4. Plaintiffs have identified 44 Wilmington Police Officers as witnesses. Few of them witnessed any of the events leading to the death of Mr. Smith. Indeed, some of them were not even on duty on the night of September 13. Defendants have produced all written statements and interviews of Wilmington police officers, so plaintiffs know which police officers witnessed a relevant event. The objections to the "Neighborhood Resident" list apply here also. Further, the Wilmington Police cannot reasonably be expected to function if 44 of its officers are under subpoena during plaintiffs' portion of the trial.

5. As an example of plaintiffs' tactics, they have included Michael Szcerba, the Wilmington Chief of Police on their witness list. There is no evidence showing that he has any personal knowledge of the events of September 13, 2003 on the events alleged in the Amended Complaint.

==

(e)     Stipulations or statements setting forth the qualifications of each expert witnesses in such form that the statement can be read to the jury at the time the expert witness takes the stand;

**BY PLAINTIFFS:**

Plaintiffs intend to call four expert witnesses. Three are retained by Plaintiffs.

1. **Dr. Jennie Vershvovsky, M.D.**
   **Assistant Medical Examiner**
   **Delaware Health and Social Services**
   **200 South Adams Street**
   **Wilmington, DE 19801**

   Dr. Vershyoysky is the assistant medical examiner having performed the autopsy on Harry Smith, III. She is not retained by Plaintiffs. She is being called as a fact witness.

2. **Dr. Jerry Boswell, D.B.A., CFA**
   **Summit Associates**
   **2262 E. Terraridge Drive**
   **Littleton, CO 80126**

   Dr. Jerry Boswell is a financial analyst/economist. Dr. Boswell holds a doctorate degree in business administration from Indiana University. He is a Chartered Financial

Analyst.  Dr. Boswell recently retired, having spent over 30 years teaching business administration related courses at the college level.

3.   Mr. Elbert Waters

   901 North Parkway

   Memphis, TN

Mr. Elbert Waters currently works for the Memphis School System.  He previously served 16 years as a patrol officer for the Chicago Police Department. During his service as a Chicago police officer, he spent five years as a plain clothes "tactical officer".  Mr. Waters will offer his opinion about how a reasonable police officer on the scene should act when faced with a car theft situation, including the theft of a police car, after hearing radio transmissions containing words such as "officer needs assistance" and "shots fired" and after observing the stolen car drive through densely populated streets erratically at speeds exceeding posted limits.

4.   Mr. Joseph Stine

   JJS Consulting Associates, Inc.

   2368 Greensward South

   Warrington, PA 18976

Mr. Joseph Stine is the former Police Chief of New Britain Township Pennsylvania (1990 – 2000).  He is the former executive officer of the Police Training Bureau for the City of Philadelphia.  In his 25 years with the Philadelphia Police Department, he served in every rank from Patrolman through Inspector.  He was a Detective for three years and the

**night command Captain in charge of the Detective Bureau for 2 years.  He was a patrol district supervisor at the ranks of Sergeant, Lieutenant and Captain for 12 years.  He is the former School Director for the Philadelphia Police Recruit Training Academy.  He currently is certified as an instructor for Police training for the Commonwealth of Pennsylvania.  He has been retained by the Southeast Pennsylvania Transportation Authority Police Department to develop and deliver training to its officers.  He has been an adjunct faculty member in Criminal Justice Departments at Temple University, Holy Family College, Delaware Valley College and Philadelphia Community College.  He is a graduate of the Federal Bureau of Investigation National Academy and the Police Executive Research Forum. He graduated from St. Joseph University with a Master of Science in Administration of Criminal Justice.  He served on the International Association of Chiefs of Police Education and Training Committee from 1991 through 2003.  He has been recognized as an expert in the training, practices and procedures utilized by the police in the performance of their duties, and will be asked to offer testimony on these topics/areas as it pertains to the facts of this case.**

**BY DEFENDANTS:**

1.     **Jon J. Nordby, Ph.D.**

       **Final Analysis Forensics**

       **3532 Soundview Drive West**

       **University Place, WA  98466**

**Jon J. Nordby, Ph. D. is an expert in forensic science and forensic medicine. He specializes in the medical and legal aspects of death investigations, bloodstain pattern analysis, ballistics, firearms and gun shot residue testing, trace evidence analysis, and event reconstruction. Dr. Nordby has worked for more than twenty years as a medical examiner and as an independent consultant to police departments and medical examiners' offices. In addition, he has worked as a tenured professor instructing students on the scientific method, forensic science and forensic medicine. He has also authored numerous scholarly articles and books in these areas. Dr. Nordby will apply his expertise to analyze the pertinent physical evidence in this case, and to determine which of the parties' competing factual theories of the case is consistent with the physical evidence.**

**2.     Ronald H. Traenkle**

       **3605 Cloverdale Drive**

       **Bensalem, PA  19020**

**Ronald H. Traenkle is an expert in reasonable police practices and the permissible use of force by police officers. Mr. Traenkle served as a police officer in the Bensalem Township Police Department for more than 25 years, rising from the rank of patrolman to captain – the highest sworn rank in the department. After serving as captain for 11 years, Mr. Traenkle served as the Director and Commanding Officer of the Temple University Police Academy. In addition, he has served as an instructor in various other universities, police academies, and other training programs, including training on the use of force, and he has helped draft Pennsylvania legislation on police training and pursuit practices. Mr. Traenkle will provide expert testimony regarding the reasonableness of the individual**

**defendant police officers' actions on September 13, 2003 in light of the facts and circumstances known to them at that time.**

==

   (f) A list of all depositions, or portions thereof, to be read into evidence and statements of any objections thereto;

**BY PLAINTIFFS:**

  **Plaintiffs will use the depositions of Mr. David Gwyn (video), Mr. Elbert Waters (video), and Mr. Johnny Whitehead (transcript) if they are not able to attend the trial.**

**BY DEFENDANTS:**

==

   (g) an itemized statement of special damages;

**BY PLAINTIFFS:**

1. **Plaintiffs claim funeral and burial expenses of $15,000. There is a dispute between the parties as to the total amount allowed by law for recovery of these expenses.**
2. **Economic losses, per report of Dr. Jerry Boswell, are $1.3 million.**

==

  (h) Waivers of any claims or defenses that have been abandoned by any party;

**BY PLAINTIFFS:**

 **None waived.**

**BY DEFENDANTS:**

 **None waived.**

==

  (i) for a jury trial, each party shall provide the following:

   (i) trial briefs except as otherwise ordered by the court;

   (ii) three sets of marked proposed jury instructions, verdict forms, and special interrogatories, if any; and

   (iii) a list of the questions the party requests the court to ask prospective jurors in accordance with Fed.R.Civ.P. 47(a) and D.Del. LR 47.1(a);

**JOINT VOIR DIRE:**

**1. Do you have any family members or friends working or having worked as a police officer or correctional officer?**

**2. Do you or any members of your family own any guns?**

**3. Do you or any members of your family have any experience working with automobiles, either in building, repairing or selling?**

**4.      Do you or any members of your family have any experience working as an educator or trainer?**

**5.      Have you read or heard any news media reports of this incident?**

**6.      Have you or any member of your family ever been injured by a police officer?**

**7.      Are you opposed to the death penalty under any circumstances?**

**8.      Are you opposed to police officers using deadly force in any situation?**

==

(k)      a statement summarizing the history and status of settlement negotiations, indicating whether further negotiations are ongoing and likely to be productive;

**The plaintiffs and their counsel, and defense counsel participated in a mediation/early neutral assessment session held by the Magistrate Judge. Plaintiffs are willing to participate in further discussions but defendants do not believe that further settlement discussions will serve a useful purpose.**

==

(l)      a statement that each party has completed discovery, including the depositions of expert witnesses (unless the court has previously ordered otherwise). Absent good cause shown, no further discovery shall be permitted; and

**Discovery is completed.**

==

(m) motions *in limine*: **No party shall file more than five (5) motions in limine without prior approval of the court. Briefs (opening, answering, and reply) on all such motions shall be due at the time of the filing of this Pretrial Order. Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages. The parties should submit an original and two (2) copies.**

**PLAINTIFFS' MOTIONS *IN LIMINE*:**

1. Docket entry #137, filed on September 25, 2006, to Admit Evidence.

2. Docket entry #138, filed on September 25, 2006, to Exclude Evidence.

**DEFENDANTS' MOTIONS *IN LIMINE*:**

1. Docket entry #133, filed on September 13, 2006, First motion to Exclude Economic Expert Testimony.

2. Docket entry #134, filed on September 13, 2006, Second motion to Exclude Certain Evidence Relating to Their Ammunition.

3. Docket entry #135, filed on September 13, 2006, Third motion to Preclude Certain Testimony from Thomas Smith.

4. Docket entry #136, filed on September 13, 2006, Fourth motion to Exclude Certain Purported Expert Critiques of the Acts of Non-Defendants.

5. Docket entry #139, filed on September 25, 2006, Fifth motion to Exclude Evidence or Argument Regarding Risk of Harm to Third Parties.

==

3. The Court has set this matter for a five-day jury trial, commencing on April 9, 2007.

4. [Indicate the type of trial by placing an X in the appropriate box]

   Jury  X            Non-jury __

5. The parties recommend that nine (9) jurors be selected at the commencement of the trial.  Each side will have three (3) preemptory strikes.

6. This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

7. Possibility of settlement of this case was considered by the parties.

==

**OTHER MATTERS:**

1. Defendants request the Court to time the parties' opening statements, witness examinations and closing arguments to ensure that the trial time is evenly divided between each side.  Plaintiffs object to evenly dividing trial time because they have the burden of proof and also have considerably more witnesses to call than Defendants.

2. Plaintiffs have advised Defendants of the witnesses they plan to call the first day of trial.  Thereafter the parties shall disclose at the end of the trial day the witnesses they will call the following day.

3. Defendants' Motion for Summary Judgment is currently pending before this Court.  The Court's resolution of that motion may require modification of this Pretrial Order.

Dated:_____        _____
                                     United States District Judge

_____              _____

Anne T. Sulton                       John A. Parkins, Jr. (#859)
Post Office Box 2763                 K. Tyler O'Connell (#4514)
Olympia, Washington 98507            Richards, Layton & Finger
609-468-6029                         One Rodney Square
                                     P. O. Box 551
                                     Wilmington, Delaware  19899
Kester I.H. Crosse (#638)            302-651-7700
Williams & Crosse                    Parkins@rlf.com
1214 King Street, Suite 300          Oconnell@rlf.com
Wilmington, Delaware 19801           Attorneys for Defendants
302-658-3488
Attorneys for Plaintiffs


                                     OF COUNSEL FOR DEFENDANTS:

                                     Rosamaria Tassone
                                     City of Wilmington Law Department
                                     City/County Building, 9th Floor
                                     800 N. French Street
                                     Wilmington, Delaware  19801
                                     302-576-2175