IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARRY SMITH, JR. and ROSLYN WOODARD SMITH, Individually and as Administrators of THE ESTATE OF HARRY SMITH, III | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.  04-1254-GMS |
| v. | ) ) | |
| CITY OF WILMINGTON, JOHN CIRITELLA, THOMAS DEMPSEY, and MATHEW KURTEN, | ) ) ) ) | |
| Defendants. | ) | |

**JOINT PROPOSED JURY INSTRUCTIONS**

# TABLE OF CONTENTS

**J = Jointly Proposed**

**P = Proposed by Plaintiffs**

**D = Proposed by Defendants**

Page

**Section A:  General Instructions**

| | | |
|---|---|---|
| J 1 | Preliminary Jury Instructions | 4 |
| J 2 | Deliberations | 11 |
| P 3 | Impeachment | 13 |
| P 4 | Multiple Defendants | 14 |
| P 5 | Spoliation [Defendants Object] | 15 |

**Section B:  Liability**

| | | |
|---|---|---|
| D 6 | Introduction to claims | 16 |
| P 7 | Use of deadly force [Defendants Object] | 17 |
| P 8 | 42 USC 1983 use of excessive force [Defendants Object] | 19 |
| D 9 | Estate's federal claim [Plaintiffs Object] | 23 |
| D 10 | Use of deadly force by a police officer [Plaintiffs Object] | 26 |
| D 11 | Use of deadly force by a police officer to prevent escape [Plaintiffs Object] | 28 |
| P 12 | Delaware self-defense with deadly force [Defendants Object] | 30 |
| P 13 | Delaware defense of others with deadly force [Defendants Object] | 32 |
| P 14 | 42 USC 1983 state-created danger [Defendants Object] | 34 |
| D 15 | Risk of harm to third parties and number of shots fired [Plaintiffs Object] | 36 |
| D 16 | State law claims introduction | 38 |
| D 17 | Scope of Public Officers' Immunity from Tort Liability | 39 |
| P 18 | Negligence as a matter of law [Defendants Object] | 40 |

P 19     Wanton conduct defined [Defendants Object]                                    42

**Section C:  Damages**

D 20     Compensatory Damages                                                          43

P 21     Delaware wrongful death compensatory damages [Defendants Object]              44

D 22     Damages for wrongful death [Plaintiffs Object]                                46

P 23     1983 compensatory damages [Defendants Object]                                 48

D 24     Estate's damages [Plaintiffs Object]                                          50

P 25     1983 punitive damages [Defendants Object]                                     52

## J 1: PRELIMINARY JURY INSTRUCTIONS

### INTRODUCTION

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

### THE PARTIES AND THEIR CONTENTIONS

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

The parties in this case are the plaintiffs, Harry Smith, Jr., Roslyn Smith, and the Estate of Harry Smith, III, and the defendants, John Ciritella, Matthew Kurten and Thomas Dempsey.

Plaintiffs claim that Detective Ciritella, Sergeant Dempsey and Officer Kurten used excessive force in attempting to arrest Harry Smith, III. The defendants deny that they did so.

The Estate of Harry Smith, III, one of the plaintiffs, alleges two claims: one under federal law and the other under Delaware law. The parents of Harry Smith, III assert a claim known as a wrongful death action under Delaware law. I will instruct you separately on each of these claims a little later.

You will be asked to determine the liability, if any, of each party. If appropriate, you will be asked to determine the amount of money damages necessary to compensate the plaintiffs for all of their injuries.

### DUTIES OF THE JURY

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case. It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all

the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**EVIDENCE**

The evidence from which you will find the facts will consist of the testimony of witnesses; (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court -- you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3. Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4. Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

**CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY**

You are the sole judges of each witness' credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

**SUMMARY OF APPLICABLE LAW**

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements which plaintiff(s) must prove to make their case:

I will now instruct you on the Estate's federal claim. The Estate of Harry Smith, III is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights by persons acting under color of state law. The parties agree that the defendants were acting under color of state law, but they disagree whether the defendants deprived Harry Smith, III of his constitutional rights.

The Estate claims, and must therefore prove, that either Detective Ciritella, Sgt. Dempsey or Officer Kurten (or any combination of them) deprived Harry Smith, III of the rights guaranteed to him by the Fourth Amendment of the United States Constitution.

The Estate of Harry Smith and Mr. and Ms. Smith assert claims based on the alleged violation of Delaware law. In their state law claims, the Smiths and the Estate allege that the defendant police officers used excessive force as defined by state law in attempting to stop or arrest Harry Smith, III and in attempting to prevent his escape. In order to prevail on these claims, the plaintiffs must prove that one or more of the officers used excessive force. Second, the plaintiffs must prove that the defendants acted wantonly or with gross negligence when they shot at Mr. Smith. If you find that they have failed to prove either of these things, your verdict on the state law claims must be for the defendants. If you find plaintiffs have proven both of these things, then you must determine the damages to be awarded to the Estate and to Mr. and Ms. Smith.

### BURDEN OF PROOF

As I told you during the voir dire, this is a civil case. Here the plaintiffs have the burden of proving their case by what is called a preponderance of the evidence. That means the plaintiffs have to produce evidence which, considered in the light of all the facts, leads you to believe that what the plaintiffs claim is more likely true than not. To put it differently, if you were to put the plaintiffs' and the defendants' evidence on opposite sides of a scale, the evidence supporting the plaintiffs would have to make the scale tip somewhat on their side. If the plaintiffs fail to meet this burden, the verdict must be for the defendants. The plaintiffs must also prove their damages by a preponderance of the evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

### CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it

to the court's attention promptly. Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**COURSE OF THE TRIAL**

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

(2) These preliminary instructions to you;

(3) Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4) The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5) My final instructions on the law to you;

(6) The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7) Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind. We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**TRIAL SCHEDULE**

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take five days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is

submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00

p.m. We will post a copy of this schedule for the your convenience in the jury deliberation room.

Preliminary Jury Instructions - Civil (GMS) Rev: 1/18/06

**J 2 – General Instructions - Deliberation**

When you retire to the jury room to deliberate, you may take with you these instructions, the verdict form, your notes and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trail was meant to influence your decision about the facts in any way. Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel forward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict. When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to

me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.  Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form.  You will then return to the courtroom and your foreperson will give you your verdict.  Unless I direct you otherwise, do not reveal your answers until you are discharged.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

<u>Source</u>:  Third Circuit Pattern Civil Jury Instruction 3.1.

## <u>P 3 - Impeachment Of Witnesses - Inconsistent Statement</u>

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**Source:**

**U.S. 11th Circuit Pattern Jury Instruction 4.1**

### **P 4 - Multiple Defendants**

There are several Defendants in this case. Some may be liable while others are not. All the Defendants are entitled to your fair consideration of their own defenses. If you find against one Defendant, that shouldn't affect your consideration of other Defendants. Unless I tell you otherwise, all my instructions apply to every defendant.

**Source:**

**Delaware Jury Instruction 5.5**


Plaintiffs request this instruction be given at both the beginning of the case and at the close of the evidence.

## **P 5 - Spoliation**

There is evidence from which you may conclude that one or more of the Defendants, or someone working on their behalf, may have intentionally and/or recklessly suppressed or destroyed the video tape located in the police car Harry Smith, III was driving. In your deliberations, if you conclude that this is the case, that is, that the loss or destruction of this video tape was due to the intentional and/or reckless conduct of one or more of the Defendants, or someone working on their behalf, then you may conclude that the missing evidence would have been unfavorable to the Defendants in this case.

**Source:**

**Delaware Jury Instruction 23.17**

**DEFENDANTS' OBJECTION:**     There is no evidence to support this instruction.

### D 6 - Introduction to Claims

Plaintiffs claim that Detective Ciritella, Sergeant Dempsey and Officer Kurten used excessive force in attempting to arrest Harry Smith, III. The defendants deny that they did so. The Estate of Harry Smith, III, one of the plaintiffs, alleges two claims: one under federal law and the other under Delaware law. The parents of Harry Smith, III assert a claim known as a wrongful death action under Delaware law. I will instruct you separately on each of these claims a little later.

There are three defendants in this case. You should consider the claims separately against each defendant. You may find that the plaintiffs have proven that all of the defendants are liable, that they have proven that only one or two are liable, or that they have failed to prove that any of the defendants are liable to them.

I will now give you a brief summary of what the plaintiffs must prove to make their case:

Source: Third Circuit Pattern Jury Instruction 1.2.

## P 7 - Use Of Deadly Force In Law Enforcement

Delaware Statutes, Title 11, Section 467(c) provides that the use of deadly force by a police officer is justifiable if:

1)      all other reasonable means of apprehension have been exhausted, and:

2)      the police officer believes the arrest is for any crime involving physical injury or threat thereof, and the deadly force is directed at a vehicle to disable it for the purpose of effecting the arrest, or the police officer believes the arrest is for a felony involving physical injury or threat thereof; and

3)      the police officer believes the force employed creates no substantial risk of injury to innocent persons; and

4)      the police officer believes there is a substantial risk that the person to be arrested will cause death or serious physical injury, or will never be captured if apprehension is delayed.


Delaware Statutes, Title 11, Section 470 (a), provides that when the police officer believes force is necessary, but the police officer is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of the use of force, then the justification afforded by Section 467(c) is not available to the police officer in a case such as this, wherein, among their allegations, the Plaintiffs allege recklessness or negligence.


Furthermore, Delaware Statutes, Title 11, Section 470 (b) provides that when a police officer is justified in using force, but the police officer recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by Section 467 is unavailable in a prosecution for an offense involving recklessness or negligence towards innocent persons.

**Source:**

**Delaware Statutes, Title 11, §§ 467(c), 470, 471**

**DEFENDANTS' OBJECTION:**     The proposed instruction does not make clear that it is irrelevant whether it was reasonable to have such a belief.  The test is whether the defendant *in fact* had such a belief.

The language concerning section 470(a) is objectionable because it makes it appear as if the Delaware Code singles out police officers. Section 470 (b) applies only "in a prosecution for an offense ... towards innocent persons."  There is no evidence Harry Smith, III was an innocent person.

### P 8  -  42 U.S.C. Section 1983 Excessive Use of Force

Plaintiffs are suing under 42 U.S.C. Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights by persons acting under color of state law.  Plaintiffs and Defendants agree Defendants were acting under the color of state law.

By a preponderance of the evidence, Plaintiffs must prove that Defendant John Ciritella deprived Harry Smith, III of his federal constitutional right.

By a preponderance of the evidence, Plaintiffs must prove that Defendant Thomas Dempsey deprived Harry Smith, III of his federal constitutional right.

By a preponderance of the evidence, Plaintiffs must prove that Defendant Matthew Kurten deprived Harry Smith, III of his federal constitutional right.

I will now tell you the elements Plaintiffs must prove to establish the violation of Harry Smith, III's federal constitutional right.

The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested or stopped by police. In other words, a police officer may only use the amount of force necessary under the circumstances to make the arrest or to conduct the stop. Every person has the constitutional right not to be subjected to excessive force while being arrested or stopped by police, even if the arrest or stop is otherwise proper.

In this case, Plaintiffs claim each Defendant used excessive force when he used deadly force against Harry Smith, III. In order to establish each Defendant used excessive force,

Plaintiffs must prove both of the following by a preponderance of the evidence:

First: The Defendant intentionally committed certain acts.

Second: Those acts violated Harry Smith, III's Fourth Amendment right not to be subjected to excessive force.

"Deadly force" means force which the defendant uses with the purpose of causing or which the defendant knows creates a substantial risk of causing death or serious physical injury.

Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force.

Defendant's use of deadly force was **NOT** excessive, if you find **ALL** of the following:

1)          all other reasonable means of apprehension had been exhausted; **and**

2)          the defendant believed the arrest is for a felony involving physical injury or threat thereof, **and** he was not reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of the use of force; **and**

3)          the defendant believed the force employed did not create a substantial risk of injury to innocent persons, **and** did not recklessly or negligently injure or create a risk of injury to innocent persons; **and**

4)          the defendant believed deadly force was immediately necessary to prevent Harry Smith, III from committing a crime that would cause death or serious physical injury, or would never be captured if apprehension was delayed, **and** that the use of deadly force presented no substantial risk of injury to innocent persons.

If you do not find **ALL** of the above noted, then you must find for the Plaintiffs.

**Source:**

**U.S. Third Circuit Model 4.1, 4.3, 4.9 – and Delaware Title 11, Sections 467, 470, 471,**

*Comment*: Delaware Statutes -**Title 11** sets forth when a police officer may use deadly force. It is more restrictive than the Fourth Amendment to the U.S. Constitution, providing broader protections to which Harry Smith, III was entitled. Per Section **467**, a police officer may only use deadly force when "the force employed creates no substantial risk of injury to innocent persons."

Per Section **470**, even when a police officer is justified in using force, the justification is unavailable when "the defendant recklessly or negligently injures or creates a risk of injury to innocent persons." It is undisputed Ms. Garcia, an innocent person, was hit in the leg by one of

the 31 bullets shot by Defendants.  Section 467(c) of Title 11 of the Delaware Code refers to law enforcement officials' use of deadly force.  It states: "The use of deadly force is justifiable under this section if all other reasonable means of apprehension have been exhausted, and: (1) The defendant believes the arrest is for any crime involving physical injury or threat thereof, and the deadly force is directed at a vehicle to disable it for the purpose of effecting the arrest, or the defendant believes the arrest is for a felony involving physical injury or threat thereof; (2) The defendant believes that the force employed creates no substantial risk of injury to innocent persons; and (3) The defendant believes that there is a substantial risk that the person to be arrested will cause death or serious physical injury, or will never be captured if apprehension is delayed."

**DEFENDANTS' OBJECTION:**  While purportedly based on the 3rd circuit model instructions, plaintiffs' 4th Amendment instruction omits such key concepts as (i) the totality of the circumstances, (ii) objective reasonableness - the perspective of a reasonable officer on the scene, (iii) the idea that officers' actual intent or motivation is irrelevant, and (iv) the Garner/Graham standard.   (Our proposed instruction has all these).  Plaintiffs' instruction also conflates the Delaware law of self-defense/justification  with  the  4th  Amendment  inquiry,  paraphrasing

Section 467 (including plaintiffs' objective reasonableness formulation) and instructing the jury that they must find that the defendants' use of force was excessive unless it is justified under plaintiffs' reading of 11 *Del. C.* §§ 467, 470.

## D 9 - The Estate's Federal Claim.

I will now instruct you on the Estate's federal claim. The Estate of Harry Smith, III is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights by persons acting under color of state law. The parties agree that the defendants were acting under color of state law, but they disagree whether the defendants deprived Harry Smith, III of his constitutional rights.

The Estate claims, and must therefore prove, that either Detective Ciritella, Sgt. Dempsey or Officer Kurten (or any combination of them) deprived Harry Smith, III of the rights guaranteed to him by the Fourth Amendment of the United States Constitution. Specifically, the Estate alleges that the defendants used excessive force in attempting to stop or arrest Mr. Smith and in attempting to prevent his escape. The Fourth Amendment protects persons from being subjected to excessive force while being arrested or stopped by police. In other words, a law enforcement official may only use the amount of force necessary under the circumstances to make an arrest or conduct a stop. Every person has the constitutional right not to be subjected to excessive force while being arrested or stopped by police, even if the arrest or stop is otherwise proper.

An officer may not use deadly force to prevent a suspect from escaping unless deadly force is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Also, the officer must give the suspect a warning before using deadly force, if it is feasible under the circumstances to give such warning.

In order to establish that a defendant police officer violated the Fourth Amendment by using deadly force, the Estate must prove that the defendant intentionally committed acts that constituted deadly force against Harry Smith, III. The Estate must prove at least one of the following things:

·    Deadly force was not necessary to prevent Harry Smith, III's escape; or

·    the officers did not have probable cause to believe that Harry Smith, III posed

significant threat of serious physical injury to themselves or others.

In making this decision you should consider all the relevant facts and circumstances leading up to the time of the encounter that the defendants reasonably believed to be true at the time of the encounter.  The reasonableness of the defendants' acts must be judged from the perspective of a reasonable officer on the scene.   The concept of reasonableness makes allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are sometimes tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation.

As I told you earlier, the Estate must prove that the defendant intended to commit the acts in question; but apart from that requirement, the defendant's actual motivation is irrelevant.  If the force the defendant used was unreasonable, it does not matter whether the defendant had good motivations.   And an officer's improper motive will not establish excessive force if the force used was objectively reasonable.

Source:  Third Circuit Pattern Jury Instructions 4.1, 4.3, 4.9.1.

**PLAINTIFFS' OBJECTION:**   Plaintiffs object to this instruction because it fails to include the necessary adjectives of imminent and immediate.  A police officer may use deadly force if he reasonably believes "the suspect's actions place him, or others in the immediate vicinity, in imminent danger of death or serious bodily injury".   *Scott  v. Edinburg,* 346 F. 3d 752, at 756

(7th Cir. 2003).  "[W]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."  *Tennessee v. Garner*, 471 U.S. 1, at 11 (1985).

### D 10  -  Use of Deadly Force By a Police Officer

Insofar as plaintiffs' state law claims are concerned, the use of deadly force is justified if the defendant believed that such force was necessary to protect him or another of the defendants against death or serious physical injury.  The issue is not whether the use of deadly force was reasonable under the circumstances or whether a reasonable person would have perceived the need for employing deadly force; rather the test is whether the defendant in fact had such a belief at the time deadly force was used.


Source:  11 Del. C. §§ 464, 465; Moore v. Licciardello, 463 A.2d 268 (Del. 1983); State v. Scott, 1989 Del. Super. LEXIS 291 (Del. Super., July 19, 1989).

**PLAINTIFFS' OBJECTION:**    Plaintiffs object to this instruction because it fails to include the necessary adjectives of imminent and immediate.  A police officer may use deadly force if he reasonably believes "the suspect's actions place him, or others in the immediate vicinity, in imminent danger of death or serious bodily injury".  *Scott  v. Edinburg,* 346 F. 3d 752, at 756 (7th Cir. 2003).  "[W]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."  *Tennessee v. Garner*, 471 U.S. 1, at 11 (1985).  Section 467(c) of Title 11 of the Delaware Code refers to law enforcement officials' use of deadly force.  It states: "The use of deadly force is justifiable under this section if all other reasonable means of apprehension have been exhausted, and: (1) The defendant believes the arrest is for any crime involving physical injury or threat thereof, and the deadly force is directed at a vehicle to disable it for the purpose of effecting the arrest, or the defendant believes the arrest is for a felony involving physical injury or threat thereof; (2) The defendant believes that the force employed creates no substantial risk of injury to innocent

persons; and (3) The defendant believes that there is a substantial risk that the person to be arrested will cause death or serious physical injury, or will never be captured if apprehension is delayed."

**D 11 - Use of Deadly Force By A Police Officer To Prevent Escape**

You have heard testimony that the defendants shot at Mr. Smith to prevent his escape. Under the law, the defendants' use of deadly force to prevent Mr. Smith's escape is justified if:

1.      They believed Mr. Smith committed a felony involving physical injury or a threat of physical injury; and

2.      They believed that the force employed created no substantial risk of injury to innocent persons; and

3.      They believed there was a substantial risk that Mr. Smith would cause death or serious physical injury if his apprehension was delayed.

In determining whether the defendant officers believed these things, the test is not whether a reasonable person would have believed them; rather, the test is whether the defendants in fact believed them.

Source:   11 Del. C. § 467; Moore v. Licciardello, 463 A.2d 268 (Del. 1983); State v. Scott, 1989 Del. Super. LEXIS 291 (Del. Super., July 19, 1989).

**PLAINTIFFS' OBJECTION:**  Plaintiffs object to this instruction because it fails to include the necessary adjectives of imminent and immediate, and it lists only three elements, rather than

four.  Section 467(c) of Title 11 of the Delaware Code refers to law enforcement officials' use of deadly force.  It states: "The use of deadly force is justifiable under this section if all other reasonable means of apprehension have been exhausted, and: (1) The defendant believes the arrest is for any crime involving physical injury or threat thereof, and the deadly force is directed at a vehicle to disable it for the purpose of effecting the arrest, or the defendant believes the arrest is for a felony involving physical injury or threat thereof; (2) The defendant believes that the force employed creates no substantial risk of injury to innocent persons; and (3) The defendant believes that there is a substantial risk that the person to be arrested will cause death or serious physical injury, or will never be captured if apprehension is delayed."

### P 12 - Delaware Wrongful Death / Self-Defense With Deadly Force

Defendant John Ciritella contends he acted in self-defense after Harry Smith, III allegedly attempted to hit him with the car. You may find that Defendant Ciritella used deadly force.

"Deadly force" is force used with the purpose of causing death or serious physical injury or with the knowledge of a substantial risk of causing death or serious physical injury. Deadly force by Defendant Ciritella is justified if he believed it was necessary to protect himself against death or serious physical injury.

"Serious physical injury" means physical injury that creates a substantial risk of death, or that causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ.

The use of deadly force is not justified if Defendant Ciritella, with the purpose of causing death or serious physical injury, provoked the use of force in the same encounter. Nor is deadly force justified when Defendant Ciritella knows that he can avoid the use of deadly force with complete safety by retreating.

Self-defense may not be used as a justification after Defendant Ciritella no longer is in danger of death or serious physical injury.

If you find that Defendant Ciritella was not acting in self-defense, or that his use of deadly force was not justified, you must find in favor of Plaintiffs. But if you find that Defendant Ciritella was acting in self-defense and was justified in using deadly force, you must find in favor of Defendant Ciritella.

**Source:**

**Delaware Jury Instruction 13.6**

**DEFENDANTS' OBJECTION:**     This instruction omits the statutory provision that a "public officer using force in the performance of the officer's duties ... need not desist from efforts to perform the duty or make the arrest or prevent the

escape because of resistance or threatened resistance by or on behalf of the person against whom the action is directed." This proposed instruction is also inconsistent with Superior Court Civil Patter Jury Instruction 13.4 that a "citizen has a duty to co-operate with a peace officer attempting to make a lawful arrest. If resisted, the officer may use such force as is reasonably necessary to make the arrest."

11 Delaware Code Section 464 (e)(2)(c)

### P 13 - Delaware Wrongful Death / Defense Of Others With Deadly Force

Plaintiffs allege Defendants wrongfully caused the death of Harry Smith, III. Defendants Thomas Dempsey and Matthew Kurten allege they acted in defense of Defendant Ciritella. Dempsey and Kurten admit they intentionally used deadly force.

The use of deadly force by Defendant Thomas Dempsey upon or toward Harry Smith, III is justifiable if he believed he was protecting Defendant Ciritella from death or serious physical injury.

The use of deadly force by Defendant Matthew Kurten upon or toward Harry Smith, III is justifiable if he believed he was protecting Defendant Ciritella from death or serious physical injury.

The use of deadly force by Defendant Dempsey upon or toward Harry Smith, III is NOT justifiable if he knows Defendant Ciritella is not in danger. Furthermore, if Defendant Dempsey knew using deadly force could be avoided if Defendant Ciritella retreated, then Defendant Dempsey was obliged or obligated to try and cause Defendant Ciritella to retreat before Defendant Dempsey used deadly force.

The use of deadly force by Defendant Kurten upon or toward Harry Smith, III is NOT justifiable if he knows Defendant Ciritella is not in danger. Furthermore, if Defendant Kurten knew using deadly force could be avoided if Defendant Ciritella retreated, then Defendant Kurten is obliged or obligated to try and cause Defendant Ciritella to retreat before Defendant Kurten used deadly force.

**Source:**

**Delaware Statutes Title 11 § 465; Delaware Jury Instruction 13.6**

**<u>DEFENDANTS' OBJECTION</u>:**    This is repetitive of (and nearly identical to) the previous instruction.  Defendants incorporate their objections to that instruction.

### P 14  -  42 U.S.C. Section 1983 – State Created-Danger

Plaintiffs claim Harry Smith, III was killed as a result of Defendants shooting him. The United States Constitution prohibits police officers from engaging in conduct that renders an individual more vulnerable to harm.

In this case, Plaintiffs claim City of Wilmington police officers rendered Harry Smith, III more vulnerable to harm by failing to follow departmental policies. This failure created and set into motion a chain of events leading to his death.

To establish this claim, Plaintiffs must prove all of the following four things by a preponderance of the evidence:

First: The harm to Harry, i.e., his death by police gunfire, was a foreseeable and fairly direct result of City of Wilmington police officers' conduct.

Second: City of Wilmington police officers acted with conscious disregard of a great risk of serious harm or deliberate indifference.

Third: There was a relationship between City of Wilmington police officers and Harry that distinguished Harry from the public at large.

Fourth: City of Wilmington police officers' actions made Harry more vulnerable to being shot to death by Defendants Ciritella, Dempsey and Kurten, or police used their authority to create an opportunity that otherwise would not have existed for harm to occur.

The first of these four elements requires Plaintiffs to show Harry's death by police gunfire was a foreseeable and fairly direct result of City of Wilmington police officers' conduct. This element includes two related concepts: foreseeability and directness.

Foreseeability concerns whether City of Wilmington police officers should have foreseen Harry's death by Defendants' gunfire.

Directness concerns whether it is possible to draw a direct enough connection between City of Wilmington police officers' conduct and Harry's death by Defendants' gunfire.

To consider the question of directness, you should look at the chain of events that led to Harry's death, and you should consider where City of Wilmington police officers' conduct fits within that chain of events, and whether that conduct can be said to be a fairly direct cause of Harry's

death by Defendants' gunfire.

**Source:**

**U.S. Third Circuit Model 4.14**


**DEFENDANTS' OBJECTION:**     The first paragraph of this instruction -- which plaintiffs omit -- show that it relates to the state created danger doctrine which arises under the Fourteenth Amendment.  *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1994).  This Court has previously dismissed plaintiff's Fourteenth Amendment claims.  Plaintiffs never alleged a State created Danger claim in their Complaints.

## D 15 - Risk Of Harm To Third Parties and Number of Shots Fired

In determining whether any of the defendants used excessive force, you should not consider whether other persons were put at risk by the defendants' conduct. Your sole focus should be whether the force used was excessive in connection with Harry Smith, III. The fact that bystanders may or may not have been put at risk by the defendants' actions has no bearing on whether they used excessive force on Harry Smith, III.

Likewise, the number of bullets fired at Harry Smith, III should not affect your determination of whether excessive force was used. If you find that the defendant police officers were not permitted to use deadly force to prevent the escape of Harry Smith, III, then it does not matter whether the police fired 1 or 31 shots at Harry Smith, III. If on the other hand you find that the defendant police officers were permitted to use deadly force to prevent his escape, then the defendants were free to fire as many shots as necessary to accomplish this.

Sources:   Altman v. City of High Point, N.C., 330 F.3d 194 (4th Cir. 2003) (Fourth Amendment inquiry does not consider potential harm to third parties); Howerton v. Fletcher, 213 F.3d 171 (4th Cir. 2000) (same); Elliot v. Leavitt, 99 F.3d 640 (4th Cir. 1996), cert. denied, 521 U.S. 1120 (1997) (number of shots fired cannot determine issue of excessive force); Archuleta v. McShan, 897 F.2d 495 (10th Cir. 1990) (claim under 42 U.S.C. § 1983 must be predicated on alleged violation of plaintiff's rights, not rights of third parties); Robins v. City of Hanford, 2006 WL 1716220 (E.D.Cal. Jun 19, 2006) (issue under Fourth Amendment is not whether defendant acted reasonably with respect to third parties); Chandie v. Whelan, 21 F. Supp. 2d 170 (S.D.N.Y 1998) (no basis to second-guess number of shots fired by officer in dangerous circumstances); Frane v. Kijowski, 992 F. Supp. 985 (N.D. Ill. 1998) (same); Austin v. Town of Blacksburg, 66 F.Supp. 2d 771 (W.D. Va. 1998), aff'd, 188 F.3d 503 (4th Cir. 1999) (use of deadly force is permitted until threat abates); see also Rakas v. Illinois, 439 U.S. 128 (1978) (Fourth Amendment right to be free from unreasonable searches can not be asserted vicariously).

**PLAINTIFFS' OBJECTION:**   Plaintiffs object to this instruction because it fails to consider the totality of circumstances, which is essential to a determination of whether the defendant police officers conduct was objectively reasonable.  *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999); *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000); *Curley v. Klem,* 298 F.3d 271 (3d Cir. 2002); *Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006).

Section 467(c) of Title 11 of the Delaware Code refers to law enforcement officials' use of deadly force.  It states: "The use of deadly force is justifiable under this section if all other reasonable means of apprehension have been exhausted, and: (1) The defendant believes the arrest is for any crime involving physical injury or threat thereof, and the deadly force is directed at a vehicle to disable it for the purpose of effecting the arrest, or the defendant believes the arrest is for a felony involving physical injury or threat thereof; (2) The defendant believes that the force employed creates no substantial risk of injury to innocent persons; and (3) The defendant believes that there is a substantial risk that the person to be arrested will cause death or serious physical injury, or will never be captured if apprehension is delayed."

### D 16 - State Law Claims - Introduction.

The Estate of Harry Smith and Mr. and Ms. Smith assert claims based on the alleged violation of Delaware law.  In their state law claims, the Smiths and the Estate allege that the defendant police officers used excessive force as defined by state law in attempting to stop or arrest Harry Smith, III and in attempting to prevent his escape.  In order to prevail on these claims, the plaintiffs must prove that one or more of the officers used excessive force.  Second, the plaintiffs must prove that the defendants acted wantonly or with gross negligence when they shot at Mr. Smith.  If you find that they have failed to prove either of these things, your verdict on the state law claims must be for the defendants.  If you find plaintiffs have proven both of these things, then you must determine the damages to be awarded to the Estate and to Mr. and Ms. Smith.

### **D 17 - The Scope of Public Officers' Immunity From Tort Liability**

If you find that Detective Ciritella, Sgt. Dempsey, or Officer Kurten used excessive force in attempting to arrest or stop Mr. Smith or in attempting to prevent his escape, you must then determine whether plaintiffs have proven that the defendant police officer who used excessive force acted wantonly or with gross negligence.  Delaware law provides that no damages may be recovered against a public officer or employee if the claim arose because of the performance of an official duty that was conducted in good faith for the benefit of the public.  This is known as sovereign immunity.  There is an exception to this rule, however, if the public officer or employee acted with gross or wanton negligence.  Gross or wanton negligence refers to conduct of such a nature or degree that it constitutes a gross deviation from what a reasonable, ordinary person would do in the same situation.

For plaintiffs' state law claims to fall within this exception to sovereign immunity, plaintiffs must prove that Detective Ciritella, Sergeant Dempsey or Officer Kurten acted with gross or wanton negligence.

<u>Source:</u>  Superior Court Pattern Civil Jury Instruction 10.13.

### P 18 - Negligence As A Matter Of Law

A person is considered negligent if he violates a statute and/or regulation that has been enacted for people's safety. The violation of the statute and/or regulation is negligence as a matter of law. If you find that one or more of the Defendants has/have violated the statute and/or regulation that I am about to read to you, then you must conclude that the Defendant or those Defendants were negligent.

**Statute:**

Section 467(c) of Title 11 of the Delaware Code refers to law enforcement officials' use of deadly force.  It states: "The use of deadly force is justifiable under this section if all other reasonable means of apprehension have been exhausted, and: (1) The defendant believes the arrest is for any crime involving physical injury or threat thereof, and the deadly force is directed at a vehicle to disable it for the purpose of effecting the arrest, or the defendant believes the arrest is for a felony involving physical injury or threat thereof; (2) The defendant believes that the force employed creates no substantial risk of injury to innocent persons; and (3) The defendant believes that there is a substantial risk that the person to be arrested will cause death or serious physical injury, or will never be captured if apprehension is delayed."

**Regulation:**

Wilmington Police Department Policy 6.7 states:  "6 (c). Police officers shall not fire their weapons at, or from a moving vehicle except for under exigent, life-threatening circumstances.  6 (d). Firearms shall not be discharged when it appears likely that an innocent person maybe injured."

**Source:**

**Delaware Jury Instruction 5.7**

**DEFENDANTS' OBJECTION:**     This principle applies only to persons who are injured who fall within the class of persons the regulation or statute is designed to protect.  There is no evidence Harry Smith, III falls within such a class.

The instruction may confuse the jury on what standard is to be applied in assessing the Fourth Amendment claims.

## P 19 - Wanton Conduct Defined

Wanton conduct occurs when a person, though not intending to cause harm, does something so unreasonable and so dangerous that the person either knows or should know that harm will probably result. It reflects a foolhardy "I don't care" attitude.

**Source:**

**Delaware Jury Instruction 5.10**

**DEFENDANTS' OBJECTION:**    This instruction is inapplicable in instances in which the issue is whether deadly force is authorized.  Defendants' instruction:

The definition contained in the pattern jury instructions relating to Municipal Tort Immunity (which is contained in Defendants' Proposed Jury Instructions) is better suited to this case.

### D 20 - Compensatory Damages

I am now going to instruct you on damages relating to the Estate's federal law claim. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not any of the defendants should be held liable.

If you find that one or more of the defendants are liable, then you must consider the issue of compensatory damages. You must award the Estate an amount that will fairly compensate it for any injury Harry Smith, III actually sustained as a result of the defendants' conduct. Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence. The Estate has the burden of proving compensatory damages by a preponderance of the evidence.

The Estate claims compensation for the physical harm to Harry Smith III during the events at issue, including physical pain. In assessing such harm, you should consider the nature and extent of the injury.

Source: Third Circuit Pattern Jury Instructions 4.8.1.

**P 21 - Delaware Wrongful Death: Compensatory Damages**

The law recognizes when a person dies as the result of another's wrongful conduct, there is injury not only to the deceased but also to immediate family members. While it is impossible to compensate the deceased for the loss of his life, it is possible to compensate certain family members for the losses they have suffered from the death of a loved one. For this reason, Delaware law provides when a person dies as a result of another's wrongful act, certain family members, such as the Parents in this case, may recover fair compensation for their losses resulting from the death of their son, Harry Smith, III.

In determining a fair compensation, you may consider the following:

(1)      the loss of the expectation of monetary benefits that would have resulted from the continued life of Harry; that is, the expectation of inheritance that Harry Smith, III's parents have lost;

(2)      the loss of the portion of Harry Smith, III's earnings and income that probably would have been used for the support of his parents;

(3)      the loss of Harry Smith, III's household services;

(4)      the reasonable cost of funeral expenses, up to $7,000; and

(5)      the mental anguish suffered by Harry Smith, III's parents as a result of his death.

The term "mental anguish" encompasses the grieving process associated with the loss of a loved one. You may consider that the grieving process, accompanied by its physical and emotional upheaval, will be experienced differently by different people, both in its intensity and in its duration. The ability to cope with the loss may be different for each person. There is no fixed standard or measurement. You must determine a fair and adequate award through the exercise of your judgment and experience after considering all the facts and circumstances presented to you during the trial.

While Plaintiffs carry the burden of proving their damages by a preponderance of the evidence, they are not required to claim and prove with mathematical precision exact sums of money representing their damages for mental anguish. It is required only that Plaintiffs furnish enough evidence so that you, the jury, can make a reasonable determination of those damages.

**Source:**

**Delaware Jury Instruction 22.8**

**<u>DEFENDANTS' OBJECTION</u>:**    This instruction incorrectly states that plaintiffs may recover funeral expenses of $7,000.  The statutory limit is $2,000. 10 *Del. C.* § 3724(d)(4).  The instruction omits language from the model instruction that there is no fixed standard of measurement for mental anguish damages.

### D 22 - Damages for Wrongful Death.

Mr. and Ms. Smith assert a claim for wrongful death.  The law recognizes that when a person dies as the result of another's wrongful conduct, there is injury not only to the deceased but also to immediate family members.  While it is impossible to compensate the deceased for the loss of his life, it is possible to compensate certain family members for the losses that they have suffered from the death of a loved one.  For this reason, Delaware law provides that when a person dies as a result of another's wrongful act, certain family members may recover fair compensation for their losses resulting from the death.  In determining fair compensation, you may consider the following:

1.     the loss of the expectation of monetary benefits to Mr. and Ms. Smith that would have resulted from the continued life of Harry Smith, III; that is, the expectation of inheritance that Mr. and Ms. Smith have lost;

2.     the loss of the portion of Harry Smith, III's earnings and income that probably would have been used for the support of Mr. and Ms. Smith;

3.     the loss of Harry Smith, III's household services;

4.     the reasonable cost of funeral expenses, not to exceed $2000; and

5.     the mental anguish suffered by Mr. and Ms. Smith  as a result of Harry Smith, III's death.

The term "mental anguish" encompasses the grieving process associated with the loss of a loved one.  You may consider that the grieving process, accompanied by its physical and emotional upheaval, will be experienced differently by different people, both in its intensity and in its duration.  The ability to cope with the loss may be different for each person.  There is no fixed standard or measurement.  You must determine a fair

and adequate award through the exercise of your judgment and experience after considering all the facts and circumstances presented to you during the trial. Mr. and Ms. Smith carry the burden of proving their damages by a preponderance of the evidence, but they are not required to claim and prove with mathematical precision exact sums of money representing their damages for mental anguish. It is required only that Mr. and Ms. Smith furnish enough evidence so that you, the jury, can make a reasonable determination of any damages for mental anguish.

<u>Source</u>: Superior Court Pattern Jury Instruction 22.8.

**<u>PLAINTIFFS' OBJECTION:</u>**   Plaintiffs object to this instruction because it fails to provide the correct amount recoverable for funeral/burial expenses, which is $7,000.

## P 23 - Section 1983: Compensatory Damages

If you should find that any of the Defendants violated Harry Smith, III's constitutional rights, then you must then decide the issue of the Plaintiffs' damages.

In considering the issue of the Plaintiffs' damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the Plaintiffs' damages, no more and no less. Compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable. On the other hand, compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury -- tangible and intangible. Thus, no evidence of the value of such intangible things as physical or emotional pain and mental anguish has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate Plaintiffs for those claims of damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

**Source:**

**U.S. Third Circuit Model 4.8.1**

**OBJECTION:**    Plaintiffs' proposed instruction departs from the Third Circuit model instruction's language throughout, but in several particularly important respects:  (i) omission of the introductory statement that just because the judge is instructing on damages does not mean he has an opinion that the defendants are liable; (ii) the omission of a statement that it is plaintiffs' burden to prove compensatory damages; (iii) the omission of the statement that compensatory damages should not be based on sympathy (i.e., plaintiffs replace "sympathy" with "guesswork").  Generally, plaintiffs' proposed instruction is unclear as to the measure of damages, stating simply

that "compensatory damages … cover both the mental and physical aspects of the injury … no evidence of the value of such intangible things as physical or emotional pain or mental anguish has been or need be introduced … [you are trying to determine] an amount that will fairly compensate plaintiffs …"

## D 24 - The Estate's Damages

If you do not find that the Estate has sustained its burden of proof, the verdict must be for the defendants. If you do find that the Estate has sustained its burden of proof, you should consider the compensation to which it is entitled. I will now instruct you on those damages. As I told you earlier, the fact that I am instructing you on damages does not mean that I have an opinion on whether you should award damages.

The purpose of a damages award in a civil lawsuit is just and reasonable compensation for the harm or injury done. Certain guiding principles must be employed to reach a proper damages award. First, damages must be proved with reasonable probability and not left to speculation. Damages are speculative when there is merely a possibility rather than a reasonable probability that an injury exists. While pain and suffering are proper elements on which to determine monetary damages, the damages for pain and suffering must be fair and reasonably determined and may not be determined by a fanciful or sentimental standard. They must be determined from a conclusion about how long the suffering lasted, the degree of suffering, and the nature of the injury causing the suffering.

If you find for Mr. Smith's Estate, you should award to it the sum of money that in your judgment would have fairly and reasonably compensated Mr. Smith for any conscious pain and suffering he suffered from the time of the first wrongful act you found one of these defendants committed until his death. Plaintiffs bear the burden of proving that Mr. Smith consciously suffered pain and suffering. If he dies instantaneously or almost instantaneously after the wrongful act you have found, or if he was unconscious from the time of the first wrongful act, then the law requires that you not make an award to the Estate.

Source:  Superior Court Pattern Jury Instruction 22.1; Magee v. Rose, 405 A.2d 143 (Del. Super. 1979) (damages limited to conscious pain and suffering from time of

injury until time of death and plaintiff bears burden of showing existence of conscious pain and suffering); <u>Loden v. Getty Oil Co.</u>, 340 A.2d 174 (Del. Super. 1975) <u>aff'd</u>, 359 A.2d 161 (Del. 1976) (damages subsequent to or relating to death not recoverable).

**<u>PLAINTIFFS' OBJECTION:</u>**  This instruction will serve to confuse the jury.  There is no such limitation for a federal constitutional violation.

**P 25 - Section 1983: Punitive Damages**

The Plaintiffs also claim the Defendants acted maliciously, wantonly or with reckless indifference to Harry Smith, III's federally protected rights so as to entitle Plaintiffs to an award of punitive damages in addition to compensatory damages.

If you find for Plaintiffs, and if you further find that any of the Defendants did act maliciously, wantonly or with reckless indifference to Harry Smith, III's federally protected rights, the law allows you, in your discretion, to assess punitive damages against that Defendant or those Defendants as punishment and as a deterrent to others.

**Source: U.S. Third Circuit Model 4.8.3**

**OBJECTION:**     Plaintiffs' did not allege a claim for punitive damages in any of their three complaints.  While plaintiffs state the source of the instruction is 3rd Circuit Model Instruction 4.8.3, plaintiffs' instruction departs from the model in several important respects: (i) the omission of language regarding the purposes of punitive damages - punishment of "outrageous conduct" or deterrence; (ii) the alteration of the standard to include "reckless" conduct as opposed to conduct that is malicious or wanton; (iii) the omission

of the definitions for malicious conduct (defined as spiteful conduct) and wanton conduct  (defined involving a "reckless or callous" disregard of plaintiffs' rights); and (iv) several paragraphs included at the end of the model instruction discussing important considerations in shaping a punitive damages award (including among other things, the defendants' financial resources to pay).