**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

HARRY SMITH, JR. and
ROSLYN WOODARD SMITH,
Individually and as Administrators of
The ESTATE OF HARRY SMITH, III,

     Plaintiffs,

v.                                     CIVIL ACTION NO. 04-1254-GMS

JOHN CIRITELLA, in his individual capacity
and in his official capacity as a police officer of
the Wilmington Police Department,

THOMAS DEMPSEY, in his individual capacity
and in his official capacity as a police officer of
the Wilmington Police Department, and

MATTHEW KURTEN, in his individual capacity
and in his official capacity as a police officer of
the Wilmington Police Department,

     Defendants.
_____

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR A NEW TRIAL**
_____

Dated this 27th day of April 2007

                              Plaintiff's Attorneys

                              Anne T. Sulton
                              Post Office Box 2763
                              Olympia, WA 98507
                              Telephone: (609) 468-6029
                              E-Mail: annesulton@comcast.net

                              **Local Counsel:**

                              Kester I.H. Crosse [Bar I.D. 638]
                              1214 King Street, Suite 300
                              Wilmington, DE  19801
                              Telephone: (302) 652-3141
                              E-Mail: kesterih@aol.com

1

**TABLE OF CONTENTS**

Page

I.      Table of Citations                                          3

II.     Statement of the Nature and Stage of Proceeding            4

III.    Statement of Facts                                         4

IV.     Summary of Argument                                        9

V.      Argument                                                   10

VI.     Conclusion                                                 14

VII.    Appendix / Attachments

| **Page(s)** | **Exhibit** |
| --- | --- |
| 1-2 | Ciritella and Dempsey Pledge |
| 3 | Ciritella Trial Transcript Page 759 |
| 4 | Desiree Young Affidavit |
| 5 | News Journal Article Posted 2:58 pm |
| 6 | News Journal Article Updated 4:08 pm |

## I.  TABLE OF CITATIONS

Page

**Cases:**

*Olefins Trading, Inc. v. Han Yang Chem. Corp.*,

    9 F.3d 282, 289 (3d Cir. 1993)           12

*United States v. Rowell*, 512 F.2d 766, 768 (8th Cir. 1975)    13

*United States v. Resko*, 3 F.3d 684, 688 (3d Cir. 1993)    13

## II.  Statement of the Nature and Stage of Proceeding

**Nature:**

This civil action alleges a federal Fourth Amendment excessive use of force by police claim and a state law wrongful death claim.

**Stage of Proceeding:**

A jury trial was held.  The jury returned a verdict for all Defendants.

Plaintiffs now file this motion, seeking an order granting them a new trial, altering or amending the judgment, and/or granting them judgment notwithstanding the verdict.

## III.  Statement of Facts

1. On September 13, 2003, around 6:00 pm, Harry Smith, III (hereinafter "Smith") visited a local hospital, complaining of mental health related ailments.

2. Before receiving treatment for his diagnosed ailments, which included hallucinations, paranoia and agitation, Smith obtained a scalpel from the emergency room and began stabbing himself in the chest.  He then ran from the hospital with the scalpel.

3. At around 7:00 pm, while still daylight, Wilmington Police Department (hereinafter "WPD") police officer Johnny Whitehead was driving a marked WPD police car, a/k/a car 1180.  Whitehead testified he observed Smith attempting to enter a private car operated by a motorist.  Whitehead activated the emergency flashing lights on car 1180 and drove toward Smith.  Whitehead then exited car 1180, leaving the flashing

lights on, car door open, keys in the ignition, and car engine running.  Whitehead saw Smith had a scalpel.

4. As Whitehead backed up, Smith entered car 1180.  Whitehead ordered Smith out of the car, testifying he said something like "Get out, get out, I don't want to shoot you."  Whitehead then shot Smith in the leg.  Smith then drove off.  Another police officer called in saying "Shots fired".

5. Whitehead testified police officers are required to follow the rules articulated in the police manual.

6. WPD officer Donahue was alerted to this incident and began pursuit.  She testified Smith violated traffic laws, including running traffic signals and driving the wrong way down some city streets.

7. At least six other WPD cars (marked and unmarked) joined the pursuit and followed immediately behind Smith.  The pursuit lasted less than five minutes and ran about one mile.

8. Defendants Ciritella, Dempsey and Kurten testified they joined the caravan pursuit as the sixth, seventh and/or eighth WPD cars.  They then paralleled the chase on other city streets, and eventually parked their WPD cars at or near the intersection of 5th and Harrison Streets.

9. Over a dozen other WPD officers also were involved in the pursuit.  WPD Detective Fioravanti and others testified they parked their WPD vehicles in the 500 Block of Harrison Street - near the intersection of 6th and Harrison Streets, saying they arrived so quickly that they removed Smith from car 1180.  Fioravanti also testified that an

officer would know other WPD officers were responding to the call for assistance whether or not that officer heard their voices on the radio.

10. Ciritella used his unmarked WPD car to block the intersection of 5th and Harrison Streets. Kurten used his marked WPD car to block the intersection of 5th and Harrison Streets. This is strongly discouraged by WPD written policies, as noted in plaintiffs' Trial Exhibit #12.

11. At this time, flashing emergency lights and/or sirens were operating on car 1180, on WPD cars behind Smith, and on WPD cars in front of Smith.

12. At this time, according to the testimony of Betty and David Gwyn, and Rev. Bernard Thompson, there were many neighborhood residents on their porches and sidewalks in the 500 Block of Harrison Street, including elderly persons and children.

13. Ciritella testified he was in plain clothes, and with his gun drawn walked out into the street and demanded Smith exit car 1180. All the windows were up and Whitehead testified it was unlikely one could hear.

14. Ciritella testified Smith then attempted to run over him with the car, prompting him to fire several shots because he was in fear for his life. Ciritella testified he fired several more shots because Smith was driving around the roadblock Ciritella created with his car, he saw Dempsey, and thought Dempsey might be in danger. Ciritella testified Smith drove car 1180 across the curb between the stop sign and his unmarked WPD car, which was parked in the street. Ciritella testified he walked behind and on the side of car 1180 firing additional shots even though he could see Smith's hands on the steering wheel of car 1180. He fired a total of 13 shots, firing until his gun was empty. One of shell casings from Ciritella's bullets landed inside car 1180.

15. Ciritella testified that he did not see Dempsey or Kurten walking behind car 1180 firing at it. Ciritella testified he did not see any other police officers or citizens in the 500 Block of Harrison Street.

16. Ciritella testified his December 24, 1986 use of force pledge was still in effect on September 13, 2003. [A copy of this pledge is attached hereto marked as page 1 of the Appendix.]

17. When asked "Are you bound by the requirements of the use of deadly force policy as articulated in the police officers' manual?" Ciritella testified "No, ma'am." [Please see Trial Transcript, page 759, lines 13-15, attached in the Appendix as page 3.]

18. Dempsey testified he heard Whitehead say "Get out, get out." Dempsey testified Ciritella was on the sidewalk when Smith attempted to run over him with car 1180. Dempsey testified Smith drove car 1180 on the sidewalk between the stop sign and brick home located on the corner.

19. Dempsey testified he fired 13 shots, until his gun was empty because he thought Smith was going to run over Ciritella and because Smith did not stop car 1180. All of his shots were from the rear driver's side of car 1180. Dempsey testified he did not see Kurten firing his gun. Dempsey testified he saw Smith's hands on the steering wheel as he was firing. Dempsey testified he did not see any other police officers or citizens in the 500 Block of Harrison Street.

20. Kurten testified he fired his first couple of shots because he thought Smith was trying to run over Ciritella and would escape. Kurten testified Smith drove car 1180 on the sidewalk between the stop sign and brick home located on the corner. Kurten testified he did not see any other police officers or citizens in the 500 Block of Harrison

7

Street.  He fired some of his shots while 12 to 17 feet behind car 1180.    Kurten testified

he was never in any danger.

21. Marilyn Garcia, sitting on a porch within inches of Ciritella, was shot in the

leg by one of the defendants.

22. Defendants fired a total of 31 shots, killing Smith, injuring Garcia, and

leaving bullet holes in neighborhood residents' homes.

23. The coroner performing the autopsy testified all bullet wounds contributed to

Smith's death.  Smith was shot in the back of the head (close to the right ear), in the back

twice, in the arm, and in the wrist.

24. Police officers testified they wrote reports, as required by the rules in the

police manual.  Defendants did not write reports.

25. Car 1180 had a video/audio recording machine mounted in it.  However, the

tape produced by defendants did not include any video or audio of the incident giving rise

to this lawsuit.  A memo was issued on September 8, 2003 indicating these video/audio

recording machines were recently installed and WPD officers trained to use them.  Other

documents pertaining to these video/audio recording machines required officers to

immediately report any technical problems so that necessary repairs could be made.

[Please see plaintiffs' Trial Exhibit #13.]

26. The evidence admitted at trial shows that before defendants fired their guns

they knew only that Smith was driving a marked WPD car with emergency lights flashing

and shots had been fired.  Whether defendants knew Smith had a scalpel is unclear.

Defendants were not aware of the alleged attempted carjacking of a motorist.  Defendants

did not hear officer down or injured, or that Smith had injured anyone prior to or during

the pursuit.  Whitehead testified he received a ride from a private citizen, showing no WPD officer responded to check on Whitehead before engaging in the pursuit of car 1180.

27. On April 16, 2007, the Court provided the jury with written instructions on the law.  The instruction on plaintiffs' federal claims states, in part: "The reasonableness of the defendants' actions must be judged from the perspective of a reasonable officer on the scene.  The law permits the officer to use only that degree of force necessary to prevent the suspect from escaping or to make the arrest.  ...  the defendants' actual motivation is irrelevant.  If the force the defendants used was unreasonable, it does not matter whether the defendants had good motivations."

28. The instruction on plaintiffs' state law claims states, in part: "In determining whether the defendants acted wantonly or with willful and malicious intent, you may consider whether defendant violated Wilmington Police Department policies, whether other persons were put at risk by defendants' conduct and that, under Delaware law, a police officer has no duty to retreat while performing his or her duties."

29. On April 17, 2007, the jury's verdict was published by a local newspaper at 2:58 pm.  [Please see Appendix pages 4-6 attached hereto.]

30. On April 17, 2007, the jury's verdict was announced in open court at around 3:50 pm.

## SUMMARY OF ARGUMENT

Plaintiffs are entitled to an order granting them a new trial, altering or amending the judgment, and/or granting them judgment notwithstanding the jury verdict because: 1) the jury did not follow the law given to it by the Court because its verdict is not supported

by the evidence presented at trial; and 2) the jury verdict was published in a local newspaper prior to being announced in open court.

## ARGUMENT

**Jury Did Not Follow Law:**

Plaintiffs are entitled to the relief sought because the jury did not follow the law given to it by the Court. The jury instructions specifically state: "The reasonableness of the defendants' actions must be judged from the perspective of a reasonable officer on the scene."

To determine whether or not a "reasonable officer on the scene" would have fired as car 1180 was moving away from defendants, the jury must consider the rules articulated in the police manual. The portions of the rules provided in plaintiffs' Trial Exhibit #12 specifically state, at bates stamp #W003363: "An officer is authorized to un-holster his pistol whenever he has a reasonable suspicion to believe that he or anyone in his immediate vicinity is in imminent danger or physical harm." Reasonable belief is defined by the rules, at bates stamp #W003363, as: "The facts or circumstances the officer knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances." Ignorance of the facts or circumstances is no excuse.

Had defendants followed the rules and obtained the information needed from Whitehead, then they would have realized, if they had not already known, that Whitehead was the shooter and had not been injured by Smith. Defendants already knew many other officers were responding because they too were part of a multi-car caravan of WPD cars.

10

Defendants testified they did not see anyone in the immediate vicinity in imminent danger.  Other police officers testified they were at most ½ block away, near 6th and Harrison Streets, and parked in the 500 Block of Harrison Street within seconds of the shooting ending - arriving so quickly they were able to move Dempsey out of the way as soon as he unlocked the car door and they then took Smith out of car 1180.

At plaintiffs' Trial Exhibit #12, at bates stamp #W003364, the rules state: "Police officers shall adhere to the following restrictions when their weapon is exhibited ... Firearms shall not be discharged when it appears likely that an innocent person maybe injured."  Betty and David Gwyn and Rev. Thompson testified there were many innocent persons on their porches and sidewalks likely to be injured.  In fact, Garcia was shot by one of the defendants.

And then there is the pledge signed by Ciritella and Dempsey.  They stated they were trained in the use of force, including the requirements of Section 467 of Delaware's Title 11, which requires police officers to exhaust all available means before using deadly force.  Obviously, policing is teamwork, as this pursuit and shooting incident clearly show.  Many other police officers were readily available to assist in Smith's capture should he have avoided capture by these defendants.

The pledge also states: "I will not fire my weapon at the risk of endangering citizens, even when fired upon.  I further understand that it may even be necessary to allow the offender's escape rather than endanger any fellow officer or citizens."

Ciritella and Dempsey both testified they saw Smith's hands on the steering wheel.  They knew Smith was not firing at them and that he had no gun in his hands.  In fact, there was no gun found inside the car.  Car 1180 had a shotgun stored in the trunk,

where, according to Whitehead, police routinely place their shotguns in accordance with WPD written policies contained in the police manual.

Although the jury might have found defendants' motivations were good because they said they wanted to prevent Smith from escaping, the objective evidence admitted at trial clearly shows a reasonable officer on the scene would not violate WPD's use of force policies and the pledge. The objective evidence shows a reasonable officer on the scene would not shoot 31 bullets at a marked police squad car with emergency flashing lights on, moving away from them, in a crowded neighborhood or when no one in the immediate vicinity is in imminent danger, and dozens of other police officers are nearby both ready and able to assist in the arrest. A reasonable officer on the scene would follow his training. His training requires that he not shoot under these facts and circumstances.

The jury ignored the law given to it by the Court. It did not apply the law to the facts of this case. If it had, the jury would have found that defendants used excessive force, wrongfully causing Smith's death.

Ciritella testified that he was not bound to follow the rules articulated in the police manual. The jury agreed with him. But no man is above the law.

This court has the power to provide the relief requested, particularly where, as here, a miscarriage of justice would result if the jury's verdict were to stand. *See: Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993).

12

**Jury Verdict Published By Press Before Announced In Open Court:**

After the jury was discharged Plaintiffs learned the jury verdict had been published by a local news paper almost a full hour before it was announced in open court. [Please see Appendix pages 4-6 attached hereto.]

Publication of the jury verdict by the local press, prior to its announcement in open court, suggests a serious irregularity in the jury deliberation process, e.g., the secrecy and sanctity of jury deliberations might have been breached or the jury verdict is tainted by juror misconduct. This type of irregularity is prejudicial to Plaintiffs, and it undermines the public's confidence in our judicial system.

"Matters which come to the attention of the trial judge after trial has commenced which may affect impartiality on the part of a juror or jurors command careful consideration." *United States v. Rowell*, 512 F.2d 766, 768 (8th Cir. 1975). The proper procedure for a district court to follow when juror misconduct has been alleged is first, to determine whether the misconduct actually occurred and then, to determine whether the misconduct, if any, is prejudicial. *See United States v. Resko*, 3 F.3d 684, 688 (3d Cir. 1993).

Plaintiffs do not know why the jury's verdict was published by a local newspaper before it was announced in open court. Plaintiffs respectfully request the Court conduct an inquiry to determine whether juror misconduct occurred, and, should it find juror misconduct, grant Plaintiffs a new trial.

13

**Reservation Of All Other Issues Raised By Plaintiffs:**

Plaintiffs do not waive, and reserve for appeal, if same is filed, all other issues/objections raised before or during trial regarding evidence, jury instructions, and other matters of record.

## CONCLUSION

Plaintiffs respectfully request that this Honorable Court grant this motion. They request oral argument.

April 27, 2007.

/s/ Anne T. Sulton
Anne T. Sulton
Admitted: Pro Hac Vice


Sulton Law Offices
Post Office Box 2763
Olympia, WA  98507
Telephone: (609) 468-6029
E-Mail: annesulton@comcast.net

**LOCAL COUNSEL:**

Kester I.H. Crosse
Delaware State Bar I.D. #638
1214 King Street
Wilmington, DE  19801
Telephone: (302) 658-3488
E-Mail: kesterih@aol.com

14

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2007, I electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Attorney John Parkins   E-mail Parkins@rlf.com

/s/ Anne T. Sulton
Anne T. Sulton