**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CIVIL ACTION NO. 04-1254-GMS

HARRY SMITH, JR. and

ROSLYN WOODARD SMITH,

Individually and as Administrators of

The ESTATE OF HARRY SMITH, III,

Plaintiffs,

v.

JOHN CIRITELLA,

THOMAS DEMPSEY,

and

MATTHEW KURTEN,

Defendants.

---

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR A NEW TRIAL**

---

Plaintiffs Attorneys:

Anne T. Sulton
Post Office Box 2763
Olympia, WA 98507
Telephone: (360) 870-6000
E-Mail: annesulton@gmail.com

**Local Counsel:**
Kester I.H. Crosse [Bar I.D. 638]
1214 King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 652-3141
E-Mail: kesterih@aol.com

## TABLE OF CONTENTS


| | Page |
|---|---|
| I. Table of Citations | 3 |
| II. Statement of the Nature and Stage of Proceeding | 5 |
| III. Statement of Facts | 5 |
| IV. Summary of Argument | 6 |
| V. Argument | 6 |
| VI. Conclusion | 19 |

## I. TABLE OF CITATIONS

Page

**Cases:**


*Ansell v. Green Acres Contr. Co.*, 347 F.3d 515 (3d Cir. 2003) 15

*Brown v. McGraw-Edison Co.*, 736 F.2d 609 (10th Cir. 1984) 11

*Brown v. Syntex Labs, Inc.*, 755 F.2d 668 (8th Cir. 1985) 11

*Busch v. City of New York,* 224 F.R.D. 81 (E.D.N.Y. 2004) 11

*Chicago, R. I. & P. R. Co. v. Speth*, 404 F.2d 291 (8th Cir. 1968) 12

*Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008 (8th Cir. 2001) 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) 16

*Douglas* v. *Owens*, 50 F.3d 1226 (3d Cir. 1995) 18

*Emigh v. Consolidated Rail Corp.*, 710 F. Supp. 608 (W.D. Pa. 1989) 11

*Forrest v. Beloit Corp.*, 424 F.3d 344 (3d Cir. 2005) 14

*Habecker* v. *Clark Equip. Co.*, 942 F.2d 210 (3d Cir. 1991) 17

*Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985) 10

*Hurley v. Atlantic City Police Dep't*, 174 F.3d 95 (3d Cir.1999) 18

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) 16

*Kotteakos* v. *UnitedStates*, 328 U.S. 750 (1946) 17

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) 16

*Leichihman v. Pickwick Int'l*, 814 F.2d 1263 (8th Cir. 1987) 11

*Limbach Co. v. Sheet Metal Workers Int'l Ass'n*, 949 F.2d 1241(3d Cir. 1991) 18

*Malek* v. *Federal Ins. Co.*, 994 F.2d 49, 54 (3d Cir. 1993) 17

*Manus v. Am. Airlines, Inc.*, 314 F.3d 968 (8th Cir. 2003) 11

*McQueeny v. Wilmington TrustCo.*, 779 F.2d 916 (3d Cir. 1985) 17

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243 (1940) 10

*Nebel v. Avichal Enters., Inc.*, 704 F. Supp. 570 (D.N.J. 1989) 11

*Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191 (3d Cir. 1987) 18

*Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344 (3d Cir. 1999) 18

*Renda v. King*, 347 F.3d 550 (3d Cir. 2003) 17

*Rivera Castillo v. Autokirey, Inc.,* 379 F.3d 4 (1st Cir. 2004) 11

*Roebuck v. Drexel Univ.*, 852 F.2d 715 (3d Cir. 1988) 11

*Ruffin v. Fuller*, 125 F. Supp. 2d 105 (S.D.N.Y. 2000) 11

*Schneider v. Fried*, 320 F.3d 396 (3d Cir. 2003) 16

*Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998) 18

*Tevelson v. Life and Health Insurance Co. of America*, 643 F. Supp. 779 (E.D. Pa. 1986), *aff'd,* 817 F.2d 753 (3d Cir. 1987) 11

*United States v. Carr*, 5 F.3d 986 (6th Cir. 1993) 18

*United States v. Hakim*, 344 F.3d 324, 326 (3rd Cir. 2003) 12

*United States v. Landau*, 155 F.3d 93 (2d Cir. 1998) 11

*Wagenmann v. Adams*, 829 F.2d 196 (1st Cir. 1987) 15

**Statutes and Other Authorities:**

Federal Rules of Civil Procedure, Rule 50 11

Federal Rules of Civil Procedure, Rule 59 10

Federal Rules of Evidence 401 14

Federal Rules of Evidence 403 14, 15

Federal Rules of Evidence 702 16

## II. Statement of the Nature and Stage of Proceeding

**Nature:**

This civil action alleges a federal Fourth Amendment police excessive use of force claim and a state law wrongful death claim.

**Stage of Proceeding:**

A jury trial was held. The jury returned a verdict for all Defendants. Plaintiffs timely filed a motion for new trial, stating the jury did not follow the law given to it by the Court because its verdict is not supported by the evidence presented at trial.

Plaintiffs also alerted the Court to their concern about a report that the jury verdict was published in a local newspaper before it was announced in open court. It is Plaintiffs' understanding the Court is reviewing this matter. Plaintiffs' await the Court's update on this issue, and reserve all issues previously raised pertaining thereto.

## III. Statement of Facts

1. On April 16, 2007, the Court provided the jury with written instructions on the law.

2. The instruction on Plaintiffs' federal claim states, in part: "The reasonableness of the defendants' actions must be judged from the perspective of a reasonable officer on the scene. The law permits the officer to use only that degree of force necessary to prevent the suspect from escaping or to make the arrest. ... the defendants' actual motivation is irrelevant. If the force the defendants used was unreasonable, it does not matter whether the defendants had good motivations."

3. Among the documents presented at trial pertaining to when Defendants reasonably may use deadly force are:

a. **Wilmington Police Department (WPD) Manual**

Plaintiffs' Trial Exhibit #12, at bates stamp #W003363: "An officer is authorized to unholster his pistol whenever he has a reasonable suspicion to believe that he or anyone in his immediate vicinity is in imminent danger or physical harm." Reasonable belief is defined by the rules, at bates stamp #W003363, as: "The facts or circumstances the officer knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances."

Plaintiffs' Trial Exhibit #12, at bates stamp #W003364: "Police officers shall adhere to the following restrictions when their weapon is exhibited ... Firearms shall not be discharged when it appears likely that an innocent person maybe injured."

b. **Pledge Signed by Defendants Ciritella and Dempsey**

Plaintiffs' Trial Exhibits #9 and #11: The pledge signed by Ciritella and Dempsey states they were trained in the use of force, including the requirements of Section 467 of Delaware's Title 11, which requires police officers to exhaust all available means before using deadly force. The pledge also states: "I will not fire my weapon at the risk of endangering citizens, even when fired upon. I further understand that it may even be necessary to allow the offender's escape rather than endanger any fellow officer or citizens."

4. Among the testimony offered at trial pertaining to when WPD police officers reasonably may use deadly force are:

a. Whitehead [said cannot shoot when citizens might get hurt; Trial Transcript, page 174, lines 8-11];

b. Defendant Ciritella [said his pledge in effect on day of incident; Trial Transcript, page 783, lines 15-25; page 784, lines 1-14]; and

c. Defendant Dempsey [said there are several sets of use of force rules they must follow; Trial Transcript page 498, lines 14-25; page 499, lines 1-25].

5. Among the testimony offered at trial pertaining to Defendants' obligation to adhere to use of deadly force rules as articulated in the WPD manual and/or pledge are:

a. Whitehead [Trial Transcript, page 178, lines 18-20; page 190, lines 8-16];

b. Defendant Dempsey [Trial Transcript page 498, lines 14-25; page 499, lines 1-25].

6. Among the information Defendants had, or should have had, before firing any shots was:

a. Defendant Ciritella [said had information about pursuit at Trial Transcript, page 719, line 16; shots fired at Trial Transcript, page 719, line 18; police car taken at Trial Transcript, page 720, line 5];

b. Defendant Dempsey [said heard Whitehead say "get out, get out" at Trial Transcript, page 474, line 25 and page 475, lines 1-13; had not heard Smith hurt anyone at Trial Transcript, page 483, lines 11-13; knew Smith stole police car at Trial Transcript, page 484, lines 9-14; no one in danger at Trial Transcript, page 478, lines 18-25];

c. Defendant Kurten [said he was not in any danger at Trial Transcript, page 261, lines 1-3];

d. Rev. Thompson [said many people on 500 block of Harrison Street at time of shooting at Trial Transcript, page 901, lines 9-24];

e. David Gwyn [said many people in 500 block of Harrison Street at time of shooting at Trial Transcript, page 627, lines 13-22]; and

f. Betty Gwyn [said many people in 500 block of Harrison Street at time of shooting at Trial Transcript, page 613, lines 16-23].

7. Among the information Defendants had while shooting was:

a. Defendant Ciritella [Smith drove car in his direction at Trial Transcript, page 721, lines 18-19; Smith hit Jeep after he passed and was moving away from Ciritella at Trial Transcript, page 724, lines 15-17; he did not see anyone in immediate vicinity in imminent danger while shooting on Harrison Street at Trial Transcript, page 746, lines 18-20; saw Smith's hands on steering wheel at Trial Transcript, page 768, lines 6-9; Smith no threat to him after Smith passed him at Trial Transcript, page 782, lines 19-24];

b. Defendant Dempsey [said he was not in danger at Trial Transcript, page 467, lines 22-24; saw no one else in danger at Trial Transcript, page 467, line 25 and page 468, lines 1-2 and page 478, lines 18-25 and page 552, lines 5-8; saw Smith had no gun in his hands at Trial Transcript, page 471, lines 22-24];

c. Defendant Kurten [said he saw no one in danger at Trial Transcript, page 267, lines 3-21 and page 258, lines 24-25 and page 259, lines 1-2; he was not in danger at Trial Transcript, page 266, lines 8-13]; and

d. Rev. Thompson [said Defendants still shooting after car stopped at Trial Transcript, page 91, lines 13-16].

8. Among the WPD rules Defendants violated as they used deadly force, showing their use of deadly force was not objectively reasonable as "judged from perspective of a reasonable officer on the scene":

a. shooting while citizens might get injured – Marilyn Garcia got shot [Trial Transcript, page 756, lines 12-25; page 757, lines 1-8];

b. failed to obtain necessary information from Whitehead [Trial Transcript, page 156, lines 18-25; page 157, lines 1-25; page 158, lines 1-10; trained to get necessary information at Trial Transcript, page 174, lines 21-25];

c. shooting when no one in immediate vicinity in imminent danger [Trial Transcript, page 478, lines 18-25];

d. not proper to use police car as road block [Trial Transcript, page 166, lines 3-15];

e. trained to stop chase even when dangerous and driver operating car without regard for human life [Trial Transcript, page 156, lines 1-25; page 162, lines 12-16].

9. Among the testimony admitted over Plaintiffs' objections are:

a. testimony about alleged attempted theft of Mercedes car [Pre-trial Telephone Conference 4/5/07 at pages 3 and 4; Trial Transcript of Stevenson testimony at pages 700-711]; and

b. testimony about position of Smith's body when bullet entered his head [Pre-trial Telephone Conference 4/5/07 at page 13, lines 23-25; page 14, lines 11-25; page 15, lines 1-25; page 17, lines 2-6; page 19, lines 4-6].

10. Among the jury instructions excluded over Plaintiffs' objections are:

a. jury instruction on spoliation re videotape and no written statements by Defendants [Trial Transcript, page 156, lines 7-14; page 172, lines 7-8; page 862, lines 14-22; page 863, lines 1-18; page 865, lines 9-11; page 867, lines 2-10; page 876, lines 6-8]; and

b. jury instruction on state-created danger re Whitehead creating situation where Harry Smith, III entered and drove off in police car #1180 and Defendant Ciritella stepping into 5th Street and in front of car #1180 [Trial Transcript, page 890, lines 5-13; page 892, lines 4-22].

## IV. Summary of Argument

The jury misunderstood or ignored the law given to it by the Court. It did not apply the law to the facts of this case. The erroneous admission of evidence and exclusion of requested jury instructions contributed to the jury's failure to follow the law.

## V. Argument

**Court has authority to provide requested relief:**

A motion for a new trial may be based upon a claim that the verdict is against the weight of the evidence, or that, for other reasons, the trial was not fair to the party moving, and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *Children's Broad. Corp. v. Walt Disney Co*., 245 F.3d 1008, 1017 (8th Cir. 2001). Rule 59 allows the Court to reevaluate the bases for earlier decisions, and empowers the court to alter or amend a verdict which represents a manifest error of fact or law. *See Harsco Corp. v.*

*Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *Tevelson v. Life and Health Insurance Co. of America*, 643 F. Supp. 779, 782 (E.D. Pa. 1986), *aff'd,* 817 F.2d 753 (3d Cir. 1987).

Because granting a motion for a new trial acts to overturn a jury verdict, the Court must find "that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Nebel v. Avichal Enters., Inc.*, 704 F. Supp. 570, 574 (D.N.J. 1989); *Emigh v. Consolidated Rail Corp.*, 710 F. Supp. 608, 609 (W.D. Pa. 1989); *Rivera Castillo v. Autokirey, Inc.,* 379 F.3d 4, 13 (1st Cir. 2004); *Ruffin v. Fuller*, 125 F. Supp. 2d 105 (S.D.N.Y. 2000). A new trial may be granted even where a Rule 50 motion (a/k/a judgment as a matter of law or judgment notwithstanding the verdict) is inappropriate. Federal Rule of Civil Procedure 50; See *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988); *Brown v. McGraw-Edison Co.*, 736 F.2d 609 (10th Cir. 1984).

A district court should grant a new trial motion when it is convinced the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice. *Manus v. Am. Airlines, Inc.*, 314 F.3d 968, 973 (8th Cir. 2003); *Busch v. City of New York,* 224 F.R.D. 81 (E.D.N.Y. 2004). Although a jury's determination is entitled to deference, this does not override the trial judge's duty to make certain there is no miscarriage of justice. A trial judge is free to consider the credibility of witnesses, weigh the evidence, and need not view the evidence in the light most favorable to the verdict winner. Unlike a Rule 50 motion, a motion for a new trial may be granted when there is substantial evidence to support the jury's verdict. *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998); *Ruffin v. Fuller*, 125 F. Supp. 2d 105 (S.D.N.Y. 2000); *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1267 (8th Cir. 1987); *see also Brown v. Syntex Labs, Inc.*, 755 F.2d 668 (8th Cir. 1985).

**Jury did not follow law:**

There is a presumption the jury follows the instructions provided by the district court. *United States v. Hakim*, 344 F.3d 324, 326 (3rd Cir. 2003). However, a new trial is appropriate when it is clear from the instructions the jury's verdict misunderstood or disregarded the court's direction. *Chicago, R. I. & P. R. Co. v. Speth*, 404 F.2d 291, 295 n.4 (8th Cir. 1968).

The Court clearly told the jury the "reasonableness of the defendants' actions must be judged from the perspective of a reasonable officer on the scene. … the defendants' actual motivation is irrelevant."

This is not a case that turns solely on an assessment of the credibility of witnesses. There were glaring inconsistencies in Defendants' testimony, and that of other witnesses. Apparently, the jury resolved the inconsistencies and found Defendants credible. Apparently, the jury also found Defendants had "good intentions" when, without obtaining necessary information about the suspect or nature of the threat, they fired 31 bullets, in a densely populated neighborhood, at an unarmed suspect, slowly moving away from them (Trial Transcript, page 266, lines 5-7), in a marked police patrol car, with emergency lights flashing (Trial Transcript, page 259, lines 13-15), in broad daylight (Trial Transcript, page 228, lines 2-7), when no one in the immediate vicinity was in imminent danger (Trial Transcript, page 552, lines 5-8), and over a dozen other police officers were nearby both ready and able to assist in the arrest (Trial Transcript, page 227, lines 15-24; page 232, lines 22-25; page 233, line 1). However, even if the jury believed Defendants' testimony and concluded Defendants had good intentions, their inquiry cannot stop there. The jury was instructed to determine whether Defendants' conduct was objectively reasonable.

The jury was directed to judge Defendants' conduct "from the perspective of a reasonable officer on the scene." To determine how a "reasonable officer on the scene" would have acted, the jury was required to dispassionately consider all of the evidence, including the testimony and documents showing Defendants were required to follow the written rules in place that tell a police officer when he may use deadly force.

When looking at the written rules, Defendants were not allowed to shoot under the facts and circumstances of this case. The rules prohibit shooting when no one in the immediate vicinity is in imminent danger – as the Defendants so testified. The rules prohibit shooting when innocent bystanders are likely to be shot – as neighborhood residents so testified.

Therefore, despite their testimony that they had good intentions, Defendants' use of deadly force was excessive. A reasonable officer on the scene would not have used deadly force because so doing would have violated the written rules and been contrary to his training, as reflected in the police manual and the pledge.

Although the Court carefully instructed the jury about the law that it must use to decide the case, the jury either did not understand the instructions or chose to ignore them. Rather than complying with the Court's directive to follow the applicable law, the jury returned a verdict without an evidentiary basis. The jury's verdict lacks an evidentiary basis because the evidence showed: 1) a reasonable officer on the scene would have followed the rules; and 2) Defendants did not follow the rules.

**Court admitted irrelevant evidence:**

The jury verdict also indicates it was misled or confused by the admission of completely irrelevant and highly prejudicial emotional testimony pertaining to the alleged attempted violent theft of a Mercedes, and unreliable expert testimony based upon a flawed methodology.

Irrelevant evidence is not admissible. Some relevant evidence is admissible. When determining whether evidence will be admitted, a court first considers whether the evidence is relevant, i.e., has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. The court then considers whether the admission of this relevant evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *Forrest v. Beloit Corp.*, 424 F.3d 344, 355 (3d Cir. 2005).

**Alleged Attempted Theft of Mercedes:**

Over Plaintiffs' objections, the Court admitted evidence pertaining to an alleged attempted violent theft of a Mercedes from a man operating the vehicle. Mr. Stevenson, the alleged victim of this alleged violent crime, provided testimony about the incident, becoming so emotional a brief break was required to let him stop crying and calm himself. [Trial Transcript, page 705, line 9.] Mr. Stevenson testified Mr. Smith threatened him with a weapon [Trial Transcript, page 702, lines 6-21; page 703, lines 21-22], and threatened WPD officer Whitehead with a weapon [Trial Transcript, page 706, lines 22-23], making it appear Mr. Smith was a violent person toward both him and armed police officers. Mr. Stevenson's recollection of the events were completely inconsistent with the testimony of WPD officer Whitehead [Trial Transcript, page 149, lines 1-2] and the "Downtown Visions" videotape [Plaintiffs' Trial Exhibit #24] showing Mr. Smith calmly approaching WPD officer Whitehead and driving off in the patrol car.

Mr. Stevenson's testimony, and other information about this alleged car theft, had absolutely no probative value. The Defendants were not aware of this incident or Mr.

Stevenson's allegations before or during the time they fired 31 shots. Therefore, it could not have been a factor Defendants considered before or during the shooting incident. The probative value of evidence about an alleged attempted violent theft of a Mercedes and Mr. Stevenson's testimony was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

It was error to admit this completely irrelevant and highly prejudicial evidence. The only effect this type of evidence could have was to cast Mr. Smith as a wildly violent man, requiring the use of deadly force to subdue. This is exactly the type of "unfair prejudice" that can tip the scales because it clouds "impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found." *Ansell v. Green Acres Contr. Co.*, 347 F.3d 515, 525 (3d Cir. 2003) (quoting *Wagenmann v. Adams*, 829 F.2d 196, 217 (1st Cir. 1987)). This evidence diverted the jury's attention away from the question of "objectively reasonable" police conduct on 5th and Harrison Streets to questionable allegations of Mr. Smith's violent conduct or bad character toward Mr. Stevenson on Washington Street, allegations of which these Defendants were unaware.

Even the Court considered this irrelevant evidence in denying Plaintiffs' request to use a proposed model jury instruction posted on the Third Circuit's website. [Trial Transcript, page 893, lines 20-25; page 894, line 1.] This alleged car theft incident was not even known to Defendants, yet it infected every aspect of this case.

**Dr. Nordby:**

Mr. Smith's body position at the time he was shot in the head is important. Over Plaintiffs' objection, Defendants' expert Dr. Nordby was allowed to opine about Mr. Smith's body position when the bullet entered his head. However, the methodology he used was flawed.

Dr. Nordby said he used the bullet trajectory among the factors considered. However, Dr. Nordby admitted he could not determine or calculate the bullet's trajectory without the window glass. The window glass was blown out by Defendant Ciritella's gunfire.

Dr. Nordby's opinion on this issue should not have been admitted. Rule 702 requires the expert possessed the specialized expertise necessary for qualification, employed a methodology necessary for reliability, and gave relevant testimony that assisted the jury. This has been referred to as the "trilogy of restrictions on expert testimony: qualification, reliability and fit." *See Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-743 (3d Cir. 1994).

Dr. Nordby could not provide a reliable opinion about the bullet's trajectory because the glass was gone. Therefore, it was error to admit his testimony on Mr. Smith's body position at the time the bullet hit his head.

**Evidentiary errors misled or confused jury re law to follow:**

This is not a case in which the challenged evidentiary rulings had little practical effect. At every turn, Defense counsel mentioned this information and Plaintiffs' counsel was forced to address it. These evidentiary errors were tremendously prejudicial because they skewed the entire trial by giving the jury an inaccurate understanding of the circumstances under which Mr. Smith was killed and the matters upon which the jury was to focus, i.e., were Defendants' actions on 5th and Harrison streets objectively reasonable. This evidence improperly and irreparably tainted the entire case.

An evidentiary error necessitates a new trial, unless this Court is convinced and can say with fair assurance that the error did not prejudice Plaintiffs' case or the jury's verdict was not

substantially swayed by the error. *Habecker* v. *Clark Equip. Co.*, 942 F.2d 210, 216 (3d Cir. 1991); *Malek* v. *Federal Ins. Co.*, 994 F.2d 49, 54 (3d Cir. 1993) (quoting *Kotteakos* v. *United States*, 328 U.S. 750, 765 (1946)); *Renda v. King*, 347 F.3d 550, 556 (3d Cir. 2003) (citing *McQueeny v. Wilmington TrustCo.*, 779 F.2d 916, 924 (3d Cir. 1985)).

With all due respect, Plaintiffs respectfully state they do not believe this honorable Court can say this, in part, because this was a close case, hotly-contested, emotional, with dozens of witnesses testifying and hundreds of pages of exhibits, generating substantial public interest resulting in both police officers and neighborhood residents filling the courtroom every day of the trial. There is a high probability that admission of this type of evidence in error tipped the scale. Plaintiffs are entitled to a new trial.

**Court excluded requested jury instructions:**

Exacerbating the problems caused by the introduction of inadmissible highly prejudicial irrelevant testimony about an alleged violent attempted car theft and unreliable expert opinion about Mr. Smith's body position when he was shot in the head, the Court denied Plaintiffs' requests for jury instructions on spoliation and state-created danger. Both of these instructions were important to Plaintiffs' theory of the case.

Plaintiffs requested a spoliation instruction to address the issues raised by the inexplicable absence of the videotaping of the incident via car 1180's videotape recorder, and the fact Defendants did not write required reports on this incident.

Plaintiffs requested a state-created danger instruction to address the issues raised by WPD officer Whitehead's error in positioning himself so that Mr. Smith could gain control of car 1180 on Washington Street, and Defendant Ciritella placing himself in danger when he stepped into 5th Street in front of car 1180.

Plaintiffs are entitled to a jury instruction that accurately and fairly sets forth the current status of the law. When a court refuses a proffered instruction, it is reversible if the instruction is a correct statement of the law, not otherwise covered in the court's charge, and if the failure to give the instruction substantially impairs the proponent's theory of the case. *Douglas* v. *Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995); *United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993). If a jury instruction is improperly not given and the aggrieved party properly preserved the objection, that party is entitled to a remand for a new trial unless the failure to give the instruction was harmless. *See Petree v. Victor Fluid Power, Inc*., 831 F.2d 1191, 1197 (3d Cir. 1987); *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 357 (3d Cir. 1999) (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 121 (3d Cir.1999)). Among the considerations is whether the entire jury charge properly apprised the jury of the issues and the applicable law. *See: Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 275 (3d Cir. 1998) (quoting *Limbach Co. v. Sheet Metal Workers Int'l Ass'n*, 949 F.2d 1241, 1259 n.15 (3d Cir. 1991)).

The spoliation and state-created danger issues are an important part of this case. Plaintiffs needed these jury instructions to address central factual issues in this case. A jury instruction addressing the absence of crucially important pieces of evidence (videotape from car 1180 and required written reports), that were under the control of defendants or those working on their behalf and that should have been available, was important to address issues raised by the testimony of Defendants and the witnesses they called. A jury instruction also was needed to address evidence about the actions or omissions of Defendant Ciritella, in placing himself in danger and then using this as an excuse for using deadly force, even after the threat passed him.

**Reservation Of All Other Issues Raised By Plaintiffs**

Plaintiffs do not waive, and reserve for appeal, if same is filed, all other issues/objections raised before or during trial regarding evidence, jury instructions, and other matters of record.

**CONCLUSION**

Plaintiffs respectfully request that this Honorable Court grant this motion for a new trial. The Court should not let this verdict stand because it will result in a miscarriage of justice.

Respectfully submitted this 8th day of June 2007.

/s/ Anne T. Sulton
Anne T. Sulton, Esq.

Admitted: Pro Hac Vice
Sulton Law Offices
Post Office Box 2763
Olympia, WA 98507
Telephone: (360) 870-6000
E-Mail: annesulton@gmail.com

**LOCAL COUNSEL:**

Kester I.H. Crosse, Esq.
Delaware State Bar I.D. #638
1214 King Street
Wilmington, DE 19801
Telephone: (302) 658-3488
E-Mail: kesterih@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2007, I electronically filed with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Attorney John Parkins E-mail Parkins@rlf.com

/s/ Anne T. Sulton
Anne T. Sulton