IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF HARRY SMITH, III, HARRY SMITH, JR., AND ROSLYN WOODARD SMITH, )<br>)<br>)<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>JOHN CIRITELLA, THOMAS DEMPSEY, and MATTHEW KURTEN, )<br>)<br>)<br>Defendants. )<br>) | C.A. No. 04-1254 GMS |

## **MEMORANDUM**

### I.   INTRODUCTION

On September 13, 2004, Harry Smith, Jr. and Roslyn Woodard Smith (collectively, the "plaintiffs") filed this civil rights and wrongful death action on their own behalf, and as representatives of Harry Smith, III ("Smith") against the City of Wilmington[1] and several of its police officers, including John Ciritella ("Ciritella"), Thomas Dempsey ("Dempsey"), and Matthew Kurten ("Kurten") (collectively, the "defendants"). The plaintiffs allege that the defendants violated Smith's civil rights on September 13, 2003, by using excessive force when they fired thirty-one shots into the car that Smith was driving, fatally wounding him. Presently before the court is the plaintiffs' motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a). For the reasons that follow, the court will deny the motion in all respects.

---

[1] The court dismissed the plaintiffs' claims against the City of Wilmington in its March 22, 2007 Memorandum and Order (D.I. 182, at 23-27) addressing the defendants' motion for summary judgment.

## II.  BACKGROUND

Much of the factual and procedural background of this matter has been recited extensively in the court's prior Memorandum and Order regarding the defendants' summary judgment motion. As such, and because the court writes primarily for the parties, the court will address only the relevant facts herein.

Prior to trial, the plaintiffs raised several issues with the court regarding the admissibility of evidence and jury instructions. Specifically, the plaintiffs argued that the court should exclude certain evidence about Smith's attempted theft of a Mercedes that was not known to the officers at the time they fired their firearms at Mr. Smith. The plaintiffs also argued that the court should exclude certain testimony by the defendants' expert, Dr. Jon D. Nordby, Ph.D. ("Dr. Nordby"), as unreliable. In addition, the plaintiffs sought jury instructions on spoliation and the state-created danger doctrine. The court denied all of the plaintiffs' motions. A jury trial commenced on April 9, 2007. On April 17, 2007, the jury returned a verdict in favor of the defendants. The plaintiffs filed the present motion on April 27, 2007.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(a) provides that:

> [a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . .

It is within the discretion of the district court whether or not to grant a new trial. *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995). Although Rule 59 does not detail the grounds on which a new trial may be granted, the following grounds have been recognized the by

the Third Circuit: "the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.*, 802 f. Supp. 1180, 1186 (D.N.J. 1992), *aff'd* 4 F.3d 1153 (3d Cir. 1993). When reviewing a motion for a new trial, a court must view the evidence in the light most favorable to the party for whom the verdict was returned. *Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 656 (3d Cir. 1989).

## IV.   DISCUSSION

In support of their motion for a new trial, the plaintiffs argue that jury misunderstood the law given to it by the court, and did not apply the law to the facts of the case. The plaintiffs further argue that the court erred in admitting evidence pertaining to Smith's attempted theft of a Mercedes and Dr. Nordby's testimony regarding Smith's body position when the fatal bullet entered his head. Finally, the plaintiffs argue that the court erred in rejecting their proposed jury instructions regarding spoliation and state-created danger. The court will address each of the plaintiffs' arguments in turn.

### A.   Whether the Jury Misunderstood, Ignored, or Misapplied the Law

The plaintiffs first argue that the jury misunderstood or misapplied the court's jury instruction on excessive force. Specifically, the plaintiffs contend that the jury misunderstood, ignored, or misapplied the court's instruction to judge the defendants' conduct "from the perspective of a reasonable officer on the scene." (D.I. 232, at 13.) The plaintiffs argue, without any citation to case authority, that because the written rules and regulations of the Wilmington Police Department (the "WPD") prohibited the defendants from shooting their firearms under the facts and circumstances of this case and because the defendants did shoot their firearms, their use of force was essentially per se excessive. Finally, the plaintiffs contend that the jury's verdict lacks an

evidentiary basis, because the evidence showed: 1) a reasonable officer on the scene would have followed the rules; and 2) the defendants did not follow the rules. The court finds the plaintiffs' arguments without merit.

When instructing the jury regarding the plaintiffs' excessive force claim, the court stated, in pertinent part:

> The plaintiffs claim, and must therefore, prove that either John Ciritella, Thomas Dempsey, or Matthew Kurten (or any combination of them) deprived Harry Smith, III of the rights guaranteed to him by the Fourth Amendment of the United States Constitution. . . . The Fourth Amendment protects persons from being subjected to excessive force while being arrested or stopped by police. In other words, a law enforcement officer may only use the amount of force necessary under the circumstances to make the arrest. . . .
>
> Now, in this case, the plaintiffs claim that the defendants violated Smith's Fourth amendment rights by using . . . deadly force against him. A law enforcement officer may use deadly force to prevent escape by a fleeing suspect when the officer has probable cause to believe that the fleeing suspect poses a threat of serious physical harm, either to the officer or to others. . . .
>
> In determining whether the defendants' acts constituted excessive force, you must ask whether the amount of force that the defendants used was the amount which a reasonable officer would have used in making the arrest or preventing the escape under similar circumstances. . . .
>
> The reasonableness of the defendants' acts must be judged from the perspective of a reasonable officer on the scene. The law permits the officer to use only that degree of force necessary to prevent the suspect from escaping or to make the arrest. In determining whether the defendants' acts were reasonable, you must consider that a police officer is often forced to make split-second judgments under circumstances that are sometimes tense, uncertain, and rapidly evolving. . . .
>
> The plaintiffs must prove that the defendants intended to commit the acts in question; but apart from that requirement, the defendant's actual motivation is irrelevant.

(D.I. 210, at 12-15.) The court did not instruct the jury that violating WPD rules and regulations was per se excessive, as the plaintiffs now argue. Nor could it, because it is well-settled law that

4

"violations of police procedure are not necessarily constitutional violations." *Grazier v. City of Philadelphia*, 328 F.3d 120, 127 (3d Cir. 2003) (citing *Davis v. Scherer*, 468 U.S. 183, 193-95 (1984)).

In *Grazier*, the plaintiffs filed civil rights actions against the City of Philadelphia and several officers, contending that the officers used excessive force when shooting through the windows of a car in which they were riding. *Id.* at 122-23. After the incident occurred, the Philadelphia Police Department determined that at least one of the officer's actions violated the directives governing the use of deadly force and vehicle investigations. *Id.* at 123. The case was tried to a jury, who returned a verdict for the officers. *Id.* at 122. The plaintiffs filed a motion for a new trial, arguing that the court erred when it instructed the jury that the officer's suspension for violating police procedure "does not necessarily prove that he acted unreasonably under the Fourth Amendment." *Id.* at 122, 126. The Third Circuit concluded that the court's instruction was not an abuse of discretion, finding that the instruction comported with established Supreme Court precedent regarding violations of police procedures. *Id.* at 127; *see Davis*, 468 U.S. 193-96 ("Nor is it always fair, or sound policy, to demand official compliance with statute and regulation on pain of money damages. Such officials as police officers . . . routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them."); *␣Whren v. United States*, 517 U.S. 806, 815 (1996); *Thompson v. City of Chicago*, 472 F.3d 444, 454-455 (7th Cir. 2006).

While the *Grazier* court considered a jury instruction relating to violations of police policy, the question presented in that case is essentially the same question that the plaintiffs raise here: whether a violation of police policy is necessarily a constitutional violation. Both the Supreme

Court and the Third Circuit have determined that the answer to the question is "no."[2] Thus, the jury did not misunderstand, misapply, or ignore the law, and the court will deny the plaintiffs' motion for a new trial on this ground.

### B.     The Court's Admission of William Stevenson's Testimony

The plaintiffs next contend that the court erred when it admitted evidence pertaining to Smith's alleged attempted theft of a Mercedes owned by William Stevenson ("Stevenson"). The plaintiffs argue that Stevenson's testimony and other information about the alleged car theft had no probative value, because the defendants were not aware of the incident before or during the time they fired their firearms at Smith. In the alternative, the plaintiffs argue that any probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. According to the plaintiffs, the only effect the evidence regarding the alleged car theft was to cast Smith as a wildly violent man, requiring the use of deadly force.

The plaintiffs' argument is unavailing. The issue regarding Stevenson's testimony arose first during the pretrial conference in this matter. The plaintiffs sought to preclude Stevenson's testimony by filing a motion in limine. The plaintiffs argued that they would be unfairly prejudiced by Stevenson's testimony because counsel would "have to try inside [the Civil Rights] trial whether or not [Smith] was involved in a carjacking of which the defendant officers were not aware." (D.I. 236,

---

[2] Fourth Amendment precedent gives police officers considerable leeway when making "split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Prescribing a per se rule to violations of police procedure not only ignores, but would completely undermine an officer's ability to make split-second judgments. Instead, that officer would have to stop and determine whether the action he was about to take would violate any one of the many procedures or rules he had learned over the course of his tenure. It is for this reason that the standard used to judge an officer's decision is one of "reasonableness."

at B-002.) Counsel for the defendants contended that the jury should hear from Stevenson, because his testimony would provide context to the surrounding events. (Id.) Counsel for the plaintiffs responded by stating:

> I do not oppose the jury receiving information that Mr. Smith was at a Mercedes and that attracted the attention of Officer Whitehead. But I strenuously oppose the jury being told that Mr. Smith tried to carjack this Mercedes, that the police officers responded, that this whole thing is a . . . violent incident. It changes the context.

(Id.) The court agreed with the plaintiffs regarding the characterization of the incident surrounding the Mercedes. As a result, the defendants agreed not to characterize the event as a carjacking, and to use the evidence only to provide the jury with context.

During the trial of this matter, however, the plaintiffs' counsel disregarded the protections the court had put into place and told the jury the following during her opening statement:

> Harry Smith, III then ran up to a gentleman who was in a Mercedes, a gray Mercedes, and was bamming on the car door and pulling on the car door as though he was trying to enter that car . . . The gentleman in the gray Mercedes thought he was being carjacked. He was scared and he should have been. . . . And despite the fact that Mr. Stevenson was afraid, he simply drove forward to try to move away from the danger or the threat that he perceived.

(Id. at B005-B006.) The defendants requested a sidebar at the conclusion of the plaintiffs' opening statement to raise the issue with the court. (Id. at B-008.) The court agreed with the defendants that the plaintiffs had opened the door by referencing a "carjacking" in the opening statement. (Id.) After some discussion, counsel for the plaintiffs stated: "I did that intentionally, yes. I don't have a problem with them talking about it now." (Id.) The plaintiffs cannot now argue, as they do in their motion for a new trial, that Stevenson's testimony was unfairly prejudicial, because their counsel waived the right to object to any evidence adduced at trial regarding the alleged attempt to take the Mercedes when she discussed it in her opening statement. Given the foregoing, the court will deny

7

the plaintiffs' motion for a new trial on this ground.

      **C.     The Court's Admission of Dr. Nordby's Testimony**

The plaintiffs argue that the court erred when it permitted the defendants' expert, Dr. Nordby, to opine regarding Smith's body position when the bullet entered his head. According to the plaintiffs, the methodology Dr. Nordby used to demonstrate Smith's body position was flawed. The court disagrees. Dr. Nordby's testimony was the subject of a motion in limine filed by the plaintiff, as well as a pretrial teleconference between the parties. At the time of the teleconference, the plaintiffs argued, as they do now, that Dr. Nordby had no factual basis for his conclusion that Smith was sitting upright when the fatal bullet hit him. (D.I. 231, at 16-18.) The court disagreed and questioned whether the plaintiffs' cross-examination of Dr. Nordby would get at the issue. (Id. at 19.) The plaintiffs concluded that "the appropriate way to deal with this expert [Dr. Nordby] is with the cross that I have done." (Id.) Now, the plaintiffs contend that the court erred in letting the jury hear Dr. Nordby's testimony.

Putting aside the fact that the plaintiffs waived their objection to Dr. Nordby's testimony when they agreed that cross-examination effectively addressed the issue, the plaintiffs' brief mischaracterizes his testimony. The plaintiffs contend that Dr. Nordby testified that he used the bullet trajectory among the factors he considered in determining Smith's body position when the bullet entered his head, but that he later admitted that he could not determine or calculate the bullet's trajectory without the window glass, which was blown out of the vehicle by Ciritella's gunfire. Dr. Nordby, however, testified that Smith was sitting upright based on the trajectories and the wound path described by the pathologist. (D.I. 236, at B-103.) When asked specifically whether he had an opinion regarding the trajectory of the bullet that struck Smith in the head, Dr. Nordby testified:

8

> Well, the bullet came in from the side. One has to be cautious in – in putting together shooting scenarios in this sense because heads obviously move, but when we put together the information we have from the squad car itself and damage to the vehicle, the bloodstain spatter evidence which is present inside the vehicle, the medical examiner's account of the direction of the bullet impact through the decedent's head, we can come up with a trajectory, as you put it, that the bullet came from the right side or the passenger side of the car, and that the decedent was upright in the – in the vehicle when this bullet struck his head.

(Id.) Thus, contrary to the plaintiffs' assertion, Dr. Nordby testified that he considered a number of factors in determining the trajectory of the bullet that struck Smith in the head. Further, the plaintiffs have pointed to nothing, other than their own unsupported opinion, to demonstrate to the court that Dr. Nordby's testing, which employed the above-discussed methods to determine that Smith was sitting upright when the bullet struck him in the head, is unreliable. As such, the court will deny their motion for a new trial on this ground.

### D.     The Court's Denial of the Plaintiff's Request to Instruct the Jury on State-Created Danger and Spoliation

The plaintiffs argue that the court committed error when it denied their requests for jury instructions on the state-created danger doctrine and spoliation. The court is not persuaded that either jury instruction was appropriate in this case.[3] The court first examines the plaintiffs' request for an instruction on state-created danger, and then turns to their request for an instruction on spoliation.

---

[3] It is noteworthy that, although the plaintiffs argue that jury instructions on the state-created danger doctrine and spoliation were appropriate, their brief does not even set forth the elements required to make a showing on either of those claims, much less address how the evidence adduced at trial satisfies the elements of those claims.

      1.      State-Created Danger

The state-created danger doctrine arises under the Fourteenth Amendment. *See Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005). In order to prevail on a state-created danger claim, a plaintiff must allege and prove:

> (1) the harm ultimately caused was foreseeable and direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (citations omitted), *cert. denied*, 127 S. Ct. 1483 (2007). In the present case, neither the complaint nor the two amended complaints filed by the plaintiffs allege any facts necessary to set forth a state-created danger claim. Moreover, the defendant filed a motion to dismiss the plaintiffs' Fourteenth Amendment claims, which the court granted.[4] In addition, the plaintiffs failed to raise the state-created danger claim until they submitted a proposed jury instruction on the issue. Rather than rule that the issue was barred (which it could have done), the court permitted the plaintiffs to make their case for inclusion of the jury instruction. After listening to the plaintiffs, the court concluded that it was not appropriate to give the instruction based upon the record. (See D.I. 223, at 894.)

The plaintiffs' motion for a new trial does not persuade the court that its ruling on state-created danger was erroneous. Indeed, the plaintiffs assert the same arguments in support of their

---

[4] In opposing that motion, the plaintiffs failed to raise any argument regarding state-created danger. Instead, they argued that they were entitled to bring claims for excessive force and loss of companionship under the Fourteenth Amendment. (See D.I. 36.)

motion for a new trial that the court previously rejected during the discussion of the jury instructions. Further, the plaintiffs do not even attempt to demonstrate how Officer Whitehead's and/or Ciritella's actions satisfy the four elements required for a jury instruction on state-created danger. Consequently, the court will deny the plaintiffs' motion for a new trial based on its failure to instruct the jury with regard to state-created danger.

    2.    Spoliation

The court likewise will deny the plaintiffs' motion with respect to spoliation. A party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit. *In re Wechsler*, 121 F. Supp. 2d 404, 415 (D. Del. 2000). A party who breaches this duty by destroying relevant evidence or by allowing relevant evidence to be destroyed may be sanctioned by the court. *Id.* When determining whether to impose sanctions for the spoliation of evidence, this court must consider the following three factors:

> (1) the degree of fault and personal responsibility of the party who destroyed the evidence; (2) the degree of prejudice suffered by the other party; and (3) the availability of lesser sanctions which would avoid any unfairness to the innocent party while, at the same time, serving as a sufficient penalty to deter the same type of conduct in the future.

*Id.* (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

Here, the plaintiffs contend that the videotape for car 1180 was destroyed and, as a result, they were entitled to a spoliation instruction. They further contend that they were entitled to a spoliation construction, because the defendants failed to write up the incident with Smith in a report. With regard to the videotape from car 1180, the plaintiffs argue that it was not working properly during the incident with Smith, so the defendants should bear the responsibility for whatever it should have recorded. As for the lack of written reports, the plaintiffs contend that even though the

defendants were told by superior officers not to write reports, they should be held responsible for following that order. The court disagrees, and finds the plaintiffs' arguments flawed. First, the plaintiffs have made no showing that the defendants had access to the video tape and altered or destroyed it. Indeed, the trial testimony was to the contrary. Lieutenant Browne of the Wilmington Police Department testified that, while in use, the videotaping system and tape were located in a secure vault in the patrol car's trunk, to which the officers had no access. (D.I. 236, at B-70.1.) Because the plaintiffs cannot demonstrate that the defendants destroyed any videotape evidence, the court did not err in refusing to give the spoliation instruction with respect to the videotape.

Further, the court did not err in refusing to instruct the jury as to the absence of a written report from the defendants. The plaintiffs' argument with respect to the written reports ignores the trial testimony that the defendants were told by their superiors not to write a report. (See id. at B-53.) Thus, assuming for purposes of this motion only that the absence of written reports constitutes destroyed evidence, the plaintiffs have failed to demonstrate that the defendants had any degree of fault or personal responsibility for the decision.[5] Consequently, the court will deny their motion on this ground.

---

[5] Had the plaintiffs preserved their *Monell* claim against the City of Wilmington, their argument may have proven persuasive.

## V. CONCLUSION

For the aforementioned reasons, the court will deny the plaintiffs' motion for a new trial in all respects.


Dated: May 5, 2008                                    /s/ Gregory M. Sleet
                                                      CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF HARRY SMITH, III, HARRY SMITH, JR., AND ROSLYN WOODARD SMITH, <br><br> Plaintiffs <br><br> v. <br><br> JOHN CIRITELLA, THOMAS DEMPSEY, and MATTHEW KURTEN, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br> C.A. No. 04-1254 GMS |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The plaintiffs' Second Motion for a New Trial (D.I. 226) is DENIED in all respects.


Dated: May 5, 2008

/s/ Gregory M. Sleet
CHIEF, UNITED STATES DISTRICT JUDGE